# EXHIBIT 1

1  FITZGERALD KNAIER LLP
2     Kenneth M. Fitzgerald, Esq. (SBN: 142505)
      kfitzgerald@fitzgeraldknaier.com
3     Keith M. Cochran, Esq. (SBN: 254346)
      kchochran@fitzgeraldknaier.com
4  550 West C Street, Suite 2000
   San Diego, California  92101
5  Tel:   (619) 241-4810
6  Fax:   (619) 955-5318

7  Attorneys for Plaintiff
8  ViaSat, Inc.

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**01/21/2016** at 04:12:53 PM

Clerk of the Superior Court
By Veronica Navarro,Deputy Clerk

9              **SUPERIOR COURT OF CALIFORNIA**

10         **COUNTY OF SAN DIEGO, NORTH COUNTY DIVISION**

11

12  **ViaSat, Inc.,** *a Delaware corporation,*

13                          Plaintiff,

14           vs.

15  **Acacia Communications, Inc.,** *a Delaware*
    *corporation,* and Does 1 through 50, inclusive,

16

17                          Defendants.

18

19

20

21

Case No.:   37-2016-00002323-CU-BC-NC

**Complaint** for:

1. **Breach of Contract (License Agreement);**
2. **Breach of the Implied Covenant of Good Faith and Fair Dealing;**
3. **Misappropriation of Trade Secrets;**

**Request For Preliminary Injunction**

**Jury Trial Demanded**

22         COMES NOW the Plaintiff, ViaSat, Inc. ("ViaSat"), which for its complaint against

23  defendants Acacia Communications, Inc. ("Acacia") and Does 1 through 50, alleges as

24  follows:

25                          **The Parties**

26         1.       Plaintiff ViaSat is a San Diego-based corporation, organized under the laws

27  of Delaware, with its global headquarters in Carlsbad, California.

28

- 1 -

Complaint
*ViaSat v. Acacia*

2.      Defendant Acacia is a Delaware corporation with its principal place of business in Maynard, Massachusetts.

3.      The true names and capacities of defendants identified as Does 1 through 50, inclusive, are presently not known to Plaintiff, who therefore sues these defendants by such fictitious names.  Plaintiff will seek to amend this complaint and include these Doe defendants' true names and capacities when they are ascertained.  Each of the fictitiously named defendants is responsible in some manner for the conduct alleged herein and for the damages suffered by Plaintiff.

## Jurisdiction and Venue

4.      The Court has subject matter jurisdiction over this action because the amount in controversy exceeds the Court's jurisdictional minimum.

5.      Venue is proper in this Court under California Code of Civil Procedure §§ 395(b) and 410.10, because this is an action arising out of a contract by which Defendant Acacia contracted to perform an obligation in San Diego County and because none of the defendants reside in California.

## Factual Allegations

6.      ViaSat is a world leader in satellite communications and network services, infrastructure, and technology.  ViaSat's products and services securely connect consumers, businesses, governments, and the military to the internet around the globe.

7.      As a groundbreaking inventor of communications technology, ViaSat owns numerous patents, and ViaSat vigorously protects those patents and its intellectual property, including the intellectual property that was licensed to Acacia under the agreement at issue in this action.

8.      In November of 2009, Acacia commissioned ViaSat to develop an Application Specific Integration Circuit ("ASIC") intellectual property core for two intellectual property cores desired by Acacia for potential use in an OTU4 100 Gb optical transport application: 1) a Digital Signal Processing ("DSP") core, and 2) a Soft Decision Forward Error Correction Decoder and Encoder ("SDFEC") core.

- 2 -

9.     ViaSat agreed to undertake this project and, on or about November 13, 2009, ViaSat and Acacia entered into a written IP Core Development and License Agreement (the "License Agreement"), which encompassed the work ViaSat would perform for Acacia and the terms and conditions of that work.  A copy of the License Agreement is attached to this complaint as **Exhibit A**.

10.     Within its terms and conditions, the License Agreement defined the phrase "Background Information" to include:

> all Intellectual Property Rights, and other design data and information either (a) owned or licensed by VIASAT prior to the Effective Date of this Agreement, or (b) developed or licensed by VIASAT separate and apart from this Agreement. . . .

Exhibit A ¶ 1(b).

11.     More specifically, the parties agreed that for the sake of clarity, "the SDFEC Core shall be deemed Background Information."  *Id.*

12.     In paragraph 8, entitled "Background Information Title; Intellectual Property Rights; Copying," the License Agreement prohibited Acacia's use of any Background Information it received from ViaSat except as authorized under the License Agreement, and the parties agreed to ViaSat's continued ownership of all intellectual property rights in the Background Information:

> (a) **ACACIA acknowledges that all Intellectual Property Rights in the Background Information and the Licensed Materials are and will remain the sole property of VIASAT, including all modifications, improvements, and derivative works** relating to the Background Information and the Licensed Materials, including but not limited to all modifications, improvements, and derivative works requested or suggested by ACACIA.
>
> (b) To protect such Intellectual Property Rights, **ACACIA agrees that it will use any Background Information and/or Licensed Materials it receives from VIASAT under this Agreement only as authorized herein** and for the term specified herein and agrees that it will not decompile, reverse engineer, disassemble, or otherwise reduce any Background Information and/or Licensed Materials it receives from VIASAT under this Agreement to a human-perceivable form except to the extent any of the foregoing

- 3 -

restrictions are prohibited by law. **ACACIA may not modify or prepare derivative works of any Background Information and/or Licensed Materials it receives from VIASAT under this Agreement in whole or in part, except with respect to the purposes of the Licensed Products.** . . .

(c) This Agreement allows ACACIA to copy any Background Information and/or Licensed Materials it receives from VIASAT under this Agreement only to the extent expressly provided herein . . . . **ACACIA may not provide design data or information** including, but not limited to, schematics, hardware description language source code, or netlist files, **to a third party without prior written approval from VIASAT.**

Exhibit A ¶ 8 (emphasis added).

13.     The parties further agreed that the SDFEC Core was part of the "Licensed Materials," and that any product incorporating any part of the SDFEC Core was a Licensed Product, on which Acacia was required to pay royalties to ViaSat. *Id.* ¶¶ 1(k)-(m).

14.     Since entering the License Agreement, Acacia has generally paid royalties to ViaSat on products incorporating ViaSat's Background Information and the Licensed Materials. However, ViaSat recently became aware that Acacia is selling a "Metro Coherent CFP Module" (the "CFP Module") which contains soft decision forward error correction capability. Acacia has stated on its website and in other public materials that the market for its CFP Module "is expected to take off," and further represented that its CFP module is the "first commercially available" component of its type.

15.     On information and belief, Acacia is representing its CFP Module to be backwards compatible with other existing Acacia modules which incorporate ViaSat's Background Information, and for which Acacia has been paying royalties to ViaSat.

16.     It would not be possible for Acacia to develop a CFP Module with such soft decision forward error correction capability, or a CFP Module otherwise backwards compatible with other royalty-bearing modules, without incorporating ViaSat's SDFEC Core or other Background Information owned by ViaSat. As a result, the CFP Module is a product on which Acacia is obligated to pay royalties to ViaSat.

- 4 -

17.    On information and belief, Acacia is projecting that it will sell a substantial number of CFP Modules and derive significant revenues therefrom.  Royalties owed to ViaSat on Acacia's CFP Module are and will be in the millions of dollars.

18.    Acacia has failed and refused to acknowledge that the CFP Module is a royalty-bearing product under the terms of the License Agreement, and Acacia has failed and refused to pay ViaSat the substantial royalties due and owing on sales of that product.

First Cause of Action

Breach of Contract

19.    ViaSat re-alleges and incorporates all of the preceding paragraphs herein.

20.    Acacia agreed, as part of the License Agreement, to pay royalties on all Acacia products utilizing Background Information provided by ViaSat under the License Agreement, and on all products utilizing any part of ViaSat's SDFEC Core.

21.    On information and belief, Acacia's CFP Module utilizes ViaSat's intellectual property, namely the Background Information disclosed to Acacia pursuant to the License Agreement, and ViaSat's SDFEC Core.

22.    ViaSat has fully performed its obligations under the License Agreement.

23.    By failing and refusing to pay royalties on the CFP Module, and possibly other Acacia products that incorporate ViaSat's SDFEC Core, Acacia has materially breached the License Agreement, thereby proximately causing ViaSat to suffer substantial damages, in an amount to be proven at trial.

Second Cause of Action

Breach of the Implied Covenant of Good Faith and Fair Dealing

24.    ViaSat re-alleges and incorporates all of the preceding paragraphs.

25.    Implied in the License Agreement was a covenant of good faith and fair dealing, pursuant to which Acacia was obligated to refrain from any acts or conduct that would deny ViaSat the receipt and enjoyment of its legitimate expectations flowing from the agreement.

- 5 -

26.     Acacia violated this implied covenant of good faith and fair dealing by, among other things, impermissibly using ViaSat's Background Information and SDFEC Core, and by failing and refusing to truthfully admit to and account for such use of ViaSat's intellectual property.

27.     As a proximate result of Acacia's breaches, ViaSat has been damaged in an amount to be proven at trial.

### Third Cause of Action

### Misappropriation of Trade Secrets

28.     ViaSat re-alleges and incorporates all of the preceding paragraphs.

29.     Through the License Agreement, Acacia was granted limited access to and use of ViaSat's trade secrets.  Acacia nonetheless impermissibly used ViaSat's trade secrets in its CFP Module, in violation of the Uniform Trade Secret Act, Cal. Civ. Code § 3426, *et seq.*

30.     ViaSat took reasonable efforts to maintain the secrecy of its trade secrets including, but not limited to, obtaining the provisions included in the License Agreement restricting Acacia's use and disclosure of ViaSat Background Information.  Acacia was obligated by the terms of the License Agreement to maintain the secrecy of ViaSat's trade secrets and confidential information.

31.     As a proximate result of Acacia's unlawful actions, ViaSat has suffered damages in an amount to be proved at trial.

32.     Acacia's misappropriation of trade secrets will cause irreparable harm to ViaSat, and ViaSat is therefore entitled to a preliminary and permanent injunction against Acacia from continuing to use those trade secrets, and prohibiting Acacia from producing or distributing products that incorporate them.

33.     On information and belief, Acacia's misappropriation of ViaSat's trade secrets has been willful, entitling ViaSat to an award of its attorneys' fees and costs under California Civil Code § 3426.4.

- 6 -

1   **Wherefore**, ViaSat prays for relief as follows:

2       1.    For compensatory damages according to proof;

3       2.    For an accounting;

4       3.    For attorneys' fees and costs;

5       4.    For a preliminary and permanent injunction: (1) prohibiting Acacia and any

6 of Acacia's employees, agents, and those acting in concert with them from disclosing or

7 using ViaSat's trade secrets; and (2) prohibiting Acacia from manufacturing, selling, or

8 offering for sale any product that incorporates ViaSat's Background Information and for

9 which Acacia refuses to pay an appropriate royalty.

10       5.    For such other relief as the Court may deem just and proper.

11

12 Dated: January 21, 2016           FITZGERALD KNAIER LLP

13

14                       By: _____

15                         Kenneth M. Fitzgerald, Esq.

16                         Keith M. Cochran, Esq.

                          Attorneys for Plaintiff

17                         ViaSat, Inc.

18

19

20

21

22

23

24

25

26

27

28

Complaint

Exhibit 1, *ViaSat v. Acacia*

Page 7

# Exhibit A

### IP CORE DEVELOPMENT AND LICENSE AGREEMENT NO. TG11102009

This Agreement is entered into by and between ViaSat, Inc., a Delaware corporation having its headquarters offices located at 6155 El Camino Real, Carlsbad, California 92011-1699, and having a branch office located at 4830 East 49th Street, Cuyahoga Heights, Ohio 44125 (hereinafter referred to as "VIASAT") and Acacia Communications, Inc. a Delaware corporation having its principal place of business at 1000 Winter Street, Suite 4500, Waltham, Massachusetts 02451 (hereinafter referred to as "ACACIA"), as of the Effective Date defined in Clause 1.

WHEREAS VIASAT has extensive background and expertise in communications systems, and intellectual property core ("IP core") design and verification; including the successful incorporation of communications technology on a variety of platforms, such as Application Specific Integrated Circuits (ASICs), Field Programmable Gate Arrays (FPGAs) programmable Digital Signal Processors (DSPs), and software (C/C++, Matlab, etc.).

WHEREAS ACACIA would like to commission VIASAT to undertake the development of an ASIC IP core for Digital Signal Processing (the "DSP Core") and an IP core for Soft Decision Forward Error Correction Decoder and Encoder (the "SDFEC Core") targeting an OTU4 (100Gb) optical transport application;

NOW, THEREFORE, in consideration of the mutual covenants and Agreements contained herein, VIASAT AND ACACIA agree as follows:

### 1.    Definitions

As used in this Agreement the following defined terms shall have the meanings set forth below:

(a)      "Affiliate" shall mean any company controlling, controlled by or under common control with a specified party, wherein "control" means the power to determine the management policies of such company by either ownership of a majority of the voting rights of its issued capital, or having the right to appoint a majority of the members of its board of directors, or by Agreement or otherwise.

(b)      "Background Information" means all Intellectual Property Rights, and other design data and information either (a) owned or licensed by VIASAT prior to the Effective Date of this Agreement, or (b) developed or licensed by VIASAT separate and apart from this Agreement. Background Information shall also include all technical data, manuals and other documentation and data related to any of the foregoing. For the sake of clarity, and without limiting the foregoing, the SDFEC Core shall be deemed Background Information.

(c)      "Copyrights" means copyrights and copyrightable works, in any form or medium now in existence or hereinafter created and all derivative works thereto, and all registrations, applications and renewals for any of the foregoing.

(d)      "Deliverables" shall mean the deliverables provided by VIASAT to ACACIA pursuant to the Development Services. For the sake of clarity, the term Deliverable shall include all Foreground Information and Licensed Materials provided by VIASAT to ACACIA hereunder.

(e)      "Development Services" shall have the meaning set forth in Clause 2(a).

TMG
11/13/09

CR
11/20/09

Exhibit 1,
Page 9

(f)     "Effective Date" means the commencement date of this Agreement, and which shall be established as the last date signed by the Parties hereto on the last page of this Agreement.

(g)     "End User" means an end user customer who purchases or agrees to purchase the Licensed Products.

(h)     "Intellectual Property Rights" means any and all inventions (whether or not patentable and whether or not reduced to practice); patents and patent applications and continuations thereof; works of authorship and other copyrightable works; Copyrights; mask work rights; trade secrets (including, without limitation, data, ideas, formulae, compositions, manufacturing and production processes and techniques, know-how, research and development information, drawings, specifications, designs, plans, proposals, technical data, software (source and object code), financial, business and marketing plans, sales and promotional literature, customer and supplier lists and related information); information technologies (including, without limitation, software programs (both source and object code), data and related documentation); all other intellectual property rights throughout the world; and all copies and tangible embodiments of the foregoing in whatever form or medium.

(i)     "Interim Agreement" means that certain Preliminary ASIC IP Core Development Agreement between the parties effective as of September 4, 2009.

(j)     "Foreground Information" means all Intellectual Property Rights, design data and information (a) directly related to the Digital Signal Processing (DSP) Blocks for use in 100Gb Optical Systems described in Exhibit C hereof, entitled "Mutually Agreed Upon Specification for 100 Gbps Coherent DWDM Demodulator" to be delivered as part of Deliverable 2V/3A in Exhibit A, the Statement of Work (SOW), that are first developed or first created by VIASAT or its personnel during the course of performing services for ACACIA under this Agreement, or (b) that are first developed or first created by VIASAT or its personnel in the performance of its services relating to Digital Signal Processing under this Agreement, and including all changes, additions, revisions, replacements, manuals and documentation thereto which VIASAT may provide under this Agreement. For the sake of clarity, and without limiting the foregoing, the DSP Core and all Deliverables relating thereto shall be deemed Foreground Information.

(k)     "Licensed Materials" means the SDFEC Core provided to ACACIA as part of the Development Services hereunder, in whatever form provided (whether as floppy or hard disks, cartridges, magnetic tapes, semiconductor chips or otherwise) or however designated (whether as firmware, microcode or otherwise) and including all changes, additions, revisions, replacements, manuals and documentation thereto which VIASAT may provide under this Agreement. For the avoidance of doubt, source code for Licensed Materials shall not be delivered to ACACIA under this Agreement and shall not be a Licensed Material.

(l)     "Licensed Products" means any integrated circuits (ASIC and/or FPGA) designed, manufactured, marketed or sold by or on behalf of ACACIA that incorporate all or any part of the Licensed Materials (regardless of whether or not the Licensed Materials are enabled or disabled in such Licensed Product).

(m)     "Royalty Bearing Products" means Licensed Products that incorporate all or part of the Licensed Materials regardless of whether or not the Licensed Materials are in an enabled form or disabled form.

TMG
11/13/09

CR
11/20/09

Exhibit 1,
Page 10

(n)     "Permitted Use" means use by ACACIA of the Licensed Materials in accordance with Clause 4 below.

(o)     "Recurring Royalty Fee" shall mean the per unit recurring royalty fee(s) payable to VIASAT by ACACIA under this Agreement as described in Clause 4 below.

(p)     "Development Specifications" means the specifications made by ACACIA to VIASAT for the Foreground Information attached and made a part of this Agreement as Exhibit C, which are mutually agreed to be considered draft specifications at the time of executing this Agreement, but which shall be converted to mutually agreeable final specifications in accordance with the process and timeline set forth in the SOW in Exhibit A.

(q)     "Licensed Materials Specifications" means the specifications for the Licensed Materials set forth in Exhibit B.

(r)     "Specifications" means the Development Specifications and the Licensed Materials Specifications, collectively.

2.     **IP Core Development Phase Scope, Price and Acceptance**

(a)     ViaSat will provide the necessary personnel, materials, services and facilities to perform the IP core development phase work (the "Development Services") specified in Exhibit A, entitled "Statement of Work for IP Core Development" which is attached hereto and made a part of this Agreement as Exhibit A. VIASAT shall perform the Development Services and deliver all Deliverables within the timeline set forth in Exhibit A.

(b)     ViaSat will perform such Development Services for the NRE firm fixed price of Three Million Two Hundred Thousand Dollars ($3,200,000) (the "NRE Fee"), subject to such additional amounts for products or services set forth in Exhibit A regarding out-of-scope design iterations requested by ACACIA, which will be handled on a time and materials basis at rates set forth in Exhibit D or, if not set forth therein, as mutually agreed between the parties. Payments made by ACACIA to VIASAT pursuant to the Interim Agreement shall be credited toward the NRE Fee.

(c)     VIASAT may invoice ACACIA for the NRE Fee upon completion of each payment milestone set forth in Exhibit A (hereafter referred to as a "Payment Milestone") and ACACIA's acceptance thereof in accordance with Clause 2(d).  Payment associated with each successfully achievedPayment Milestone shall be payable within thirty (30) days after ACACIA's receipt of ViaSat's invoice.  Any undisputed amounts not paid when due shall be subject to a late payment fee of one and one-half percent (1.5%) per month or the maximum amount permitted by law, whichever is less.

(d)     Acceptance of the Development Services work shall occur after completion of acceptance tests in accordance with the SOW in Exhibit A. Acacia shall evaluate, and if applicable, conduct preliminary tests to verify conformance of each Deliverable to the applicable Specifications, and notify VIASAT of its acceptance within the applicable review time cycle(s) set forth in the SOW.  If, within such applicable review time cycle ACACIA, in its good faith judgment, reasonably believes that any portion of the Deliverables does not conform to the applicable Specifications in any material respect, ACACIA shall within such applicable review time cycle deliver written notice to VIASAT of such non-conformity to the applicable

TMG
11/13/09

CR
11/20/09

Specifications ("Statement of Errors"), listing all discovered non-conformities. VIASAT shall use commercially reasonable efforts, at its own expense (except that if the non-conformity is due to any action or inaction on the part of ACACIA, in which case ACACIA shall bear the cost of correction) to correct such non-conformities within ten (10) business days but in no event longer than thirty (30) calendar days of its receipt of such a Statement of Errors. Upon receipt of the corrected Deliverable, ACACIA shall retest the Deliverable as set forth above. If ACACIA determines that the Deliverable still does not comply with the applicable Specifications in any material respect, ACACIA shall have the option of (a) rejecting the Deliverable as set forth above and asking VIASAT to repeat the corrective action described above, (b) agreeing upon a fix strategy with VIASAT (c) paying the associated Deliverable's Payment Milestone, if any, and proceeding to the next delivery milestone set forth in Exhibit A, or (d) terminating this Agreement upon written notice to VIASAT. In the event ACACIA has not (i) conducted any such acceptance tests or (ii) notified VIASAT as to any non-conformity within the applicable review time cycle(s) set forth in the SOW, such Deliverables shall be deemed accepted, unless the parties mutually agree in writing that circumstances warrant extending any such acceptance testing, which such agreement shall not be unreasonably withheld; in which case ViaSat and ACACIA will jointly develop a mutually agreeable extended acceptance test plan and a reasonable time period to be allowed for ACACIA to perform such extended acceptance test plan, taking into consideration the complexity of the extended acceptance testing to be performed.

(e)     In the event that ACACIA terminates this Agreement pursuant to Clause 2(d)(d), VIASAT shall immediately cease performing additional Development Services and VIASAT shall be entitled to retain all amounts received to date, and a prorated amount for work performed toward the next to occur Payment Milestone. Notwithstanding anything to the contrary herein, in the event that ACACIA terminates this Agreement pursuant to Clause 2(d)(d) hereof all licenses hereunder, including without limitation licenses to the Licenses Materials, shall be terminated and revoked.

3.     **Foreground Information**

(a)     ACACIA shall own all right, title and interest in and to all Foreground Information, including all Intellectual Property Rights therein and thereto. VIASAT will promptly provide and fully disclose all Foreground Information to ACACIA. All Foreground Information is works made for hire to the extent allowed by law and, in addition, VIASAT, at ACACIA's sole expense, hereby makes and agrees to make all assignments necessary to accomplish the foregoing ownership. VIASAT shall assist ACACIA, at ACACIA's sole expense, to further evidence, record and perfect such assignments, and to perfect, obtain, maintain, enforce, and defend any rights assigned. If VIASAT is unavailable, unable or unwilling to so assist ACACIA, VIASAT hereby irrevocably designates and appoints ACACIA, solely in connection with the exercise of its ownership rights in the Foreground Information, as it agent and attorney in fact to act for and in VIASAT's behalf to execute and file any document and to do all other lawfully permitted acts to further the foregoing with the same legal force and effect as if executed by VIASAT.

(b)     If any part of the Foreground Information is based on, incorporates or is an improvement or derivative of, or cannot be reasonably and fully made, used, reproduced, modified, distributed or otherwise exploited, without using any Background Information, then VIASAT hereby grants and agrees to grant to ACACIA a limited, nonexclusive, perpetual, irrevocable, worldwide, royalty-free, sublicensable right and license to make, have made, use and have used, sell, import, export, reproduce, modify and make derivative works of such Background Information for the sole and exclusive purpose of design, simulation, implementation, manufacture

TMG
11/13/09

CR
11/20/09

and sale of Licensed Products (including any modifications, improvements and derivatives to Licensed Products) or otherwise in connection with ACACIA's exploitation of the Foreground Information. VIASAT agrees not to use or disclose any Background Information under this Agreement for which it is not fully authorized to grant the foregoing license.

### 4.   License; Recurring License Fee; Licensed Material Delivery

(a)   VIASAT hereby grants to ACACIA for the Term of this Agreement a limited, worldwide, nonexclusive, non-transferable right and license (i) to make, have made, use, reproduce and make derivative works of the Licensed Materials, solely for the design, simulation, implementation and manufacture of Licensed Products, and (ii) to reproduce, make, have made, use, sell, offer to sell, import, export or otherwise distribute Licensed Products incorporating the Licensed Materials on a worldwide basis. Use of the Licensed Materials for any product other than the Licensed Product is strictly prohibited unless ACACIA has entered into a separate written Agreement with VIASAT for such use.

(b)   The foregoing license is granted to ACACIA under this Agreement subject to: (i) ACACIA's full payment of all Development Services NRE amounts owed to VIASAT under Clause 2 above; and (ii) payment of a per unit Recurring Royalty Fee in accordance with the following table per each Royalty Bearing Product sold by or on behalf of ACACIA:

| Recurring Royalty Fee | Cumulative Instantiation Quantity | Recurring Royalty Fee ($) |
|---|---|---|
| | 0 to 2,500 | $750/instantiation |
| | 2,501-10,000 | $500/instantiation |
| | >10,000 | $150/instantiation |

Notwithstanding anything to the contrary contained in this Agreement, no Recurring Royalty Fee shall be due for Licensed Products that are: (i) used or distributed solely for internal use by ACACIA (except any subsequent sale of the same would bear such Recurring Royalty Fee), (ii) used or distributed solely for demonstration, marketing or training purposes (except any subsequent sale of the same would bear such Recurring Royalty Fee), provided such use and distribution shall be limited to an aggregate of fifty (50) units, (iii) distributed to an End User as a replacement for a defective Licensed Product or to fix an error in a Licensed Product (but only to the extent a Recurring Royalty Fee was paid on the original Licensed Product so replaced or corrected), (iv) returned by an End User (except only to the extent a complete refund of the purchase price is made by ACACIA to such End User), or (v) used solely for ACACIA's manufacturing or testing purposes.

(c)   Restricted Activities. As additional protection for Acacia's Confidential Information, VIASAT agrees that during the period over which it is (or is supposed to be) providing Development Services under this Agreement (i) and for six (6) months thereafter (the "Restricted Period"), ViaSat will not (i) engage in activities related to the Foreground Information which are directly competitive with the 100Gb transponder module business or demonstrably anticipated 100Gb transponder business of ACACIA or (ii) provide services related to the "Foreground Information" to (a) any third parties in the 100Gb optical transponder module market who are engaged in activities directly competitive with the 100Gb transponder business or demonstrably anticipated 100Gb transponder business of ACACIA or (b) any third party that is or

TMG
11/13/09

CR
11/20/09

was previously a customer or business partner of ACACIA if such services are in support of the 100Gb optical transponder module market.

5.    Taxes

All international, national, regional or local taxes, duties or similar liabilities, however designated, except for income taxes imposed by the U.S. Government or its political subdivisions, which may be levied upon VIASAT in connection with this Agreement (excluding taxes based on VIASAT's income) shall be for the account of ACACIA and paid directly by ACACIA or, if required to be paid by VIASAT, shall be immediately reimbursed by ACACIA to VIASAT upon evidence of payment.

6.    Accounting and Payment for Recurring Royalties

(a)    During the Term ACACIA shall keep accurate, separate and complete records in sufficient detail to enable the payments due hereunder to be determined (and to permit and allow ViaSat to confirm the same pursuant to Clause 6(c)).

(b)    Within thirty (30) days after the end of each calendar quarter during the Term of this Agreement, beginning with the first calendar quarter after ACACIA completes development of its first prototype of a Licensed Product, ACACIA shall transmit a written report to VIASAT with respect to accounting for all Recurring Royalty Fee payments due hereunder. Such report shall indicate (i) the quantity of Royalty Bearing Products shipped during the reporting quarter, (ii) the per unit Recurring Royalty Fee attributable to such Royalty Bearing Products as set forth in Clause 4 above, (iii) the cumulative Recurring Royalty Fees owed to VIASAT for such period and (iv) such other reasonable information requested by VIASAT from time to time.  If no such sales have been made during any reporting period, ACACIA shall so report.  Contemporaneously with submitting each such quarterly report, ACACIA shall submit its payment for all reported Recurring Royalty Fees in cash by means of electronic wire transfer using the following instructions:

<u>Electronic Wire Transfer Instructions</u>

| | |
|---|---|
| Bank: | Union Bank of California |
| Address: | 530 "B" Street |
| | San Diego, CA 92101-4407  USA |
| Routing Transit #: | 122000496 |
| Acct Name: | ViaSat, Inc. General Checking Account |
| Acct #: | 4000142625 |
| Swift ID: | BOFC US 33 MPK |
| | (For international wire transfers) |

Any Recurring Royalty Fees which are not paid by ACACIA within thirty (30) days after the close of the calendar quarter in which ACACIA received the revenue attributable to such Royalty Bearing Product shall be subject to a late payment fee of one and one-half percent (1.5%) per month or the maximum percent permitted by law, whichever is less.

*IP CORE DEVELOPMENT AND LICENSE AGREEMENT NO. TG11102009*
*Page 6 of 13*

TMG
11/13/09

CR
11/20/09

Exhibit 1,
Page 14

(c)     Upon seven days written notice from the VIASAT, ACACIA shall permit an independent certified public accountant, reasonably acceptable to ACACIA, to have access, no more than once each calendar year during regular business hours, to such records or documents of ACACIA as may be necessary to verify the accuracy of the reports and payments made under this Agreement, including but not limited to, invoices, contracts and purchase orders, and to make copies thereof. The cost of such audit shall be at VIASAT's sole cost and expense, except if the review uncovers an underreporting in the reported license fees or other amounts due of more than five percent (5%), in which case ACACIA shall promptly pay to VIASAT (i) such underreported or unpaid amount plus (ii) the cost of said audit.

7.     **Term; Termination**

(a)     The term of this Agreement shall commence as of the Effective Date and shall continue until terminated as set forth in this Clause 7 ("Term").

(b)     ACACIA may terminate this Agreement for any reason at any time upon thirty (30) days prior written notice to VIASAT. In the event that ACACIA terminates this Agreement pursuant to this Clause 7(b), VIASAT shall immediately cease performing additional Development Services and VIASAT shall be entitled to retain all amounts received to date, plus ACACIA shall promptly pay to VIASAT (i) a prorated amount for work performed toward the next to occur Payment Milestone plus (ii) any non-cancellable expenses incurred by VIASAT prior to receipt of ACACIA's notice of termination plus (iii) any other amounts due and payable.

(c)     Either party may terminate this Agreement based on material breach of the Agreement by the other party, provided that, for any breach capable of cure, the party alleged to be in material breach receives written notice stating the cause and is provided thirty (30) days to cure such material breach. In the event of termination pursuant to this Clause 7(c), any payment obligations accruing prior to such termination will remain due and owing and VIASAT shall be entitled to seek injunctive relief allowing VIASAT to recover from ACACIA any Licensed Materials already delivered to ACACIA, in addition to any other remedies available, it being acknowledged that legal remedies may be inadequate.

(d)     Upon termination of this Agreement, (i) except as expressly set forth below, the licenses, rights and covenants granted hereunder and the obligations imposed hereunder will cease; (ii) ACACIA will destroy the Licensed Materials, including all copies and all relevant documentation and within ten days of termination provide written certification of such destruction to VIASAT, except that, if this Agreement is terminated for any reason other than ACACIA's material breach thereof, ACACIA may sell any Licensed Products already in inventory as of the effective date of Termination subject to payment of the applicable Recurring Royalty Fee for any Royalty Bearing Products sold. The provisions of Clauses 1, 3, 8, 9, 11, 12, 13, 14, 18, 19 and this Clause 7(d) will survive the termination of this Agreement.

8.     **Background Information Title; Intellectual Property Rights; Copying**

(a)     ACACIA acknowledges that all Intellectual Property Rights in the Background Information and the Licensed Materials are and will remain the sole property of VIASAT, including all modifications, improvements, and derivative works relating to the Background Information and the Licensed Materials, including but not limited to all modifications, improvements, and derivative works requested or suggested by ACACIA.

JmG
11/13/09

CR
11/20/09

(b)     To protect such Intellectual Property Rights, ACACIA agrees that it will use any Background Information and/or Licensed Materials it receives from VIASAT under this Agreement only as authorized herein and for the term specified herein and agrees that it will not decompile, reverse engineer, disassemble, or otherwise reduce any Background Information and/or Licensed Materials it receives from VIASAT under this Agreement to a human-perceivable form except to the extent any of the foregoing restrictions are prohibited by law. ACACIA may not modify or prepare derivative works of any Background Information and/or Licensed Materials it receives from VIASAT under this Agreement in whole or in part, except with respect to the purposes of the Licensed Products. Nothing contained in this Agreement will be construed as conferring by implication, estoppel or otherwise upon either party any license or other right except the licenses and rights expressly granted in this Agreement to a party hereto. ACACIA acknowledges that any Background Information and/or Licensed Materials it receives from VIASAT under this Agreement represents valuable property of VIASAT, and may be protected by copyright law.

(c)     This Agreement allows ACACIA to copy any Background Information and/or Licensed Materials it receives from VIASAT under this Agreement only to the extent expressly provided herein, and for archival and back-up purposes, provided always that ACACIA will at all times and in each instance, reproduce all copyright notices and proprietary legends on each copy in the same manner as such notices and legends appeared on the original. No other copies may be made without VIASAT's prior written consent. ACACIA may not provide design data or information including, but not limited to, schematics, hardware description language source code, or netlist files, to a third party without prior written approval from VIASAT.

9.     Confidentiality

Each Party shall maintain in strict confidence, and will use and disclose only as authorized by the disclosing party, in accordance with the provisions of Non-Disclosure Agreement #NDATG06102009 executed between them on June 10, 2009 (the "NDA"), all information that it receives from the other Party in connection with this Agreement (including pursuant to a SOW), including, but not limited to, all information concerning trade secrets, engineering, material, supplies, hardware, equipment, software or other technical information of the other Party's products or financial, accounting or marketing information, business plans, analyses, forecasts, predictions or projections, and customer information relating to the other Party's business, and personnel information relating to the other Party's employees (hereinafter referred to as "Confidential Information"). All Foreground Information shall be deemed ACACIA's Confidential Information for purposes of the NDA. The terms of this Clause 9 shall survive the termination of this Agreement.

10.     Right to Transfer to the U.S. Government

For any Licensed Materials subsequently ordered from ACACIA under a U.S. Government prime contract or subcontract (of any tier), ACACIA shall have the right, upon written prior notice to VIASAT, and subject to the limits of the license rights granted under this Agreement, to transfer said Licensed Materials to the U.S. Government provided that the Government agrees to accept said transfers subject to Restricted Rights as such rights are defined and limited by the Rights in Technical Data and Computer Software clause in DFARS 252.227-7013.

TMG
11/13/09

CR
11/20/09

11.    Indemnity

VIASAT will defend, protect, indemnify and hold ACACIA and its officers, directors, and employees and its affiliates and their respective officers, directors, and employees, harmless from and against any and all third party demands, claims, liabilities, losses, costs and expenses (including reasonable attorneys' fees), losses or damages to persons or property, injuries or death of persons (including the amounts of judgments, settlement amounts, penalties, interest, court costs and legal fees, including on appeal or review) arising out of or relating to any negligent act or omission, or default by VIASAT or its personnel under this Agreement.

12.    Warranties, Limited Remedy and Disclaimer.

(a)    VIASAT represents warrants to ACACIA that: (i) VIASAT has and shall have all rights necessary to grant the rights and licenses granted hereunder; (ii) VIASAT has the required skills, expertise and experience to perform this Agreement; and (iii) VIASAT's performance of its obligations under this Agreement shall at all times comply with any and all applicable material laws and regulations.

(b)    VIASAT represents and warrants that, for a period of one (1) year after ACACIA's commencement of production of Licensed Products (the "Warranty Period"), the Licensed Materials and Foreground Information will conform to the Specifications in all material respects and be free from material defects in design, manufacture, engineering, materials and workmanship. In the event the Licensed Materials and Foreground Information fail to meet the Specifications in all material respects, VIASAT shall repair or replace the non-conforming Licensed Materials or Foreground Information. VIASAT's sole liability and the ACACIA's exclusive remedy with respect of breach of the foregoing limited representation will be limited to error correction or replacement.

(c)    EXCEPT AS SPECIFICALLY STATED IN THIS CLAUSE 12, THE LICENSED MATERIALS LICENSED HEREUNDER ARE PROVIDED WITHOUT ANY OTHER WARRANTY OF ANY KIND, EITHER EXPRESSED, IMPLIED OR STATUTORY, INCLUDING WITHOUT LIMITATION, ANY WARRANTY WITH RESPECT TO NONINFRINGEMENT, MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE.

13.    Limitations of Liability

EXCEPT FOR BREACHES OF CLAUSE 9 (CONFIDENTIALITY) OR THE NDA, OR AMOUNTS PAYABLE TO THIRD PARTIES PURSUANT TO CLAUSE 11 (INDEMNITY), (A) IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR LOSS OF PROFITS OR INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES RESULTING FROM OR ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT, WHETHER OR NOT SUCH PARTY HAD BEEN ADVISED, KNEW OR SHOULD HAVE KNOWN OF THE POSSIBILITY OF SUCH DAMAGES, INCLUDING, BUT NOT LIMITED TO, LOSS OF DATA, LOSS OF USE OR LOSS OF REVENUE, AND (B) EXCEPT FOR VIASAT'S OBLIGATION TO CORRECT DEFECTIVE LICENSED MATERIALS AND FOREGROUND INFORMATION PURSUANT TO CLAUSE 12, THE TOTAL CUMULATIVE LIABILITY OF EITHER PARTY UNDER THIS AGREEMENT, WHETHER ARISING

TMG
11/13/09

CR
11/20/09

OUT OF BREACH OF CONTRACT (INCLUDING BUT NOT LIMITED TO BREACH OF WARRANTY) OR TORT (INCLUDING BUT NOT LIMITED TO NEGLIGENCE AND STRICT LIABILITY), IN NO EVENT SHALL EXCEED THE AGGREGATE AMOUNT PAID BY ACACIA TO VIASAT PURSUANT TO THIS AGREEMENT.

### 14.   Import/Export

ACACIA agrees to comply with all applicable U.S. import/export laws and regulations regarding the Licensed Materials including, but not limited to, the Arms Export Control Act (22 USC 2751 et seq.), the International Traffic in Arms Regulations (22 CFR Part 120 et seq.), and the Export Administration Act (50 USC 2401 et seq.). Without limiting the foregoing, ACACIA agrees that it will not transfer any export controlled-item, data or services to any third party without an export license, Agreement, or applicable exemption or exception.

### 15.   Notices

All formal contractual notices under this Agreement shall be sent via email or facsimile and confirmed with a signed copy sent by regular mail as follows:

| | |
|---|---|
| **ViaSat, Inc.** | **Acacia Communications, Inc.** |
| Russell Fuerst, Vice President | Bhupen Shah |
| 4830 East 49th Street | 1000 Winter Street, Suite 4500 |
| Cuyahoga Heights, Ohio  44125 | Waltham, Massachusetts  02451 |
| Phone: (216) 706-7619 | Phone: (617) 510-1411 |
| Fax: (216) 441-8860 | Fax: |
| Russell.fuerst@viasat.com | bhupen.shah@acacia-inc.com |

With a copy sent to:

| | |
|---|---|
| **ViaSat, Inc.** | **Acacia Communications, Inc.** |
| Ted Gammell, Director, Contracts | Marc F. Dupré, Esq. |
| 20511 Seneca Meadows Parkway, Suite 200 | Gunderson Dettmer LLP |
| Germantown, Maryland  20876 | 610 Lincoln Street |
| | Waltham, MA 02451 |
| (240) 686-4490 | 781-890-8800 |
| (240) 686-4810 | 781-622-1622 |
| ted.gammell@viasat.com | mdupre@gunder.com |

Either party may change the above points of contact or addresses by seven (7) days prior written notice to the other party.

### 16.   Entire Agreement

This Agreement and the NDA, and any referenced attachments thereto, contains the entire understanding between the parties, superseding any and all prior and contemporaneous communications, agreements and understandings between the parties with respect to the subject matter hereof. For the sake of clarity, and without limiting the foregoing, this Agreement shall supersede and replace the Interim Agreement. This Agreement may be executed in one or more counterparts, each of which is an original, but together constituting one and the same instrument.

TMG
11/13/09

CR
11/20/09

Execution of a facsimile copy shall have the same force and effect as execution of an original, and a facsimile signature shall be deemed an original and valid signature.

### 17.     Assignment and Parties of Interest

Except as may be expressly authorized elsewhere herein, neither this Agreement nor any rights granted hereunder may be sold, assigned or transferred by a Party in any manner without the prior written consent of the other Party, which consent will not be unreasonably withheld, conditioned or delayed. Notwithstanding the foregoing, each Party will, without consent of the other Party, have the right to assign all or any part of its rights and obligations under this Agreement to any successor to all or substantially all of its business that concerns this Agreement (whether in connection with a merger, consolidation, or sale of all or substantially all of the assets or stock of the assigning Party). This Agreement will inure to the benefit of, and be binding upon, VIASAT and ACACIA, their successors and permitted assigns. This Agreement is enforceable only by VIASAT and ACACIA. The terms of this Agreement are not a contract or assurance regarding compensation, continued employment, or benefit of any kind to any of VIASAT's personnel assigned to ACACIA's work, or any beneficiary of any such personnel, and no such personnel, or any beneficiary thereof, will be a third-party beneficiary under or pursuant to the terms of this Agreement. The parties shall be independent contractors in their performance under this Agreement, and nothing contained herein will constitute either party as the employer, employee, agent or representative of the other party, or both parties as joint venturers or partners for any purpose.

### 18.     Severability

If any provision of this Agreement or any portion or provision hereof applicable to any particular situation or circumstance is held invalid, the remainder of this Agreement or the remainder of such provision (as the case may be), and the application thereof to other situations or circumstances, will not be affected thereby.

### 19.     Choice of Law

This Agreement shall be governed by the laws of the State of Delaware, without regard to its principles of conflict of laws. The United Nations International Sale of Goods Convention shall not apply to this Agreement.

### 20.     Force Majeure

Neither party shall not be liable for any loss, damage, detention, or delay resulting from failure to perform under this Agreement due to causes beyond such party's reasonable control, including, but not limited to, acts of God or of the public enemy, acts of the Government in either its sovereign or contractual capacity, fires, floods, epidemics, quarantine restrictions, strikes, labor disputes, embargoes, unusually severe weather, insurrection or riot. In the event of delay resulting from any such causes, an equitable adjustment shall be made in the prices set forth in this Agreement (if warranted by the delay) and the performance dates hereof shall be extended for a reasonable length of time (if warranted by the delay), but no event for less than the period of delay.

TMG
11/13/08

CR
11/20/08

21.    **Indemnity for Intellectual Property Infringement**

(a)    VIASAT agrees defend and hold harmless ACACIA from and against any claims, liabilities or actions and to pay all costs, losses, damages, settlement amounts and attorneys' fees incurred in connection with any claim by a third party against ACACIA to the extent that such claim alleges that the design or the construction of a Deliverable, as furnished by VIASAT under this Agreement, infringes the U.S. Intellectual Property Rights of such third party, provided that ACACIA promptly notifies VIASAT, in writing, of such claims (except that any delay or failure in notification shall not relieve VIASAT of its obligations except to the extent it has been prejudiced thereby), and provided ACACIA gives VIASAT the sole right to defend and settle such claim at VIASAT's expense with counsel of VIASAT's choice (provided that ACACIA may participate in the defense and settlement of any such claim with counsel of its own choosing at its own expense).  ACACIA shall cooperate with VIASAT in the defense or settlement of the claim.

(b)    If the manufacture, use or sale of a Deliverable is enjoined, VIASAT shall, at VIASAT's expense, to do one of the following:  (a) obtain for ACACIA the right to use the allegedly infringing Deliverable, (b) modify the allegedly infringing Deliverable so that it becomes non-infringing or (c) replace the allegedly infringing Deliverable with a non-infringing Deliverable that is substantially in compliance with the Specifications for the alleged infringing Deliverable in all material respects. If VIASAT believes a Deliverable is likely to be the subject of a claim, suit, proceeding or injunction, VIASAT shall also have the right, at VIASAT's option, to do any of the above.  If VIASAT elects to replace an allegedly infringing Deliverable with a non-infringing item, ACACIA shall return the allegedly infringing Deliverable to VIASAT as soon as practicable.

(c)    Under no circumstances shall VIASAT have any liability for infringement to the extent such infringement arises from or occurs as a result of (i) the use of the Deliverables in combination and/or configuration with other items not furnished by VIASAT, (ii) incorporation of a specific design or modification at the request of ACACIA, (iii) Intellectual Property Rights owned by ACACIA or (iv) the failure by ACACIA to implement changes, replacements or new releases recommended by VIASAT, where the infringement would have been avoided by such changes, replacements or new releases and such changes would not have substantially impaired the functionality of the Deliverable.  ACACIA agrees defend and hold harmless VIASAT from and against any claims, liabilities or actions and to pay all costs, losses, damages, settlement amounts and attorneys' fees incurred in connection with any claim by a third party against VIASAT to the extent that such claim arises out of any of the foregoing, provided that VIASAT promptly notifies ACACIA, in writing, of such claims (except that any delay or failure in notification shall not relieve ACACIA of its obligations except to the extent it has been prejudiced thereby), and provided VIASAT gives ACACIA the sole right to defend and settle such claim at ACACIA's expense with counsel of ACACIA's choice (provided that VIASAT may participate in the defense and settlement of any such claim with counsel of its own choosing at its own expense).  VIASAT shall cooperate with ACACIA in the defense or settlement of the claim.

(d)    This Clause 21 specifies each party's entire liability with respect to infringement of third party Intellectual Property Rights.  VIASAT makes no warranty of non-infringement, express or implied.  Notwithstanding Clause 13, ViaSat's total liability for the cost of any award of damages and costs, or settlement arising under this Clause 21 shall not exceed an amount equal to two (2) times the aggregate amount paid by Acacia to ViaSat pursuant to this Agreement. The existence of one or more claims or lawsuits shall not exceed this amount.

TMG
11/13/09

CR
11/20/09

22.     Modification and Waiver

This Agreement may only be modified or amended in a writing signed by an authorized representative of each party.  A waiver or failure to exercise any right provided for in this Agreement in any respect shall not be deemed a waiver of any further or future rights hereunder. Except as specifically provided otherwise, each right and remedy in this Agreement is in addition to any other right or remedy, at law or in equity, and the exercise of one right or remedy will not be deemed a waiver of any other right or remedy.

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed in duplicate originals by their duly authorized representatives on the day and year first above written.

VIASAT, INC.                           ACACIA COMMUNICATIONS, INC.

Signature (*): _____       Signature (*): _____

Name: Ted M. Gammell                   Name: Christian Rasmussen

Title: Director, Contracts             Title: President

Date:  November 13, 2009               Date: November 20, 2009

*(*) - Delivery of an executed counterpart of a signature page to this Agreement by facsimile or email shall be effective as delivery of a manually executed counterpart of this Agreement.*

*IP CORE DEVELOPMENT AND LICENSE AGREEMENT NO. TG11102009*
*Page 13 of 13*

TMG
11/13/09

CR
11/20/09

Exhibit 1,
Page 21