FITZGERALD KNAIER LLP
  Kenneth M. Fitzgerald, Esq. (SBN: 142505)
  kfitzgerald@fitzgeraldknaier.com
  Keith M. Cochran, Esq. (SBN: 254346)
  kchochran@fitzgeraldknaier.com
550 West C Street, Suite 2000
San Diego, California 92101
Tel: (619) 241-4810
Fax: (619) 955-5318

Attorneys for Plaintiff and Counter Defendant
ViaSat, Inc.

WOLF, GREENFIELD & SACKS, P.C.
  Michael A. Albert (Admitted *Pro Hac Vice*)
  malbert@wolfgreenfield.com
  Hunter D. Keeton (Admitted *Pro Hac Vice*)
  hkeeton@wolfgreenfield.com
600 Atlantic Avenue
Boston, Massachusetts 02210
Tel: (617) 646-8000
Fax: (617) 646-8646


PROCOPIO, CORY, HARGREAVES & SAVITCH LLP
  Victor M. Felix (SBN: 179622)
  victor.felix@procopio.com
525 B Street, Suite 2200
San Diego, California 92101
Tel: (619) 515-3229
Fax: (619) 744-5409

Attorneys for Defendant and Counter Claimant
Acacia Communications, Inc.

[Caption on Next Page]

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ViaSat, Inc.**, *a Delaware corporation*, <br><br> Plaintiff <br> and Counter Defendant, <br><br> v. <br><br> **Acacia Communications, Inc.**, *a Delaware corporation*, <br><br> Defendant <br> and Counter Claimant, | ) Case No.: 3:16-cv-00463-BEN-JMA <br> ) <br> ) **Joint Motion for Determination of** <br> ) **Discovery Dispute** <br> ) <br> ) <br> ) <br> ) Dist. Judge: Hon. Roger T. Benitez <br> ) Hon. Magistrate Jan M. Adler <br> ) <br> ) <br> ) Case Initiated: January 21, 2016 <br> ) <br> ) <br> ) <br> ) |

Plaintiff and counterclaim defendant ViaSat, Inc. and defendant and counterclaimant Acacia Communications, Inc. submit this Joint Motion for Determination of Discovery Dispute. ViaSat seeks to disclose certain Acacia technical documents to ViaSat's consulting experts Sameep Dave and Fan Mo under the terms of the Stipulated Protective Order. Acacia objects to the disclosures.

## I.   ViaSat's Position

### A.   Factual Background

In this action for breach of contract and trade secret misappropriation, both parties assert claims of trade secret theft. Complaint ¶¶ 28-33; Answer ¶¶ 79-84. Specifically with respect to ViaSat's trade secrets, ViaSat alleges that Acacia misappropriated a large swath of technically sophisticated technology in the field of "soft decision forward error correction," or "SDFEC." ViaSat alleges that this misappropriation occurred in at least two ways. *First*, ViaSat alleges that Acacia misappropriated the "SDFEC Core" that it provided to Acacia under the parties' contract, by producing products that contain the same functionality as products for which Acacia previously paid ViaSat royalties. *Second*, ViaSat alleges that Acacia improperly modified, reverse engineered, or otherwise improperly used changes to ViaSat's "SDFEC Core" to provide additional functionality in Acacia's latest-generation products—functionality that is not present in the Acacia products on which Acacia has previously paid ViaSat royalties, but which still improperly depends on ViaSat's "SDFEC Core." At the risk of oversimplification, the SDFEC technology present in both Acacia's royalty-bearing products and Acacia's latest products on which it refuses to pay royalties is called "EVEREST" by both parties. The latest version of Acacia's SDFEC technology—that ViaSat contends is improperly derived from ViaSat's "SDFEC Core"—is called "SKY" by both parties.

Certain engineers employed by both parties were intimately involved with the SDFEC Core and with ViaSat's technology more generally. Because of the sophisticated nature and technical complexity of the technology that is the subject of

1  these claims, the parties' stipulated protective order, entered by the Court on
2  October 21, 2016, provides that "each Party may designate one employee to serve as
3  a consulting Expert, and that designated employee Expert shall be bound by the
4  same provisions governing Experts as set forth elsewhere in this Order."  Docket
5  No. 29 (the "Protective Order") § 2.6.  Employee experts, like other experts under
6  the protective order, may access materials marked "Highly Confidential - Attorneys'
7  Eyes Only" ("AEO").  Protective Order § 7.4.  Indeed, shortly after entry of the
8  Protective Order, Acacia requested, and ViaSat agreed, to increase the number of
9  employee Experts permitted to access AEO materials to three.  Acacia subsequently
10 disclosed ViaSat AEO material to three employee consultants.

11    On December 23, 2016, ViaSat designated two employee consultants under
12 Section 2.6 of the Protective Order:  Fan Mo and Sameep Dave.  ViaSat also
13 provided Acacia with the required disclosures, including both Ms. Fan's and Mr.
14 Dave's Acknowledgement and Agreement to be Bound by the Protective Order.  On
15 January 5, 2017, Acacia stated that it had no objections to the disclosure of Acacia's
16 Trade Secret Identification to Ms. Mo and Mr. Dave, but had not decided regarding
17 disclosure of the six technical documents Acacia had thus far produced.  On January
18 20, 2017, Acacia objected to disclosure of the technical documents:

> These technical documents contain undisclosed trade secrets not alleged to have been misappropriated by ViaSat and not germane to ViaSat's claims of misappropriation against Acacia.  Given the sensitive nature of this material, the parties' direct competitor status, and the cross allegations of trade secret misappropriation, disclosure of the documents in their entirety presents a risk of harm that outweighs the need to disclose Acacia's Technical Documents to Fan Mo and Sameep Dave, especially in light of the fact that ViaSat's outside counsel of record, in-house counsel and outside expert would have access to the documents in their entirety.

26 January 20, 2017, Letter from Michael A. Albert.  Acacia proposed instead to permit
27 disclosure of redacted versions of these documents.  Despite the obvious relevance
28 to ViaSat's claims, Acacia's proposed redactions appear to redact information

regarding the "SKY" functionality in Acacia's latest generation products, as well as information about the "EVEREST" mode in these products. The parties met and conferred by telephone on January 24, 2017, but were unable to reach agreement.

**B.   Acacia Fails to Raise Any Cognizable Objection as to Sameep Dave and Fan Mo**

Acacia's objections to disclosure of technical documents to Fan Mo and Sameep Dave identify no reason why Ms. Mo or Mr. Dave, in particular, should not be permitted to view Acacia's AEO material. As Acacia admits, its grounds for objection to Ms. Mo and Mr. Dave would apply equally to *any* employee of ViaSat: "the sensitive nature of this material, the parties' direct competitor status, and the cross allegations of trade secret misappropriation."

None of Acacia's objections rely on information Acacia received from ViaSat's disclosures under Section 7.4 of the parties' Protective Order, such as Ms. Fan's and Mr. Dave's resumes and consulting histories. Instead, Acacia's objections merely cite general facts about this litigation: it involves sensitive information, competitor parties, and cross allegations of trade secret misappropriation. Of course, Acacia was well aware of the nature of AEO material—by definition sensitive—as well as the issues raised by this litigation and the relationship between the parties, when it agreed to permit disclosure of AEO materials to employee consultants. Acacia was likewise well aware of these facts when it asked ViaSat's permission for three of its own employees to view AEO materials. In fact, the parties agreed to use employee consultants precisely *because* of the nature of this litigation: those with intimate familiarity of the technology and products in question are best suited to assess the very technically complicated evidence. If Acacia's nebulous objections were sufficient basis to withhold AEO information, Section 2.6 of the parties' agreement would be rendered meaningless. Because Acacia has raised no objections that specifically relate to Ms. Mo or Mr. Dave, its objections must fail. Having already benefitted from Section 2.6 of the Protective Order by disclosure of

ViaSat AEO material to its own employees, Acacia likewise cannot be permitted to relitigate the use of employee consultants in this matter.

### C. Sameep Dave and Fan Mo are Uniquely Qualified to Assess the Materials in Question, and Have Fully Complied With the Terms of the Stipulated Protective Order

The purpose of discovery is to allow the parties an opportunity to prepare their respective cases for dispositive motions or trial. The technology in question is highly specialized and includes techniques developed through substantial research and testing. As ViaSat stated in its Rule 26(a)(1) disclosures, Sameep Dave was one of the lead engineers who created the "SDFEC Core" technology that is at the heart of this dispute. Likewise, as ViaSat stated in its Rule 26(a)(1) disclosures, Fan Mo is a ViaSat Engineer and is also very knowledgeable regarding ViaSat's "SDFEC Core" technology. Given their intimate familiarity with the technology at issue, ViaSat's proposed employee experts are the people best suited to assess the technical evidence in this case to determine whether Acacia has, in fact, engaged in wholesale misappropriation of ViaSat's "SDFEC Core" and, separately, whether Acacia has improperly made derivative works from the licensed "SDFEC Core." Both Ms. Fan and Mr. Dave have signed an Acknowledgement and Agreement to be Bound by the Protective Order. They have both agreed to submit to the Court's jurisdiction. There is no basis to suggest that they cannot be trusted to abide by their obligations. Acacia has not made any contention that these individuals are untrustworthy, nor could it do so. While Acacia acknowledges the purpose of the parties' agreement to include review of sensitive materials by a very limited number of employee consultants under the Protective Order in this case, it now seeks to frustrate that purpose by withholding technical documents from review by ViaSat's most qualified technical employees.

Acacia's contention that "ViaSat's outside counsel of record, in-house counsel and outside expert would have access to the documents in their entirety" misses the

point:  the parties *already agreed* that the issues in this case warrant involvement of employee experts in order to efficiently and effectively achieve resolution.  Because ViaSat's counsel of record, in-house counsel, and outside expert lack the in-depth knowledge of ViaSat's "SDFEC Core" technology that Ms. Mo and Mr. Dave possess, access by these other individuals does not obviate the need to enforce the parties' agreement regarding the proper use of employee consultants.

**D.     Acacia's Objections Conflict With its Own Conduct**

Acacia cannot square its own prior interpretation of the Protective Order with its present objections.  Following the Court's entry of the Protective Order, Acacia requested to increase the number of employees permitted to access AEO material so that additional Acacia employees could view ViaSat's Trade Secret Identification.  ViaSat agreed to increase the number of employee consultants from one to three.  Promptly thereafter, and without providing ViaSat with any disclosures under the Protective Order, Acacia provided three of its employees with ViaSat's Trade Secret Identification.  When ViaSat discovered that Acacia had disclosed these materials and sought an explanation, Acacia argued that it was not required to provide any information about the employees simply because ViaSat had agreed to expand the number of employees permitted to access materials designated Highly Confidential – Attorneys' Eyes Only.

By Acacia's logic, the parties' agreement to increase the number of employee consultants was itself sufficient to overcome *any* objection to an individual employee.  ViaSat vehemently disagreed, and argued that the disclosure requirements of Section 7.4 provide an opportunity for the producing party to vet and determine whether the specific employees proposed should or should not be permitted access.  Acacia maintained its position with respect to disclosure of ViaSat AEO materials to its own employees, notwithstanding the "sensitive nature of that information, the parties' direct competitor status, and the cross-allegations of trade secret misappropriation in this litigation."  Now, however, in response to ViaSat's careful

compliance with the letter of the Protective Order, Acacia argues that these known facts are sufficient basis to object to disclosure of its *own* material.  Having relied upon its previous interpretation and disclosed ViaSat's AEO materials to which its own objections would equally apply, Acacia should be estopped from now advancing a competing theory.

During the meet and confer process, Acacia attempted to distinguish its own prior disclosure of ViaSat's AEO materials by arguing that its recently produced technical documents fall into a new tier of documents not contemplated by the Protective Order: *Highly* "Highly Confidential — Attorneys' Eyes Only." Acacia admitted that its "objections to Fan Mo and Sameep Dave would indeed apply to other ViaSat employees"—and thus that there are *no* ViaSat employees that Acacia would allow to see this information.  Acacia further admitted that its sole reason for objecting was because of speculation that Mr. Dave and Ms. Mo might "implement changes in ViaSat's competing products that are suggested to them by Acacia's trade secrets," which risk "substantially outweighs any arguable need for disclosure"—an objection that could apply to *any* technical document in this litigation, which concerns ViaSat's and Acacia's trade-secret products.  Indeed, Acacia gave ViaSat's own *trade secret disclosure* to three of its employees, even though those employees could use ViaSat's disclosure to "implement changes in [Acacia's] competing products that are suggested to them by [ViaSat]'s trade secrets."  Despite all this, Acacia tried to distinguish its own documents by asserting that they contain "highly sensitive technical trade secrets relating to recently developed Acacia products and that these secrets have not been disclosed" before—a standard that appears nowhere in the protective order and which, if applied across the board, would read the employee expert provision out of the protective order.  If Acacia believed its AEO materials were more confidential than ViaSat's, it should have negotiated a new tier in the protective order, or sought to reclassify ViaSat's documents under Section 6 of

the order.  Having failed to do so, it cannot now rely on a *de facto* re-classification to permit disparate treatment of Acacia's own materials.

### E. Acacia's Proposed Compromise Redactions Exclude Highly Relevant Material

Rather than retract its generic objections, Acacia proposed a "compromise" whereby it would permit disclosure of heavily redacted versions of its technical documents to ViaSat's designated consulting experts.  The proposed redactions would apparently permit Acacia to remove what it deems to be "unrelated, irrelevant portions" of these documents from the consulting experts' review.  Acacia's proposal is untenable for two reasons:  first, the material Acacia proposes to redact is *not* unrelated and irrelevant to the litigation; and, second, having waited months before producing technical documents in this matter, Acacia now proposes a time-consuming additional review process whereby ViaSat is forced either to accept Acacia's redactions, or to litigate the scope of Acacia's proposed redactions on a document-by-document basis.

Acacia states that the proposed redacted material relates to "Acacia's independently developed designs, [which are] not germane to the allegations of either party in this action."  This is untrue.  Many of the proposed redactions relate directly to "EVEREST" mode which, in Acacia's new products, provides *identical* functionality to that for which Acacia previously paid ViaSat royalties.  Simply put, the technical content of "EVEREST" mode in Acacia's latest products is at the very heart of ViaSat's complaint, and therefore Acacia's proposed redactions regarding this material would be highly prejudicial to ViaSat.

Acacia now argues that there are two completely separate "EVERESTs": a first "EVEREST" created by ViaSat under the parties' agreement, and another "EVEREST *mode*" that was "independently designed and developed solely by Acacia."  This argument is both implausible and beside the point:  the purpose of this litigation is to determine whether or not Acacia indeed "independently designed

and developed" the technology ViaSat contends it stole.  Acacia cannot avoid discovery on this essential issue simply by concluding that it wins the case.  Furthermore, Acacia's argument, and the declaration of Gary Martin in support of the same, conflict with its own conduct:  Acacia pays royalties to ViaSat on "EVEREST *mode*" products, precisely because Acacia believes that these products are subject to the parties' licensing agreement.

Nor can Acacia redact information related to the "SKY" mode in its latest products.  ViaSat accuses Acacia not only of improperly copying the "SDFEC Core" that ViaSat previously delivered to Acacia—"EVEREST" mode—but also of developing new functionality that still depends on ViaSat's "SDFEC Core"—"SKY" mode.  Acacia will surely contend that it developed SKY mode *without* improperly using ViaSat's technology—but, again, that is the point of this action:  to determine whether Acacia indeed stole ViaSat's technology to develop new functionality for its products, without paying royalties to ViaSat, and to further determine which of Acacia's allegedly "independently designed" products were the result of that theft.  It is thus simply wrong for Acacia to exclude "SKY" mode as irrelevant to this action; to the contrary, it is highly relevant to ViaSat's claims.

Finally, even if Acacia's proposed redactions were properly cabined to "irrelevant" material—and they are not—Acacia's proposed procedure of categorically objecting to the disclosure of any "sensitive" material, and then engaging in a resulting dispute over line-by-line redactions, is needlessly expensive and time-consuming, particularly since Acacia refused to permit Ms. Mo and Mr. Dave access to view even the proposed redacted documents for the purpose of determining whether the redactions appeared at least facially appropriate.  This telling refusal confirms that Acacia's goal in redacting these documents was not truly to resolve the issue, but only for improper delay.

Acacia's proposed procedure would make ViaSat consult with an outside expert simply to determine whether its redactions are agreeable, and, if not, to

initiate a dispute regarding each document simply because Acacia has deemed these documents "sensitive." *All* AEO materials are sensitive, and this procedure could apply to thousands of relevant and highly sensitive documents. As evidenced by its first attempt to invoke this proposed procedure, it is thus very unlikely that ViaSat will be able to accept Acacia's redactions at face value. The parties agreed to no such procedure in negotiating the terms of the Protective Order, and no rule requires this painstaking back and forth. Having articulated no cognizable grounds to object to the disclosure of the documents themselves, Acacia should not be permitted to burden the parties and the Court with this additional procedure on a line-by-line basis.

## II.     Acacia's Position

Acacia's position is straightforward: Acacia should not have to share its most valuable, undisclosed trade secrets with the in-house technical engineers of its direct competitor – particularly one it already accuses of trade secret misappropriation. Moreover, the Protective Order ("PO") entered in this case contemplates the protection Acacia is seeking. It provides for designation of such materials as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" ("AEO") to shield precisely that sort of disclosure.

In the interest of providing some room for negotiated resolution of disputes in cases where the sensitivity of the documents is relatively low, the parties also agreed in the stipulated PO that some disclosures of materials to designated in-house technical employees could be allowed upon request. To that end, they stipulated that a Requesting Party may submit a request to the Designating Party, identifying the specific materials the Requesting Party seeks to disclose; but the fundamental right to protect sensitive materials is still preserved, because the Designating Party could maintain its objection if it believed the disclosure would result in a risk of harm outweighing the need for disclosure. Protective Order, §§ 2.6, 7.4(a). That is

1  the case with regard to the materials at issue here.  Disclosing Acacia's highly
2  commercially valuable and previously-undisclosed trade secrets to the Chief
3  Technology Officer and Technical Director of ViaSat – engineers who engage in the
4  development of competing products – presents such a risk.  ViaSat provides no basis
5  to pierce the AEO shield and destroy the secrecy of these documents.
6  　　　The matter could have ended there; but Acacia tried to propose a middle
7  ground, which ViaSat rejected.  Acacia offered to allow redacted copies of the
8  disputed documents to be shown to ViaSat's designated employees, so as to strike a
9  balance between ViaSat's interest in disclosure and Acacia's interest in minimizing
10 the risk of exposure of its undisclosed trade secrets to a competitor.  ViaSat rejected
11 the proposal and proceeded with this motion.
12 　　　ViaSat's position seeks to vitiate the entire purpose of this and similar
13 protective orders, which are routine in technical cases, by effectively removing the
14 "attorneys' eyes only" provision from the PO altogether.  To do so would allow the
15 disclosure of Acacia's highly sensitive materials to the very employees of its
16 competitor who actively engage in the development of competing products.

**A.    Factual Background**

19 　　　On October 21, 2016, this Court granted the parties' Joint Motion for a
20 Stipulated Protective Order.  See Dkt. No. 29.  The PO has "confidential" and
21 "highly confidential" ("AEO") tiers.  It also contemplates, in some limited
22 circumstances, that an in-house employee could serve as a "consulting Expert."
23 Protective Order § 2.6.[1]  But Section 7.3 of the Protective Order goes on to require
24 that disclosure of AEO materials to such persons must be "reasonably necessary for
25 [the] litigation," and that disclosure, unless otherwise permitted in writing by the

---

[1] Pursuant to a written agreement by the parties on November 3, 2017, the parties agreed to amend the Protective Order and allow three in-house employees to serve as designated employee experts.

Designating Party or order of the Court, must comply with the procedures set forth in paragraph 7.4(a) of the Protective Order. That section requires, among other things, that the party seeking to disclose AEO information must alert the other side and establish on a case-by-case basis its need to do so.

On December 23, 2016, pursuant to Section 7.4(a) of the Protective Order, ViaSat wrote to Acacia seeking permission to disclose Acacia's "Trade Secret Identification" to ViaSat employees Fan Mo and Sameep Dave, respectively the Technical Director and Chief Technology Officer of ViaSat. On January 5, 2017, Acacia confirmed that it would not object to this disclosure because those individuals had already seen that information, inasmuch as it was in effect a list of the trade secrets Acacia accused ViaSat of having *already* misappropriated.

On January 3, 2017, ViaSat wrote to Acacia seeking permission to disclose to Ms. Mo and Mr. Dave certain Acacia documents bearing Production Numbers ACI000001 - 146. On January 18, 2017, Acacia requested a telephone meet and confer with ViaSat's counsel to discuss and attempt to resolve this request. On the call, the parties reached an agreement regarding Production Numbers ACI000001-02. As to the remaining documents, Production Numbers ACI000003-146 ("Acacia's Technical Specifications"), no agreement was reached. Acacia cited the sensitive nature of this material, the parties' direct competitor status, and the cross allegations of trade secret misappropriation as reasons for concern. Specifically, Acacia explained that these documents contained undisclosed trade secrets not alleged to have been misappropriated by ViaSat and not germane to ViaSat's claims of misappropriation against Acacia. On the call, Acacia proposed a compromise: It would redact portions of Acacia's Technical Specifications and allow the remainder to be shown to the ViaSat employees in question. ViaSat requested copies of the proposed redactions, reserving judgment on Acacia's proposal. Acacia did not hear back from ViaSat before the deadline for objection and was, thus, forced to submit its written objection, which it did on January 20, 2017 (again noting its proposed

compromise).  By letter dated January 24, 2017 and on a meet-and-confer call that same day, ViaSat declared an impasse and informed Acacia that it would seek Court intervention.

### B. The AEO Restriction Aligns with the Purpose of Protective Orders Generally, and this Stipulated One in Particular

Contrary to ViaSat's assertion, Acacia is not attempting to relitigate the terms of the stipulated Protective Order.  Rather, it is ViaSat that is seeking to do so.

The Protective Order in this case – as in most cases between competitors involving sensitive technical information – enables the parties to exchange highly sensitive documents with each other's outside counsel, and appropriately-designated outside experts, without placing these secrets in the hands of technical personnel at the competitor.  *See* Fed. R. Civ. P. 26(c); *see also Life Techs. Corp. v. Ebioscience Inc.*, Civ. No. 10cv2127, 2011 WL1597441 (S.D. Cal. Apr. 26, 2011) (noting that protective orders can ensure "that a trade secret or other confidential . . . information not be revealed or be revealed only in a designated way.").  Indeed, the inclusion of an AEO provision made clear that these parties contemplated the need to keep certain proprietary, confidential information out of the hands of the other's technical personnel.  *See Paycom Payroll, LLC v. Richison*, 758 F.3d 1198, 1202–03 (10th Cir. 2014)("The disclosure of confidential information on an 'attorneys' eyes only' basis is a routine feature of civil litigation involving trade secrets. The purpose of this form of limited disclosure is to prevent a party from viewing the sensitive information while nevertheless allowing the party's lawyers to litigate on the basis of that information.") (quotation omitted).

While the parties contemplated in PO § 2.6 that designated employees might see some AEO material, § 7.4 mandates that requests for disclosure of AEO materials to designated employees be made and assessed on a case-by-case basis, depending on the category of information sought to be disclosed. *Id.* at § 7.4.  Thus,

ViaSat's suggestion that allowing one disclosure automatically allows others ignores the principle behind, and structure of, the PO.

### C. Acacia's Objections Are Consistent with its Conduct and Interpretation of the Protective Order as Stipulated

ViaSat's theory that Acacia's positions are internally inconsistent amounts to an attempt to read the AEO provision out of the Protective Order altogether. The Order contemplates that parties could agree to allow disclosures to in-house technical staff on a case-by-case basis where appropriate. Acacia previously agreed, upon ViaSat's request, to allow ViaSat to disclose certain AEO materials (i.e., the list of misappropriated trade secrets) to the in-house engineers. That agreement made sense inasmuch as ViaSat had already seen (and, as alleged, misappropriated) those trade secrets, so little harm could come from disclosing them again. ViaSat now seeks to turn this cooperative gesture into, in effect, a waiver of any and all AEO protections Acacia has even for previously undisclosed, valuable trade secrets.[2]

That the parties agreed to allow certain materials (which had already been previously disclosed anyway) to be seen by the other's technical personnel was not, of course, a blanket waiver of Acacia's objection to the disclosure of any and all of its trade secret information. The documents now in dispute, as explained above and in Mr. Martin's declaration, are highly sensitive technical trade secrets relating to recently developed Acacia products. These secrets have never been disclosed to ViaSat before and should not be now. If there is a spectrum of information along

---

[2] Like Acacia, ViaSat initially served its own Trade Secret Identification on October 21, 2016 under an AEO designation. Acacia objected and asked ViaSat to de-designate that list. In lieu of altering the designation, ViaSat, on November 3 2016, agreed to allow three Acacia technical employees to view that document; and Acacia has allowed ViaSat's technical employees to view Acacia's comparable list. Contrary to ViaSat's suggestion, this agreement did not waive any and all objections that Acacia might have to sharing *other*, far more sensitive technical trade secrets with ViaSat employees.

1  which disclosure to a competitor's engineers may or may not be called for, this is
2  precisely the type of material that lies at the most highly protected end of that
3  spectrum.  It would reveal core technical trade secrets to a direct competitor and
4  adversary, and in particular to the in-house technical and engineering personnel of
5  that company who would be most capable of misusing those materials, whether
6  inadvertently or otherwise.

### D. Fan Mo and Sameep Dave's Roles at ViaSat Are Exactly What Disqualify Them from Disclosure of Acacia's Technical Specifications

As ViaSat admits in its argument, "Sameep Dave [ViaSat's Chief Technology Officer] was one of the lead engineers who created the 'SDFEC Core' technology that is at the heart of this dispute" and Fan Mo, ViaSat's Technical Director, also has "intimate familiarity with the technology at issue." *Supra* at 5.  Acacia objects to the disclosure of its Technical Specifications to these employees since they are the very in-house engineers charged with developing ViaSat's competing products, a fact which ViaSat does not challenge nor even address in its argument.

Acacia's Technical Specifications include proprietary information not known to ViaSat, such as independently developed techniques relating to power and the use of coding not used in or with any ViaSat deliverable under the Agreement.  *See* Ex. A, Declaration of Gary Martin.  Disclosure of Acacia's undisclosed trade secrets, including proprietary techniques and coding schemes, s*ee* Ex. A, to the technical personnel of a direct competitor creates a substantial risk of harm.  *See McAirlaids, Inc. v. Kimberly-Clark Corp.*,  299 F.R.D. 498, 501 (W.D. Va. 2014)(denying access to party's employees where the parties where "the potential for abuse and loss in [the] case [was] real" due to the parties' direct competitor status); *cf. Nazomi Commc'ns, Inc. v. Arm Holdings PLC*, No. C 02-02521-JF, 2002 WL 32831822, at *2 (N.D. Cal. Oct. 11, 2002) (those involved in "competitive decision-making" could be denied access).

The whole point of having an AEO category is precisely to keep core technical trade secrets out of the hands of directly competing product engineers.

As ViaSat points out, Acacia's objections to Fan Mo and Sameep Dave seeing such documents would indeed apply to other ViaSat employees, inasmuch as the disclosure of Acacia's trade secrets to a direct competitor's employees who are actively engaged in the development of competing products in the exact same space presents a serious and immediate risk of harm to Acacia. *See Acer, Inc. v. Tech. Props.*, Nos. C08-00877, 08-00882, 08-00884, 2009 WL 13935551, at *4 (N.D. Cal. May 14, 2009)(denying motion for two technical engineers at party to view AEO material despite provision in PO allowing them do so: "The court is skeptical about allowing even the most trustworthy of defendants' employees to view such sensitive information. That is usually why parties retain experts."). The risk that these employees could (whether consciously or otherwise) implement changes in ViaSat's competing products that are suggested to them by Acacia's trade secrets substantially outweighs any arguable need for disclosure (which as discussed below is minimal).

### E. Acacia's Objection and Proposed Redactions Do Not Inhibit ViaSat's Ability to Assess Acacia's Technical Specifications

ViaSat's outside counsel, inside counsel, and outside expert will still have full access to these documents, if needed for purposes of the litigation. The outside expert presumably has the necessary technical expertise to assess these materials and their relevance, if any, to the case. Consequently, ViaSat has made no showing that it needs to let its engineering staff see Acacia's trade secrets.

Contrary to ViaSat's assertion, ViaSat did not previously deliver what is referred to in Acacia's technical specification as "Everest mode." Rather, under the Agreement, ViaSat delivered a design called "Everest" to Acacia pursuant to Acacia's specifications and collaborative input. *See Martin Decl.* at ¶3. Thereafter, Acacia designed and developed a **different** low-power design, distinct from the Everest design originally provided by ViaSat. *Id.*, ¶ 4. Acacia then spent additional time,

1  resources, effort and expense on independently developing its next generation of
2  DSP ASICs. *Id.*, ¶ 5. Some of these DSP ASICS are capable of dual functionality in
3  modes known as "Everest mode" and "Non-Everest Mode." Despite the chosen
4  nomenclature, both modes were independently designed and developed solely by
5  Acacia. *Id.* ¶ 7. Moreover, the disputed technical specifications, and specifically the
6  proposed redactions, contain details regarding the Everest and Non-Everest modes
7  that are not known to ViaSat. These details include, among other things, proprietary
8  techniques for limiting the amount of RAM used during de-interleaving, *id.* ¶10, as
9  well as the coding scheme used in Non-Everest Mode, details of which are also not
10 known by ViaSat. *Id.* ¶ 9.

11  Even if these AEO materials were relevant (which is at best in dispute,
12 although ViaSat has made no showing that they are), relevance is not the test.[3]
13 Acacia has not sought to withhold them from discovery – indeed, it has produced
14 them. The question, rather, is whether they may properly be treated as AEO and
15 withheld from ViaSat employees actively engaged in designing and developing
16 competing products.[4] *See Brown Bag Software v. Symantic Corp.*, 960 F.2d 1465, 1470
17 (9th Cir. 1992) ("[R]esponding parties are entitled to protection from 'undue burden'

---

[3] After seeing Acacia's position as stated herein, ViaSat, without any support, has added an argument that Acacia's position is "implausible." Acacia's position is supported by a sworn declaration; ViaSat's is not. Additionally ViaSat added the argument that Acacia's position is inconsistent because Acacia paid royalties on "Everest mode" products, which ViaSat contends was done "because Acacia believes that these products are subject to" the Agreement. Contrary to ViaSat's unfounded assertion, Acacia, out of an abundance of caution, paid ViaSat royalties on its "Everest mode" products -- constituting an overpayment to ViaSat -- notwithstanding that these products are not subject to any royalty obligation under the Agreement.

[4] Acacia is not attempting to implement a new "procedure of categorically objecting to the disclosure of any sensitive material." Rather, Acacia is following the agreed upon safeguards and provisions of the stipulated Protective Order. Indeed, Acacia repeatedly attempted to resolve the issue through redactions, which ViaSat rejected.

in discovery, including protection from misuse of trade secrets by competitors."); *see also R.R. Donnelley & Sons Co. v. Quark, Inc.*, No. CIVA 06-032 JJF, 2007 WL 61885, at *2 (D. Del. Jan. 4, 2007) (denying access to individual "routinely engaged in strategic and competitive decision-making" where the risk of "inadvertent disclosure [was] a sufficiently tangible and specific threat to Defendant['s] interests").

### F. Conclusion

ViaSat's technical employees charged with developing products in direct competition with Acacia should not be given access to Acacia's core technical trade secrets. The "AEO" provisions of the Protective Order, and ample precedent, make clear that ViaSat's request for an order compelling such disclosure should be denied.

Dated:  February 13, 2017

FITZGERALD KNAIER LLP

By: *s/ Kenneth M. Fitzgerald*
    Kenneth M. Fitzgerald, Esq.
    Keith M. Cochran, Esq.
    Attorneys for Plaintiff and Counter Defendant ViaSat, Inc.

Dated:  February 13, 2017

WOLF, GREENFIELD & SACKS, P.C.

By: *s/ Michael A. Albert*
    Michael A. Albert
    Hunter D. Keeton
    Attorneys for Defendant and Counter Claimant Acacia Communications, Inc.

## **SIGNATURE CERTIFICATION**

Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures Manual, I hereby certify that the content of this document is acceptable to Michael A. Albert, Esq., and I have obtained his authorization to affix his electronic signature to this document.

Dated: February 13, 2017                    FITZGERALD KNAIER LLP

                          By: *s/ Kenneth M. Fitzgerald*
                              Kenneth M. Fitzgerald, Esq.
                              Keith M. Cochran, Esq.
                              Attorneys for Plaintiff and Counter Defendant ViaSat, Inc.