WOLF, GREENFIELD & SACKS, P.C.
Michael A. Albert (Admitted *Pro Hac Vice*)
Mass. B.B.O No. 558566
malbert@wolfgreenfield.com
Hunter D. Keeton (Admitted *Pro Hac Vice*)
Mass. B.B.O No. 660609
hkeeton@wolfgreenfield.com
Stuart V. C. Duncan Smith (Admitted *Pro Hac Vice*)
Mass. B.B.O No. 687976
sduncansmith@wolfgreenfield.com
600 Atlantic Avenue
Boston, Massachusetts, 02210
Tel: (617) 646-8000 Fax: (617) 646-8646

PROCOPIO, CORY, HARGREAVES & SAVITCH LLP
Victor M. Felix (SBN: 179622)
victor.felix@procopio.com
525 B Street, Suite 2200
San Diego, California, 92101
Tel: (619) 515-3229 Fax: (619) 744-5409

Attorneys for Defendant and Counter Claimant Acacia Communications, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

**ViaSat, Inc.,**
*a Delaware corporation,*

Plaintiff
and Counter Defendant,

v.

**Acacia Communications, Inc.,**
*a Delaware corporation,*

Defendant
and Counter Claimant

Case No. 3:16-cv-00463-BEN-JMA

**ACACIA COMMUNICATIONS, INC.'S REPLY IN SUPPORT OF ACACIA'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING DAMAGES**

**REDACTED**

Judge: Hon. Roger T. Benitez
Mag. Judge: Hon. Jan M. Adler

Date: February 20, 2018
Time: 10:30 a.m.
Courtroom: 5A

**TABLE OF CONTENTS**


I. SECTION 13 OF THE AGREEMENT LIMITS VIASAT'S CLAIMS. ............ 1

A. ViaSat's Interpretation of Section 13 Is Wrong. ............ 1

B. ViaSat Misstates the Law on Limitations of Liability. ............ 3

C. ViaSat Cannot Escape Its Negotiated Limitation of Liability by Recasting Its Contract Claim as a Misappropriation Claim. ............ 6

D. ViaSat's Objection to the "Incentives" Created by the Contract Ignores the Fact that It Actually Incentivized Acacia To Pay ViaSat Millions More than ViaSat had Originally Expected. ............ 6

II. VIASAT CANNOT RECOVER UNJUST ENRICHMENT DAMAGES IN EXCESS OF THE LIMITATION CLAUSE. ............ 8

III. THE NDA LIMITS VIASAT'S MISAPPROPRIATION CLAIM. ............ 9

CONCLUSION ............ 10

# TABLE OF AUTHORITIES

## CASES

*Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1035 (Del. Ch. 2006) .......... 3

*Agilent Techs., Inc. v. Kirkland*, No. 3512, 2010 WL 610725 (Del. Ch. Feb. 18, 2010) .......... 9

*Am. Antenna Corp. v. Amperex Elec. Corp.*, 190 Ill. App. 3d 535 (1989) .......... 2

*B. Braun Med., Inc. v. Rogers*, 163 F. Appx. 500 (9th Cir. 2006) .......... 9

*Bernstein v. GTE Directories Corp.*, 827 F.2d 480 (9th Cir. 1987) .......... 8

*Column Form Tech., Inc. v. Caraustar Indus., Inc.*, No. 12C-09-050, 2014 WL 2895507 (Del. Super. Jun. 10, 2014) .......... 7

*Data Mgmt. Internationalé, Inc. v. Saraga*, No. 05-5108, 2007 WL 2142848 (Del. Sup. Ct. Jul. 25, 2007) .......... 4, 6

*Delphi Petroleum v. Magellan Terminals Holdings, L.P.*, No. 12-2302, 2015 WL 3885947 (Del. Sup. Ct. June 23, 2015) .......... 5

*Digital Envoy, Inc. v. Google, Inc.*, No. 04-1497, 2005 WL 2999364 (N.D. Cal. Nov. 8, 2005) .......... 1, 5, 6, 8

*eCommerce Indus., Inc. v. MWA Intelligence, Inc.*, No. 7471, 2013 WL 5621678 (Del. Ch. Sep. 30, 2013) .......... 2, 3

*Ellis v. Tri State Realty Assocs. LP*, No. 14-3051, 2015 WL 993438 (Del. Sup. Ct. Feb. 27, 2015) .......... 6

*Embotelladora Electropura S.A. de C.V. v. Accutek Packaging Equipment*, Co.No. 16-724, 2017 WL 3288492 (S.D. Cal. Aug. 2, 2017) .......... 5

*Farnham v. Superior Court (Sequoia Holdings, Inc.)*, 60 Cal. App. 4th 69 (1997) .......... 4, 6

*Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*, 209 Cal. App. 4th 1118 (2012) .......... 8

*Health Net of California, Inc. v. Department of Health Services*,
6 Cal. Rptr. 3d 235 (Cal. App. 2003) .......... 5

*J.A. Jones Constr. Co. v. Dover*,
372 A.2d 540 (Del. Sup. Ct. 1977) .......... 4

*Medtronic MiniMed, Inc. v. Nova Biomedical Corp.*,
No. 08-788, 2009 WL 10671420 (C.D. Cal. May 22, 2009) .......... 10

*MIG Invs. LLC v. Aetrex Worldwide, Inc.*,
852 F. Supp. 2d 493 (D. Del. 2012) .......... 9

*Morris v. Zusman*,
857 F. Supp. 2d 1082 (D. Or. 2012) .......... 4

*NACCO Indus., Inc. v. Applica Inc.*,
997 A.2d 1 (Del. Ch. 2009) .......... 1, 3

*RHA Constr., Inc. v. Scott Eng'g, Inc.*,
No. 11C03013, 2013 WL 3884937 (Del. Super. July 24, 2013) .......... 7

*Silicon Image, Inc. v. Analogix Semiconductor, Inc.*,
No. 07-635, 2008 WL 166950 (N.D. Cal. Jan. 17, 2008) .......... 1, 10

*Total Care Physicians, P.A. v. O'Hara*,
798 A.2d 1043 (Del. Sup. Ct. 2001) .......... 9

*Tunkl v. Regents of Univ. of Cal.*,
60 Cal. 2d 92 (1963) .......... 5

*Valhal Corp. v. Sullivan Assocs., Inc.*,
44 F.3d 195 (3d Cir. 1995) .......... 4

*World-Link, Inc. v. Citizens Telecomm. Co.*,
No. 99-2054. 2000 WL 1877065 (S.D.N.Y. Dec. 26, 2000) .......... 8

*Youtie v. Macy's Retail Holding, Inc.*,
653 F. Supp. 2d 612 (E.D. Pa. 2009) .......... 4

**STATUTES**

6 DEL. CODE § 2003(a) .......... 8

Cal. Civ. Code § 1668 .......... 5

CAL. CIV. CODE § 3426.3(a) .......... 8

**OTHER AUTHORITIES**

*An Overview of the Delaware Court System,* https://courts.delaware.gov/overview.aspx .......... 3

http://smallbusiness.chron.com/limitation-liability-service-contracts-61788.html .......... 8

http://www.ecomputerlaw.com/negotiating-a-vendors-limitation-of-liability-clause/ .......... 8

https://www.lawinsider.com/usage/limitation-of-liability-clause-uses-in-independent-contractor-agreement .......... 8

The limitation of liability clause in the contract was negotiated by sophisticated parties through counsel. The clause is enforceable. ViaSat's arguments to the contrary misread the Agreement ("Ag.") and in some cases outright misrepresent case law.

ViaSat alleges that courts refuse to enforce such clauses as to intentional torts (D.I. 103 ("Opp.") at 8-10), but in fact courts do enforce them for anything "short of actual **fraud**"; as ViaSat has not alleged actual fraud, the limitation of liability should be enforced. *NACCO Indus., Inc. v. Applica Inc.*, 997 A.2d 1, 35 (Del. Ch. 2009).

Moreover, ViaSat has already received millions of dollars more than it ever anticipated from Acacia – almost twice as much as it initially sought for a fully paid-up license. Were it to prevail on the merits, it could potentially receive up to that same sum again, even under the limitation of liability clause it negotiated. Yet, in a quest for a windfall, ViaSat characterizes this number as unfair and seeks to void the clause. (Opp. at 10-13). Its position is unsupported. The clause should be enforced as written.

ViaSat also seeks to circumvent the limitation clause by arguing that it can seek "unjust enrichment" damages in excess of any contractual damages, based on the same underlying facts. But the law prohibits such an end-run around a negotiated limitation clause. Yet ViaSat misrepresents the case law, claiming that its key case (*Digital Envoy*) holds the **opposite** of what it actually holds. That court, upon reconsideration, actually clarified that a plaintiff **cannot** obtain trade secret misappropriation remedies beyond what the relevant contract allows. (Ex. 89). **ViaSat neglects to mention this subsequent holding, thus materially misleading this Court.**

ViaSat's last set of arguments about the NDA also fail, as they contort the NDA and the Agreement. ViaSat again ignores the law, as California courts hold that expiration of confidentiality destroys trade secrets. *See Silicon Image, Inc. v. Analogix Semiconductor, Inc.*, No. 07-635, 2008 WL 166950, at *17 (N.D. Cal. Jan. 17, 2008).

# I. SECTION 13 OF THE AGREEMENT LIMITS VIASAT'S CLAIMS.

## A. ViaSat's Interpretation of Section 13 Is Wrong.

ViaSat's argument that Section 13 does not apply because Section 9

incorporates the Agreement's other obligations fails for several reasons. (Opp. at 5-8).

**First**, ViaSat's interpretation transforms a limited exception related to confidentiality into one that would nullify all of Section 13. Under ViaSat's interpretation of Section 9's reference to "use," no alleged violation by Acacia of any obligation elsewhere in the Agreement (i.e., "use" of information received from the other party) would ever be subject to Section 13. Under Delaware law, courts will not interpret an exception to a limitation of liability to effectively delete the limitation of liability clause from the contract. *See eCommerce Indus., Inc. v. MWA Intelligence, Inc.,* No. 7471, 2013 WL 5621678, at *45 (Del. Ch. Sep. 30, 2013) ("The mere fact that MWA's claim involves licensed intellectual property does not bring it within the [intellectual property or confidentiality] exception. If it did, then nearly any claim brought under the Agreement would fall under the exception as well, thus causing the exception to swallow the rule."); *see also* D.I. 75, Mem. at 10-11.

**Second**, ViaSat's interpretation incorrectly seeks to apply the exception in Section 9 (and the NDA) to trade secret misappropriation. The exception cannot encompass tort claims, such as trade secret misappropriation, since the last part of Section 13 **expressly** limits tort liability. *See, e.g., Am. Antenna Corp. v. Amperex Elec. Corp.*, 190 Ill. App. 3d 535, 539 (1989) (rejecting argument that "defendant's breach of contract amounts to a breach of their confidential relationship and, thus, constitutes a misappropriation of trade secrets," because "[t]he alleged breach of contract here is the failure to pay royalties and fees," which is not misappropriation).

**Third**, ViaSat conflates the alleged "use" of trade secrets with the "disclosure" prohibited in Section 9. Trade secret **use** is not **disclosure**. ViaSat never alleged that Acacia disclosed them, only that Acacia used them. Section 9 plainly does not apply.

**Fourth**, ViaSat never **alleged** that Acacia breached Section 9, so as to bring that narrow exception to the liability limitation into play. Nothing in the Complaint alleges anything about Section 9. (D.I. 1-2 ¶¶ 21-23, 29). In its own motion for summary judgment, ViaSat never identifies "Confidential Information" (i.e., the information

protected by Section 9) as being at issue, and never asserted breach based on disclosure of Confidential Information. Section 9 simply is not "the basis of ViaSat's claims." (*E.g.*, D.I. 98, Mem. at 9, 23-25; Opp. at 4).[1]

**B. ViaSat Misstates the Law on Limitations of Liability.**

ViaSat misstates the law when it asserts that a party cannot contractually limit liability for "intentional" torts. ViaSat claims that Delaware law voids such limits as against public policy (Opp. at 8-10); but in fact, Delaware bars such clauses as to **fraudulent** conduct only, **not** as to mere intentional torts.[2] "Delaware law generally elevates contract law over tort.... Delaware law enforces contractual provisions that eliminate the possibility of any tort liability **short of actual fraud** based on explicit written contractual representations."[3] *NACCO*, 997 A.2d at 35; *see also Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1035, 1061-1064 (Del. Ch. 2006) (Delaware mandates that there is "no moral imperative to impinge on the ability of rational parties dealing at arms-length to shape their own arrangements," absent fraud).

ViaSat falsely states that "[n]one of the cases on which Acacia relies applies a contractual limitation of liability to intentional torts." In fact, *eCommerce Indus.* (which Acacia cited at D.I. 75, Mem. at 5, 9-10) upholds a limitation of liability clause to the tort of "intentional interference" with contract, even where the alleged activity was "willful or [in] bad faith." 2013 WL 5621678, at *37, *45. Indeed, "there does not appear to be any Delaware precedent for striking a limitation on contractual liability because of a party's willful or bad faith breach of the contract." *Id.* at *45.

ViaSat's cited Superior Court cases are not to the contrary. Both *J.A. Jones*

---

[1] Indeed, ViaSat repeatedly asserts that its rights include information developed **jointly** between ViaSat and Acacia. (D.I. 98, Mem. at 10, 12, 23). Yet Section 9 expressly applies only to information provided by the **other** party—meaning that ViaSat cannot assert breach based on information provided by Acacia or developed jointly. (Ag. § 9).

[2] ViaSat cites only inapposite Delaware Superior Court cases. This Court should follow the Delaware Chancery Court, as it has expertise in commercial and contractual litigation, and a "national reputation in the business community." *An Overview of the Delaware Court System,* https://courts.delaware.gov/overview.aspx.

[3] Acacia adds emphasis and omits quotations and citations, except as noted.

*Constr. Co. v. Dover*, 372 A.2d 540, 545 (Del. Sup. Ct. 1977), and *Data Mgmt. Internationalé, Inc. v. Saraga*, No. 05-5108, 2007 WL 2142848, at *4-5 (Del. Sup. Ct. Jul. 25, 2007), involve exculpatory clauses that insulate parties from **all** liability, rather than putting a cap on liability. Section 13 does not relieve Acacia from all liability. It just caps damages. Courts recognize this distinction. S*ee Valhal Corp. v. Sullivan Assocs., Inc.,* 44 F.3d 195, 203-04 (3d Cir. 1995) (finding that "limitation of liability clauses are not disfavored…. [S]uch clauses are not subjected to the same stringent standards applied to exculpatory and indemnity clauses."); *Morris v. Zusman*, 857 F. Supp. 2d 1082, 1096-97 (D. Or. 2012) (enforcing "negotiated agreements to cap available money damages at reasonable levels"); *Youtie v. Macy's Retail Holding, Inc.*, 653 F. Supp. 2d 612, 630 (E.D. Pa. 2009) (enforcing "limitation of liability clauses between sophisticated parties to the extent that they are reasonable and do not completely exonerate parties from liability for … intentional acts, regardless of whether the damages are pled in contract or in tort"); *Farnham v. Superior Court (Sequoia Holdings, Inc.)*, 60 Cal. App. 4th 69, 74-75 (1997) (while "exemptions from *all* liability" may be void, "a *limitation* on liability for intentional wrongs" can be enforced (emphasis original)).

In fact, courts consistently **uphold** limitation of liability clauses applying to misappropriation of trade secrets. For example, *Morris* granted the defendant summary judgment that a limitation of liability clause put a ceiling on the plaintiff's trade secret damages, as it was not against California public policy. 857 F. Supp. 2d at 1084, 1096-97 (enforcing "private, voluntary transactions in which one party, for a consideration, agrees to shoulder a risk which the law would otherwise have placed upon the other party."). Similarly, *Youtie* applied a limitation of liability clause to limit trade secret damages. 653 F. Supp. 2d at 630.

By contrast, the clause in *J.A. Jones* did not "address itself to possible damages for breaches," i.e., is not a limitation of liability clause. 372 A.2d at 545. The court also stated that a "party may not protect itself against liability for its own **fraudulent** act or bad faith." *Id.* This case (like others) draws the line of unenforceability at

**fraudulent** behavior and bad faith, not merely intentional conduct. Likewise, *Delphi Petroleum v. Magellan Terminals Holdings, L.P.*, No. 12-2302, 2015 WL 3885947, at *24 (Del. Sup. Ct. June 23, 2015) acknowledged that parties cannot "absolve themselves for their own conduct **amounting to fraud**."

ViaSat also suggests that California law will not require enforcement of a limitation of liability for intentional torts. (Opp. at 9 n.7). ViaSat again misstates the law, representing to this Court that a case holds the opposite of what it actually held. *Digital Envoy*[4] granted summary judgment that even a fully **exculpatory** clause in a private contract **is valid and covered a trade secret claim as a matter of law**. *Digital Envoy v. Google, Inc.*, No. 04-1497, D.I. 403 (N.D. Cal. Jan. 24, 2006) (Ex. 89). *See id.* at 6 ("Digital's argument that Cal. Civ. Code § 1668 invalidates Section of the parties' Agreement similarly fails since California courts have held that Section 1668 applies only to contracts that involve the public interest and not private contracts.").

ViaSat's reliance on other California cases is similarly misplaced. *Embotelladora Electropura S.A. de C.V. v. Accutek Packaging Equipment Co.* upheld a clause insulating the defendant from certain types of damages entirely, and capping any other damages. No. 16-724, 2017 WL 3288492, at *6-7 (S.D. Cal. Aug. 2, 2017) (rejecting the contention "that it must declare the entire [limitation of liability] provision unenforceable" where the provision did not limit liability for "fraud or misrepresentation"). *Health Net of California, Inc. v. Department of Health Services* exclusively pertains to **exculpatory** clauses, not limitation of liability clauses. 6 Cal. Rptr. 3d 235, 239-41 (Cal. App. 2003). Contrary to ViaSat's assertion, California law enforces limitations of liability clauses in private contracts that apply to trade secret claims. *Morris*, 857 F. Supp. 2d at 1096-97; *see also Tunkl v. Regents of Univ. of Cal.*, 60 Cal. 2d 92, 101 (1963) ("[N]o public policy opposes private, voluntary transactions in

---

[4] ViaSat cites an earlier decision in this case, *Digital Envoy, Inc. v. Google, Inc.*, No. 04-1497, 2005 WL 2999364 (N.D. Cal. Nov. 8, 2005), but as discussed below, the court **reconsidered and reversed** the portion of the decision that ViaSat relies on.

which one party, for a consideration, agrees to shoulder a risk which the law would otherwise have placed upon the other party….”); *Farnham*, 60 Cal. App. 4th at 74-75.

**C. ViaSat Cannot Escape Its Negotiated Limitation of Liability by Recasting Its Contract Claim as a Misappropriation Claim.**

ViaSat's attempts to sidestep the limitation of liability clause by arguing that its claims "arise from [Acacia's] violations" of Section 9 and the NDA (Opp. at 8) fail because, on their face, these are **contract**-based allegations. As the *Data Management* case (on which ViaSat relies) explains: "Under Delaware law, a plaintiff bringing a claim based entirely upon a breach of the terms of a contract generally **must** sue in contract, and **not** in tort." 2007 WL 2142848, at *3. "Even an intentional, knowing, wanton, or malicious action by the defendant will not support a claim if the plaintiff cannot assert wrongful conduct beyond the breach of contract itself." *Id.* ViaSat **concedes** that the alleged wrongful conduct all comes from supposed violations of the Agreement's confidentiality provision and the NDA. There is no independent legal duty that Acacia allegedly violated. In *Ellis v. Tri State Realty Assocs. LP*, No. 14-3051, 2015 WL 993438, at *8 (Del. Sup. Ct. Feb. 27, 2015), the court rejected a plaintiff's argument that its tort-based claims were not subject to a limitation of liability clause as "[o]therwise [the plaintiff] could simply convert a breach of contract action into a negligence action to avoid terms of the Contract."

Moreover, ViaSat's own *Digital Envoy* case – whose holding is the opposite of what ViaSat states – cuts directly against ViaSat. That license agreement contained an exculpatory clause. (Ex. 89 at 2-3). The plaintiff argued the clause applied only to its contract claim but not its trade secret misappropriation claim. The court rejected that argument as it would "undercut the purposes of [the clause] if it were to be interpreted as limiting liability only for those losses resulting from breach of the contract." *Id.*

**D. ViaSat's Objection to the "Incentives" Created by the Contract Ignores the Fact that It Actually Incentivized Acacia To Pay ViaSat Millions More than ViaSat had Originally Expected.**

ViaSat argues that enforcing Section 13 could hypothetically have created a perverse incentive for Acacia to pay nothing, so as to lower the liability cap. (Opp. at

12-13). This is wrong for four reasons: First, it ignores the fact that Acacia had to, and did, pay ViaSat the full $3.2 million NRE due upon signing, or the contract would not have taken effect at all (due to lack of consideration, material breach, or fraudulent misrepresentation).[5] At a bare minimum, therefore, the clause would have at least allowed recovery of up to $3.2 million.

Second, it ignores that this term was negotiated by two sophisticated businesses, through counsel, who could determine for themselves what "incentives" to create.

Third, as the actual course of dealings between the parties shows, Acacia was in fact incentivized to (and did) pay ViaSat over [REDACTED] (D.I. 75, Mem. at 2-4). Acacia undisputedly made all the royalty payments required in Section 4(b) in order to have a license to sell its Everest and K2 "Licensed Products." Acacia had an incentive to pay, and did pay, these sums. The contract worked. Acacia has paid almost **twice** the highest amount ViaSat had ever quoted even for a **fully-paid up** license. (*Id.*). And if ViaSat were to prevail on the merits, it could collect up to that same sum a second time, for a total payment of **four times** its highest original expectation. In short, the cap is generous in comparison to ViaSat's own contemporaneous assessment of its technology's value – an assessment ViaSat never disputes in its Opposition.[6] These are not the hallmarks of an agreement with "perverse" incentives.

Fourth, clauses that limit liability to the amount paid under a contract are commonplace. Multiple cases uphold them. *See, e.g.*, *Column Form Tech., Inc. v. Caraustar Indus., Inc.*, No. 12C-09-050, 2014 WL 2895507, at *5 (Del. Super. Jun. 10, 2014) (finding limitation of liability reasonable where limited to amounts paid under contract); *RHA Constr., Inc. v. Scott Eng'g, Inc.*, No. 11C03013, 2013 WL 3884937, at *8 (Del. Super. July 24, 2013) (same); *Bernstein v. GTE Directories Corp.*, 827 F.2d 480 (9th

---

[5] Acacia even paid an additional [REDACTED] to cover ViaSat's cost overruns. (D.I. 75, Mem. at 2-4).

[6] ViaSat's argument that the development fee would be "an absurdly low cap, relative to the value of ViaSat's IP" is unfounded. (Opp. at 12 n.9). ViaSat could have negotiated better terms in the Agreement if it felt such an outcome was "absurd."

Cir. 1987) (affirming enforcement of clause limiting liability to amounts paid, and denying lost profits damages).[7] They even appear in generic contract guides.[8] These run-of-the-mill contractual clauses are enforceable—particularly as between large and sophisticated commercial parties (ViaSat is a publicly-traded company with a market capitalization of $4 billion) represented by counsel.

## II. VIASAT CANNOT RECOVER UNJUST ENRICHMENT DAMAGES IN EXCESS OF THE LIMITATION CLAUSE.

ViaSat's entire section on this point (Opp. at 13-19) misses the mark, as it addresses a position Acacia never took. Acacia never disputed that the UTSA authorizes recovery for "unjust enrichment caused by misappropriation." CAL. CIV. CODE § 3426.3(a); 6 DEL. CODE § 2003(a). Acacia never sought to dismiss ViaSat's trade secret misappropriation claim on this ground. D.I. 75, Mem. at 12-14.

To the extent ViaSat makes any relevant argument here, it is the contention that, where the parties have a contract governing their relationship, courts have permitted unjust enrichment damages for trade secret misappropriation to exceed the contractual damages. But that contention is false.

ViaSat's lead case is *Digital Envoy, Inc. v. Google, Inc.*, No. 04-1497, 2005 WL 2999364 (N.D. Cal. Nov. 8, 2005). (Opp. at 14). But as noted above, **ViaSat fails to tell this Court that the *Digital Envoy* court reconsidered its opinion**, and issued a new one that confirms Acacia's position. (Ex. 89). The new opinion found that an agreement between the parties applied to plaintiff's claim for unjust enrichment under California's trade secret act. *Id.* at 1-2. The plaintiff was "precluded from recovering

---

[7] *See also Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*, 209 Cal. App. 4th 1118, 1127 (2012) (enforcing limitation of liability clause for "total amount paid by [defendant] to [plaintiff] for the services herein covered."); *World-Link, Inc. v. Citizens Telecomm. Co.*, No. 99-2054. 2000 WL 1877065, at *3 (S.D.N.Y. Dec. 26, 2000) (interpreting a limitation of liability clause reading, "[Party's] sole liability under this Agreement… shall be limited to the amount of actual [Party] charges incurred.").

[8] *See, e.g.*, https://www.lawinsider.com/usage/limitation-of-liability-clause-uses-in-independent-contractor-agreement; http://www.ecomputerlaw.com/negotiating-a-vendors-limitation-of-liability-clause/; http://smallbusiness.chron.com/limitation-liability-service-contracts-61788.html.

for any unjust enrichment earned by [defendant] as a result of its alleged trade secret misappropriation based on the limitation of liability provision set forth in … the parties' License Agreement." *Id.* at 6. The court thus enforced a clause even stricter than the one here – one that excepted only willfulness. *Id.* at 6-7. The court dismissed plaintiff's entire trade secret misappropriation claim due to the lack of any available remedy. *Id.* Acacia's summary judgment motion is far narrower, and the clause's effect on ViaSat's claims is much less severe—the Court would only be enforcing a negotiated provision that caps damages at more than [REDACTED].[9]

ViaSat's last-ditch argument is that Section 13 does not apply to "unlicensed" uses (Opp. at 16-19). But by its express terms, Section 13 applies to "the total cumulative liability of either party under this agreement." (Ag. § 13). All of ViaSat's claims arise "under this agreement." Indeed, ViaSat acknowledges elsewhere that even its trade secret claims arise under the contract, saying that "Acacia was limited **by contract** to only use those trade secrets in products for which Acacia paid ViaSat a royalty." (D.I. 98, Mem. at 25). ViaSat cites no contrary case law.[10]

## III. THE NDA LIMITS VIASAT'S MISAPPROPRIATION CLAIM.

Separate and apart from the liability cap, the NDA's five-year confidentiality term limits any ViaSat damages to the period prior to expiration of the confidentiality obligation. (D.I. 75, Mem. at 14-20). ViaSat's counterarguments on this point fail.

ViaSat's argument that Section 9 of the Agreement extends the 5-year confidentiality term of the NDA is wrong. (Opp. at 20-21). The NDA limited secrecy

---

[9] ViaSat's other cases are not to the contrary. In *B. Braun Med., Inc. v. Rogers*, 163 F. Appx. 500, 502, 506 (9th Cir. 2006), there was no executed agreement and thus no analysis of remedies available where an agreement limits the remedy. (Also, as an unpublished disposition issued prior to Jan. 1, 2007, ViaSat's citation to this case violates Ninth Circuit Rule 36-3 and should be disregarded.) Similarly, the contracts in *Agilent Techs., Inc. v. Kirkland*, No. 3512, 2010 WL 610725 (Del. Ch. Feb. 18, 2010) and *Total Care Physicians, P.A. v. O'Hara*, 798 A.2d 1043 (Del. Sup. Ct. 2001) lacked any limitation of liability provisions, and thus do not assess how such a clause operates.

[10] *MIG Invs. LLC v. Aetrex Worldwide, Inc.* declined to dismiss an alternative equitable unjust enrichment claim because the existence of a contract was disputed, which is not an issue here. 852 F. Supp. 2d 493, 512-13 (D. Del. 2012).

to five years from the date of disclosure. Nothing in Section 9 changes that. (D.I. 103, Ex. 1 § 14; Ag. at § 9).

ViaSat's argument about Acacia's counterclaims (Opp. at 21-22) is also wrong at least due to ViaSat's interrogatory asking not when Acacia disclosed its trade secrets **to ViaSat**—the relevant date under the NDA—but rather "the circumstances by which the 'trade secret' was communicated or disclosed **to Acacia**." (D.I. 103, Ex. 38 at 4).

ViaSat's citation to *Medtronic MiniMed, Inc. v. Nova Biomedical Corp.* (Opp. at 23) actually helps Acacia. The companies there signed five NDA agreements, but only one with an expiring confidentiality term. No. 08-788, 2009 WL 10671420, at *1-3 (C.D. Cal. May 22, 2009). The expiration of that one **alone** did not preclude trade secret protection. *Id.* at *5 (expiring agreement "combined with" one that did not).

Finally, ViaSat simply ignores the many cases holding that a lapsed confidentiality obligation extinguishes trade secret protection. (Opp. at 24 n.16; *see* Mem. at 17-18). Contrary to ViaSat's suggestion, California has also adopted this rule. *See Silicon Image*, 2008 WL 166950, at *17 ("courts have denied trade secret protection where… the information was disclosed under a non-disclosure agreement with only a limited duration."); *see also Medtronic*, 2009 WL 10671420, at *5 (noting rule in *Silicon Image*). ViaSat lost its trade secrets when the confidentiality term of the NDA ended.

**CONCLUSION**

For the above reasons and those in its opening memorandum (D.I. 75, Mem.), Acacia respectfully requests that the Court grant its summary judgment motion.

Date: February 13, 2018

Respectfully Submitted,

WOLF, GREENFIELD & SACKS, P.C.

By: *s/Michael A. Albert*

Michael A. Albert
Hunter D. Keeton
Stuart V. C. Duncan Smith

Attorneys for Defendant and Counter Claimant Acacia Communications, Inc.

**CERTIFICATE OF SERVICE**

I certify that today I caused to be served the redacted version of the foregoing document by CM/ECF notice of electronic filing upon the parties and counsel registered as CM/ECF Users. I further certify that am causing the redacted and unredacted versions of the foregoing document to be served by electronic means via email upon counsel for ViaSat, Inc., per the agreement of counsel.

Date: February 13, 2018

*s/Michael A. Albert*
Michael A. Albert