UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIASAT, INC., etc.,<br>    Plaintiff/Counter-Defendant,<br>v.<br>ACACIA COMMUNICATIONS, INC.,<br>    Defendant/Counter-Claimant. | Case No.: 16cv463 BEN (JMA)<br><br>**ORDER REGARDING JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE NO. 3**<br>**[ECF No. 80]** |

Presently before the Court is Joint Motion for Determination of Discovery Dispute No. 3 in which Defendant/Counter-Claimant Acacia Communications, Inc. ("Acacia") moves to strike portions of the deposition errata submitted by deponent Chandrasekar Raj. Plaintiff/Counter-Defendant ViaSat, Inc. ("ViaSat") opposes the motion. [ECF No. 63.] As discussed further below, Acacia's motion is GRANTED.

**A.    Background Facts**

Chandrasekar Raj ("Raj") is the Director of Business Development for ViaSat's Cleveland office. Mr. Raj was deposed by Acacia's counsel on October 13, 2017. On December 4, 2017, Raj submitted an errata sheet, making both typographic and substantive changes to the deposition transcript. On December

18, 2017, Raj signed a declaration providing further explanations of the changes in his errata sheet.

Acacia seeks the strike the following changes to Raj's testimony[1]:

> Q: So for this particular business, ViaSat Cleveland's business . . . does this indicate to you that at the time you sent this data sheet to ECI Tele[com], there was no NDA [non-disclosure agreement] with ECI Tele?
>
> A: . . . It looks like we shared the basic data sheet. **_We were told an NDA was being signed, and it was signed with an effective date of March 14, 2011_**.

(Joint Mot., Exs. 3 & 4, Raj Dep., 70:2-13 & Raj. Dep. Errata.)

> Q: So that would mean at the time that you sent this data, this product specification to them -- there was no confidentiality obligation in place between ECI Tele and ViaSat Cleveland?
>
> MR. COCHRAN: Objection. Misstates prior testimony.
>
> A: **_We were told an NDA was being signed, and it was in place effective March 14, 2011._** So this is a product brief, a product spec that we can share. So that's what we shared.

(*Id.*, 70:19-71:5.)

> Q: Okay. Would it be fair to say that this is a product specification ViaSat Cleveland was willing to share with customers without a confidentiality obligation in place with that customer?
>
> A: Would Via Sat -- ~~I don't know, but at least for this program, it looks like it's okay to share, you know, the basic information that I have.~~ **_No. This product information was shared with an NDA in effect._**

---

[1] Raj's additions are indicated in bold italics, and his deletions in strikethrough font.

2

16cv463 BEN (JMA)

> Q: Okay to share this product specification -- without an NDA in place?
>
> A: ~~Without a full NDA in place, correct.~~ **No, this information was shared with an NDA in effect.**
>
> Q: Without any NDA in place, correct?
>
> A: ~~Without any NDA in place, yes.~~ **No, this information was shared with an NDA in effect.**

(*Id.* at 71:15-72:5.)

Raj attests that after his deposition, he learned ViaSat "did in fact have an NDA in place with ECI Telecom with an effective date of March 14, 2011." (Raj Decl., ¶ 4.) He thus made the above changes to his deposition transcript "[t]o account for this fact and ensure that my deposition testimony was accurate." (*Id.*)

Acacia also seeks to strike the following changes:

> Q: Do you know if ViaSat would have required an NDA before sending this product specification, Exhibit 617, to a customer or potential customer?
>
> A: I cannot be sure, but, again, it depends on the customer. ~~We may or may not have required an NDA before sending this document.~~ **We would require an NDA in order to send this document.**

(Joint Mot., Exs. 3 & 4, Raj Dep., 82:23-83:4 & Raj. Dep. Errata.)

> Q: I guess put a different way: You don't know that ViaSat always required an NDA with a customer or potential customer before sending them Exhibit 617. Fair?
>
> A: ~~Yes.~~ **I believe we did require an NDA before sending them this document.**

3

16cv463 BEN (JMA)

(*Id.* at 83:14-18.)

> Q: Okay, but this is not the type of product specification that ViaSat would always require an NDA before sending to a third party . . . correct?
>
> . . . .
>
> MR. COCHRAN: Objection. Misstates prior testimony.
>
> A: ~~Possibly, because it's a product spec and it looks like a high-level document to me.~~ **This form of production specification required an NDA.**

(*Id.* at 84:5-16.)

> Q: So it's the kind of document that ViaSat has distributed to third parties without requiring an NDA?
>
> MR. COCHRAN: Objection. Misstates prior testimony. Calls for speculation.
>
> . . . .
>
> A: ~~ViaSat Cleveland, you know, we may or may not have sent it without requiring NDA, and based on the document, it looks like it's a high-level product brief.~~ **I do not believe this document was sent without knowing an NDA would be in effect.**
>
> Q: So it looks like the kind of high-level product brief that would not require an NDA before ViaSat Cleveland would send it to a third party?
>
> A: ~~Yes.~~ **No.**
>
> MR. COCHRAN: Objection. Misstates prior testimony. Calls for speculation.
>
> A: ~~Yes.~~ **No.**

4

(*Id.* at 85:7-86:2.) Raj states these changes are needed because during his deposition, he confused two different product specifications, each with "ECC66100" in the title. (Raj Decl., ¶ 3.) He explains:

> One product specification was two pages, and was a general, high-level product specification that was circulated without an NDA in place. The other product specification, which is the subject of my testimony on pages 83-86 of my deposition transcript, was an 8-page product specification that was not shown without an NDA in place. During my deposition, I was questioned about the 8-page product specification, but I believed that I was being asked questions about the 2-page product specification. When I reviewed my deposition transcript, I realized my mistake."

(*Id.*) Acacia contends all of the above changes should be stricken because they are contradictory to Mr. Raj's original testimony. ViaSat states the changes are needed to ensure "completeness" and "accuracy." (Ex. 3.)

**B.    Legal Standards**

Rule 30 of Federal Rules of Civil Procedure provides:

> On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which: (A) to review the transcript or recording; and (B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

Fed. R. Civ. P. 30(e). In 2005, the Ninth Circuit considered the scope of Rule 30(e) as a matter of first impression in *Hambleton Bros. Lumber Co. v. Balkin Enter.*, 397 F.3d 1217 (9th Cir. 2005). The court stated, "A statement of reasons explaining corrections is an important component of errata submitted pursuant to FRCP 30(e), because the statement permits an assessment concerning whether the alterations have a legitimate purpose." *Hambleton*, 397 F.3d at 1224-25.

5

The Ninth Circuit continued:

> While the language of FRCP 30(e) permits corrections "in form or substance," this permission does not properly include changes offered solely to create a material factual dispute in a tactical attempt to evade an unfavorable summary judgment. . . . The Tenth and Seventh Circuits have interpreted FRCP 30(e) similarly. *See, e.g., Burns v. Bd. of County Comm'rs,* 330 F.3d 1275, 1281-82 (10th Cir. 2003) ("We see no reason to treat Rule 30(e) corrections differently than affidavits, and we hold that Burns's attempt to amend his deposition testimony must be evaluated under [the sham affidavit doctrine]."); *accord Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1242 n.5 (10th Cir. 2002) ("'The Rule cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination.'") (quoting *Greenway v. Int'l Paper Co.*, 144 F.R.D. 322, 325 (W.D. La. 1992)); *Thorn v. Sundstrand Aerospace Corp.*, 207 F.3d 383, 389 (7th Cir. 2000) ("We also believe, by analogy to the cases which hold that a subsequent affidavit may not be used to contradict the witness's deposition, that a change of substance which actually contradicts the transcript is impermissible unless it can plausibly be represented as the correction of an error in transcription, such as dropping a 'not.'") (citations omitted). We agree with our sister circuits' interpretation of FRCP 30(e) on this point, and hold that Rule 30(e) is to be used for corrective, and not contradictory, changes.

*Hambleton*, 397 F.3d at 1225-26.

As recently observed by U.S. Magistrate Judge Nancy J. Koppe of the District of Nevada, district courts within the Ninth Circuit "have struggled to interpret and apply" the "corrective, and not contradictory, changes" standard in a uniform manner. *Ashcraft v. Welk Resort Group Corp.*, 2017 WL 5180421, at *1 (D. Nev. Nov. 8, 2017). Here, as in *Ashcraft*, the parties ask this Court to

6

interpret this standard differently, with each side's position supported by varying district court decisions within the Ninth Circuit. The Court agrees with Judge Koppe's analysis and conclusion that "courts should limit Rule 30(e) changes to those correcting stenographic mistakes and, consequently, should bar parties from using Rule 30(e) to change the testimony actually given." *Id.* at *4. Other cases in this district have applied Rule 30(e) in a similar manner. *See, e.g., Tourgeman v. Collins Fin. Servs., Inc.*, 2010 WL 4817990 (S.D. Cal. Nov. 22, 2010) (Sammartino, J.); *Azco Biotech Inc. v. Qiagen, N.V.*, 2015 WL 350567 (S.D. Cal. Jan. 23, 2015) (Bartick, J.); *Blair v. CBE Grp. Inc..*, 2015 WL 3397629 (S.D. Cal. May 26, 2015) (Gallo, J.). "Even though the text of Rule 30(e) allows deponents to make changes 'in form or substance,' the rule does not allow a deponent to alter what was said under oath because a deposition is not a take home examination." *Ashcraft*, 2017 WL 5180421 at *4 n.3; *accord Blair*, 2015 WL 3397629, at *10 ("The purpose of depositions is to determine the facts of the case while the witness is under the scrutiny of examination. The purpose is certainly not to find out how the witness answers questions with the ability to calmly reflect on the responses for 30 days in collaboration with counsel.").[2]

While the facts in *Hambleton* concerned what appeared to be "purposeful rewrites" of deposition testimony "tailored to manufacture an issue of material fact" for the purposes of avoiding summary judgment, found by the Ninth Circuit to be akin to a "sham" affidavit, the holding of the case is not limited to those facts. *See, e.g., Azco Biotech*, 2015 WL 350567 at *4. Furthermore, the Court does not read *Hambleton* to apply only when a summary judgment motion is pending. *Tourgeman*, 2010 WL 4817990 at *3.

---

[2] "A deponent may make a formal or substantive change to correct a stenographic mistake: Should the reporter make a substantive error, *i.e.*, he reported 'yes' but I said 'no,' or a formal error, *i.e.*, he reported the name to be 'Lawrence Smith' but the proper name is 'Laurence Smith,' then corrections by the deponent would be in order." *Ashcraft*, 2017 WL 5180421, at *4 n.3 (citations and internal quotations omitted).

Interpreting Rule 30(e) in a manner which prohibits a deponent from changing his deposition testimony regardless of whether the deponent truly believes his testimony was mistaken is consistent with important policy considerations. Again, depositions are different from interrogatories as they are not a "take home examination." *Garcia*, 299 F.3d at 1242 n.5. Additionally, an attorney is precluded from coaching a witness during his deposition. "Allowing a deponent to alter testimony through after-the-fact changes (potentially in consultation with [his] attorney) would undermine these well-settled deposition rules, effectively permitting the substitution of interrogatory answers for deposition testimony and permitting attorneys to alter the deponent's testimony." *Ashcraft*, 2017 WL 5180421, at *5 (*citing Greer v. Pacific Gas. & Elec. Co.*, 2017 WL 2389567, at *7 (E.D. Cal. June 1, 2017)). As such, the Court finds the correct interpretation of *Hambleton* is that it limits the scope of Rule 30(e) changes to corrections of stenographic errors, whether those corrections are of form or substance, and that Rule 30(e) is not properly used to alter deposition testimony provided under oath and correctly transcribed.

**B. Discussion**

    **1. Raj Deposition Errata**

ViaSat contends the changes to Mr. Raj's testimony are necessary for "completeness" and "accuracy" reasons. (Joint Mot., Ex. 3.) Mr. Raj seeks to correct his testimony in two areas of his deposition, both of which relate to whether he shared ViaSat's product specifications with or without an NDA in place. In the first area of testimony (on pages 70 to 72 of his deposition transcript), Raj seeks to change the transcript to reflect that he sent the product specification referred to as "Exhibit 616"[3] to ECI Telecom, a prospective client,

---

[3] This product specification refers to a 6-page document entitled, "ECC66100 Series SD-FEC Encoder/Decoder Cores Product Specification." *See* Joint Mot., Ex. 1.

with an NDA in effect, notwithstanding his testimony that it was "okay to share" the information without an NDA in place. As set forth above, he attests he learned after his deposition that ViaSat "did in fact have an NDA in place with ECI Telecom with an effective date" prior to his sharing of the product specification. (Raj Decl., ¶ 4.) Similarly, in the second area of testimony (on pages 83 to 86 of his deposition transcript), Raj seeks to change the transcript to read that ViaSat would require an NDA to be in place before sharing the product specification referred to as "Exhibit 617," despite his actual testimony that he would have shared this product specification without an NDA.[4] He explains that he confused two different product specifications, each with "ECC66100" in the title, and thought he was testifying about a 2-page product specification rather than the 8-page product specification. (*See* Raj Decl., ¶ 3.) He makes this assertion despite the fact he was shown Exhibit 617 during his deposition. (Raj. Dep. at 83:3-5.)

The changes at issue are not permitted under Rule 30(e), as they are not the result of any stenographic mistakes. Irrespective of whether the changes are purposeful rewrites made to better suit the needs of ViaSat's case or due to honest mistakes by Mr. Raj at deposition, the changes are substantive and directly contradict the testimony Raj provided under oath. "Changing 'yes' to 'no' and 'correct' to 'no not correct' are paradigmatic examples [of] contradiction, rather than correction." *Tourgeman*, 2010 WL 4817990 at *2; *see also Ashcraft*, 2017 WL 5180421, at *6 ("Rule 30(e) is not the proper vehicle for trying to alter unfavorable deposition testimony regardless of whether the deponent truly believes upon reflection that the testimony was wrong.") Moreover, ViaSat's counsel was present at the deposition and had an opportunity to question Raj to

---

[4] Exhibit 617 consists of an 8-page document entitled, "ECC66100.SD15 Turbo Product Code Encoder/Decoder Cores Product Specification." (Joint Mot., Ex. 2.)

clear up any inaccuracies. There is no indication that counsel asked any clarifying questions or "attempt[ed] to rehabilitate his client regarding the responses in dispute, although that is a major part of counsel's role at the depositions." *Blair*, 2015 WL 3397629, at *10. Counsel may not prompt a witness during a deposition, and should not be permitted to do so after the deposition. *Id.* ViaSat's contention that the Court should not strike the changes in the errata sheet because documentary evidence corroborates the changes is unavailing. "[W]hether other evidence supports the proposed changes is not the standard under Rule 30(e)." *Azco Biotech*, 2015 WL 350567, at *4.

The Court notes that Mr. Raj is not precluded from later clarifying or correcting any testimony he believes to be erroneous. "[I]f a party believes its deponent gave false testimony under oath, it may so explain to the fact-finder during the normal course of the litigation." *Ashcraft*, 2017 WL 5180421, at *6. Raj can file an affidavit or provide testimony at trial explaining his mistaken deposition testimony and the reasons for any corrections. He "will have a full opportunity to explain his mistaken testimony at summary judgment or trial. The finder of fact will have the opportunity to decide [Mr. Raj's] credibility and reliability on the facts in question, and may ultimately decide that he was honestly mistaken about certain facts when he gave his deposition testimony." *Lewis v. The CCPOA Benefit Trust Fund*, 2010 WL 3398521, at *4 (N.D. Cal. Aug. 27, 2010).

### 2. Prucnal Deposition Errata

ViaSat contends that should the Court strike Raj's deposition errata, the errata of Acacia's witness, Dr. Paul Prucnal, should similarly be stricken. The relevant portion of Dr. Prucnal's deposition transcript reads as follows:

> Q: Well, the trade secret doesn't specify what the demodulator is except that it's a digital demodulator inside an *adaptive equalizer*. Correct?

```
           A:     That's correct.
```
(Joint Mot., Ex. 8, Prucnal Dep., 112:11-15 [emphasis added].)  Dr. Prucnal, in his deposition errata, seeks to amend his answer as follows:

> A: That's correct. **The trade secret doesn't specify what the demodulator is except that it's a digital demodulator that has certain features and is inside an optical receiver**.

(Joint Mot., Ex. 10, Prucnal Dep. Errata.)  As it turns out, there is an error in the transcription of the question:  "adaptive equalizer" was used instead of "optical receiver."  *See* Prucnal Video Dep., https://d.warrenlex.com/2n51bQX (as visited Feb. 14, 2018); *see also* Joint Mot. at 18 n.11 ("Throughout this colloquy, the reporter mistranscribed counsel for ViaSat's questions, substituting "adaptive equalizer (another term in the case) for "optical receiver.").  Acacia explains that Dr. Prucnal's clarification was responsive to the actual transcript, that the transcription error rendered the question "gibberish on a technical level," and that Dr. Prucnal clarified his answer in order to ensure it was not "misinterpreted as an admission to this gibberish."  (Joint Mot. at 10.)

  The deposition transcript should be corrected to reflect the actual text of the question ("Well, the trade secret doesn't specify what the demodulator is except that it's a digital demodulator inside an optical receiver.  Correct?"), which would render Dr. Prucnal's clarification in his deposition errata moot.  Dr. Prucnal's original answer ("That's correct.") should stand without modification.

## C. Conclusion

  For the reasons set forth above, Acacia's motion to strike is **GRANTED**.  The Court **STRIKES** the following portions of Mr. Raj's deposition errata sheet: 70:13, 71:3, 71:20-23, 72:3, 72:5, 83:3-4, 83:18, 84:14-16, 85:16-19, 85:23, and 86:2.  The Court further **STRIKES** Dr. Prucnal's deposition errata sheet at 112:15.  The parties shall ensure the transcript of Dr. Prucnal's deposition is

corrected as set forth above.

**IT IS SO ORDERED**.

Dated: February 15, 2018

_____
Honorable Jan M. Adler
United States Magistrate Judge