WOLF, GREENFIELD & SACKS, P.C.
  Michael A. Albert (Admitted *Pro Hac Vice*)
  Mass. B.B.O No. 558566
  malbert@wolfgreenfield.com
  Hunter D. Keeton (Admitted *Pro Hac Vice*)
  Mass. B.B.O No. 660609
  hkeeton@wolfgreenfield.com
  Stuart V. C. Duncan Smith (Admitted *Pro Hac Vice*)
  Mass. B.B.O No. 687976
  sduncansmith@wolfgreenfield.com
600 Atlantic Avenue
Boston, Massachusetts, 02210
Tel: (617) 646-8000   Fax: (617) 646-8646

PROCOPIO, CORY, HARGREAVES & SAVITCH LLP
  Victor M. Felix (SBN: 179622)
  victor.felix@procopio.com
525 B Street, Suite 2200
San Diego, California, 92101
Tel: (619) 515-3229   Fax: (619) 744-5409

Attorneys for Defendant and Counter Claimant Acacia Communications, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ViaSat, Inc.,**<br>*a Delaware corporation,*<br><br>　　　　Plaintiff<br>　　　　and Counter Defendant,<br><br>v.<br><br>**Acacia Communications, Inc.,**<br>*a Delaware corporation,*<br><br>　　　　Defendant<br>　　　　and Counter Claimant | Case No. 3:16-cv-00463-BEN-JMA<br><br>**ACACIA COMMUNICATIONS, INC.'S OPPOSITION TO VIASAT, INC.'S MOTION TO EXCLUDE EXPERT TESTIMONY**<br><br>**REDACTED**<br><br>Judge: Hon. Roger T. Benitez<br>Mag. Judge: Hon. Jan M. Adler<br><br>Date: March 5, 2018<br>Time: 10:30 a.m.<br>Courtroom: 5A |

1

**TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................1

ARGUMENT...................................................................................................4

I.    LEGAL STANDARD ..............................................................................4

II.   DR. VARDY'S AND DR. KORALEK'S OPINIONS REGARDING
THE MEANING OF "SDFEC CORE" ARE ADMISSIBLE. ...........5

    A.  Dr. Vardy's Opinion Regarding the
Meaning of "SDFEC Core" Is Admissible............................6

    B.  Dr. Koralek's Opinion Regarding
the Meaning of "SDFEC Core" Is Admissible.......................7

    C.  ViaSat's Challenges Regarding the Meaning
of "SDFEC Core" Go to Weight, Not Admissibility. ...........8

III.  DR. KORALEK'S OPINION THAT ACACIA
DOES NOT USE VIASAT'S ATS 7 IS ADMISSIBLE. ....................9

    A.  Dr. Koralek's Testimony Regarding the
Requirements of Alleged Trade Secret No. 7 Is Admissible. ..........9

        1.  ViaSat Ignores Most of Dr. Koralek's
Factual Bases for Determining That ATS 7
█████████████████████████████████."..............9

        2.  ViaSat Mischaracterizes Dr. Koralek's
Testimony Regarding the '837 Patent..........................11

    B.  ViaSat Cannot Exclude All of Dr. Koralek's
Opinions Regarding Acacia's Non-Use of
ATS 7 by Challenging One Narrow Portion. ......................12

    C.  ViaSat's Challenge to Dr. Koralek's Report
Again Goes to Weight, Not Admissibility............................13

IV.  DR. VARDY'S OPINIONS DO NOT
EXCEED THE SCOPE OF HIS EXPERTISE...............................14

    A.  Dr. Vardy Does Not "Simply Parrot Assertions
by Acacia Fact Witnesses" as Expert Opinion....................14

    B.  Dr. Vardy Does Not Present Opinions About
Trade Secret Protection Outside His Area of Expertise.................16

    C.  ViaSat's Challenges to Dr. Vardy's
Report Go to Weight, Not Admissibility.............................17

V.   MR. BERSIN'S OPINIONS REGARDING VIASAT'S
AND ACACIA'S DAMAGES ARE ADMISSIBLE. .........................17

A.   Mr. Bersin Applied the Proper Legal
     Standard for Calculating Unjust Enrichment. ....................................................17

B.   ViaSat's Challenge to Mr. Bersin's
     Report Go to Weight, Not Admissibility..........................................................20

C.   ViaSat's Untimely Production of Relevant
     Documents and Testimony Regarding Revenues
     From Its ████████ Hindered Mr. Bersin's Opinions..............................20

CONCLUSION ...........................................................................................................22

# TABLE OF AUTHORITIES

## CASES

*350 W.A. LLC v. Chubb Grp. of Ins.,*
   No. 05-75, 2007 WL 4365502 (S.D. Cal. Dec. 5, 2007) ................................ 5, 8, 17, 20

*Ajaxo Inc. v. E\*Trade Fin. Corp.,*
   187 Cal. App. 4th 1295 (2010) ........................................................................ 18

*Apple iPod iTunes Antitrust Litig.,*
   No. 05-37, 2014 WL 4809288 (N.D. Cal. Sep. 26, 2014) .................................. 8, 17, 20

*Area 55, Inc. v. Amazon.com, Inc.,*
   No. 11-145, 2012 WL 12846975 (S.D. Cal. July 24, 2012) ............................................ 13

*Dane Techs., Inc. v. Gatekeeper Sys., Inc.,*
   Civ. No. 12-2730, 2015 WL 12819180 (D. Minn. Jan. 20, 2015) ................................ 15

*Daubert v. Merrell Dow Pharm., Inc.,*
   509 U.S. 579 (1993) ..................................................................................... 1, 4

*Direct Techs., LLC v. Elec. Arts, Inc.,*
   836 F.3d 1059 (9th Cir. 2016) ........................................................................ 11

*Hertz v. Luzenac Am., Inc.,*
   No. 04-1961, 2011 WL 1480523 (D. Colo. Apr. 19, 2011) ........................................... 14

*Hilderman v. Enea TekSci, Inc.,*
   551 F. Supp. 2d 1183 (S.D. Cal. 2008) ........................................................... 11

*Kumho Tire Co. v. Carmichael,*
   526 U.S. 137 (1999) ..................................................................................... 15

*Magnetar Techs. Corp. v. Six Flags Theme Parks Inc.,*
   No. 07-127, 2014 WL 530241 (D. Del. Feb. 7, 2014) .................................... 18

*Mobil Oil Corp. v. Amoco Chems. Corp.,*
   915 F. Supp. 1333 (D. Del. 1994) ................................................................. 18

*Pacific Fuel Co. L.L.C. v. Shell Oil Co.,*
   No. 06-0225, 2008 WL 11336467 (C.D. Cal. Jan. 24, 2008) ...................................... 5, 7

*PharmaStem Therapeutics, Inc. v. ViaCell, Inc.,*
   491 F.3d 1342 (Fed. Cir. 2007) ..................................................................... 8

*Procter & Gamble Co. v. Paragon Trade Brands, Inc.*,
    989 F. Supp. 547 (D. Del. 1997) ........................................................................18

*Regents of Univ. of Cal. v. Dako N. Am., Inc.*,
    No. 05-3955, 2009 WL 1083446 (N.D. Cal. Apr. 22, 2009) ...........................14

*Sec. & Exch. Comm'n v. Nutmeg Grp., LLC*,
    No. 09-1775, 2017 WL 1545721 (N.D. Ill. Apr. 28, 2017) ...............................1

*Silicon Labs., Inc. v. Cresta Tech. Corp.*,
    No. 14-3227, 2016 WL 836679 (N.D. Cal. Mar. 3, 2016) ...............................14

*Steinberg Moorad & Dunn, Inc. v. Dunn*,
    No. 01-7009, 2002 WL 31968234 (C.D. Cal. Dec. 26, 2002) ........................11

*Sundance, Inc. v. DeMonte Fabricating Ltd.*,
    550 F.3d 1356 (Fed. Cir. 2008) .........................................................................15

*Theranos, Inc. v. Fuisz Pharma LLC*,
    No. 11-5236, 2014 WL 12695908 (N.D. Cal. Mar. 10, 2014) .........................4

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011) .........................................................................18

*United States ex rel. Jordan v. Northrop Grumman Corp.*,
    No. 95-2985, 2003 WL 27366249 (C.D. Cal. Mar. 10, 2003) .........................6

*VirnetX, Inc. v. Cisco Sys., Inc.*,
    No. 2013-1489, 2014 WL 4548722 (Fed. Cir. Sep. 16, 2014) ........................19

*Waymo LLC v. Uber Techs., Inc.*,
    No. 17-939, 2017 WL 6887043 (N.D. Cal. Nov. 14, 2017) ...........................15

*Whole Women's Health v. Hellerstedt*,
    136 S. Ct. 2292 (2016) ........................................................................................16

**STATUTES**

Cal. Civ. Code § 3462.1(d) ...........................................................................................10

**OTHER AUTHORITIES**

*The Litigation Services Handbook: The Role of the Financial Expert*,
    Weil, Roman L.; Lentz, Daniel G.; Hoffman, David P. (6th ed. 2017) .......................19

1

**RULES**

2

Fed. R. Evid. 702................................................................................................4, 16

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Plaintiff ViaSat, Inc. ("ViaSat") has filed a shotgun motion seeking to exclude various unrelated portions of the testimony of Defendant Acacia Communications, Inc.'s ("Acacia") experts.  In fact, ViaSat seeks exclusion on just about every point where it disagrees with Acacia's experts.  But ViaSat's mere disagreement with their analysis is insufficient reason to strike their opinions, which are based on relevant technical and industry expertise.  The Court should therefore deny ViaSat's motion.

ViaSat's motion challenges numerous discrete aspects of Acacia's expert testimony, each of which is well within the respective expert's expertise.  (*See generally* D.I. 95-1 ("Mem.")).  None of ViaSat's criticisms creates an issue of admissibility.  *See Sec. & Exch. Comm'n v. Nutmeg Grp., LLC*, No. 09-1775, 2017 WL 1545721, at *4 (N.D. Ill. Apr. 28, 2017) (denying plaintiff's "scattershot approach to challenging [defendant's expert's] opinions as unreliable" as plaintiff's "arguments leave only scratches on [defendant's expert] for the purpose of its *Daubert* motion, not mortal wounds, and are the stuff of cross-examination rather than disqualification.").

ViaSat first seeks to exclude the testimony of Dr. Alexander Vardy and Dr. Richard Koralek regarding their understanding of the term "Soft Decision Forward Error Correction (SDFEC) Core."  (Mem. at 3-9).  ViaSat claims that Acacia's experts exceeded the scope of their expertise by trying to reach a legal conclusion regarding the interpretation of the parties' IP Core Development and License Agreement ("Agreement" or "Ag.").  They did not.  Both Dr. Vardy and Dr. Koralek are experts in the communications industry, with particular expertise in error correction technology.  (D.I. 95, Ex. 3 ("Vardy Rep.") ¶¶ 8-24, Ex. A; D.I. 83, Ex. 24 ("Koralek Rep.") ¶¶ 6-17, Ex. A).  Both testified that the broad technical concepts that ViaSat now claims as its alleged trade secrets ("ATSs") are not "parts" of an SDFEC Core based on their technical understanding of SDFEC Cores, which is a common technical term in the industry.  (Vardy Rep. ¶¶ 200, 245, 277, 308, 336, 358, 380; Koralek Rep. ¶¶ 119-126).  Both experts made clear that their testimony was a technical opinion

1  based on understanding in the industry, **not** a legal conclusion regarding contract

2  interpretation, and would so testify to the jury.  (Ex. 90 at 284:15-288:12; Ex. 91 at

3  170:13-171:14).  ViaSat cannot exclude testimony regarding experts' own

4  understanding of a technical term used in their field on the sole basis that that term

5  also appears in a contract.

6      ViaSat next argues that Dr. Koralek's opinion regarding Acacia's non-use of

7  ATS 7 in the Accused Products should be excluded as "factually baseless."  (Mem. at

8  11-14).  ViaSat argues that Dr. Koralek abandoned his opinion that ATS 7 requires the

9  use of a mathematical concept called ████████████████████.  (*Id.*).  But Dr.

10  Koralek did not abandon that position; on the contrary, he explained its factual basis,

11  including ViaSat's **explicit** inclusion of the principle in its trade secret identification.

12  (*See, e.g.,* Koralek Rep. ¶¶ 78-84).  Moreover, ViaSat cannot exclude the multiple

13  alternative grounds Dr. Koralek provided for his opinions on ATS 7, based on its

14  challenge to a single, narrow ground relating to only part of his opinions on the ATS.

15      Third, ViaSat seeks to exclude Dr. Vardy's testimony, claiming that he

16  "parrot[s]" assertions of Acacia's fact witnesses, and presents legal conclusions

17  regarding trade secret protection.  (Mem. at 14-17).  ViaSat once again misconstrues

18  the testimony.  Dr. Vardy applied his technical expertise to the facts of the case, which

19  included discussions with Acacia's engineers and review of technical documents, to

20  determine whether the ATSs were, in fact, secrets or generally known in the industry.

21  (Vardy Rep. ¶¶ 60, 89, 200, 245, 256-259, 277, 289-304, 308, 351-356, 358, 380).  In

22  both cases, Dr. Vardy provides technical opinions based on facts, not legal opinions or

23  mere repetition of the testimony of others. Accordingly, ViaSat's motion is baseless.

24      Finally, ViaSat seeks to exclude the testimony of Mr. Brent Bersin on both

25  ViaSat's damages and Acacia's counterclaim damages.  ViaSat claims that Mr. Bersin

26  used an improper legal standard to calculate ViaSat's unjust enrichment damages.  But

27  as discussed below, Mr. Bersin properly relied on the parties' past dealings (as

28  embodied in the Agreement) to calculate the amount of unjust enrichment damages.

(D.I. 95, Ex. 10 ("Bersin Rebuttal Rep.")) ¶¶ 55, 56). ViaSat additionally challenges Mr. Bersin for failing to calculate reasonable royalty damages, even though he **agreed** with the reasonable royalty calculation of ViaSat's damages expert. (*Id.* ¶ 90). In effect, ViaSat bizarrely suggests that the Court should exclude Acacia's expert because he agrees on an issue with ViaSat's expert.

Finally, as detailed below, ViaSat's untimely production of documents and testimony regarding ViaSat's revenues from its ███████ project hindered Mr. Bersin's formulation of an opinion regarding a portion of Acacia's damages. In any event, in view of this late-produced evidence (some of which came only with ViaSat's present motion), Mr. Bersin will not testify that ███████████████████████████████ ███████████. Thus that portion of ViaSat's motion is moot.

## **BACKGROUND**

Dr. Vardy holds the Jack K. Wolf Endowed Chair in Electrical Engineering at the University of California, San Diego, where he is also a Professor in the Department of Electrical and Computer Engineering and the Department of Computer Science and Engineering. (Vardy Rep. ¶ 8, Ex. A). Dr. Vardy teaches, researches, and publishes in the field of communications and error correction coding. (*Id.* ¶¶ 11-23, Ex. A). He provides technical opinions in his rebuttal expert report related to ViaSat's ATSs 1-7, Acacia's accused Sky, Denali, and Meru products, the Everest product created under the Agreement, and background information related to error correction in the communications industry. (*See id.* ¶¶ 28-382).

Dr. Koralek is the President of R K Consulting, Inc.. (Koralek Rep. ¶ 6, Ex. A). Dr. Koralek has researched, published, and patented inventions in the field of telecommunications and error correction coding. (*Id.* ¶¶ 13-15, Ex. A). He provides technical opinions in his rebuttal expert report related to ViaSat's ATSs 2, 3, 4, and 7, Acacia's accused products, Acacia's Everest product and background information related to error correction in the communications industry. (*See id.* ¶¶ 21-127).

Mr. Bersin is a Certified Public Accountant, Certified Licensing Professional,

and Managing Director of Duff & Phelps, LLC.  (D.I. 95, Ex. 12 ("Bersin Rep.") ¶¶ 1-4, Ex. A).  He provides expert financial opinions regarding damages related to Acacia's counterclaims in his affirmative expert report (*see id.* ¶¶ 6-72), and expert financial opinions regarding damages related to ViaSat's claims in his rebuttal expert report.  (*See* Bersin Rebuttal Rep. ¶¶ 7-90).

Each of Acacia's experts has testified based on their relevant expertise applied to the facts of the present case.

## ARGUMENT

## I.      LEGAL STANDARD

Expert testimony is admissible if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  Under Rule 702, the Court must undertake "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993).  The Rules of Evidence have a "liberal thrust."  *Id.* at 579.  Rule 702 indicates a "strong and undeniable preference for admitting any evidence having some potential for assisting the trier of fact."  *Theranos, Inc. v. Fuisz Pharma LLC*, No. 11-5236, 2014 WL 12695908, at *2 (N.D. Cal. Mar. 10, 2014).[1]  As a result, "rejection of expert testimony has been the exception rather than the rule."  *Id.*  A party may not strike an expert merely because it disagrees with the substance of that expert's testimony, and "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  *Daubert,* 509 U.S. at 596; *350 W.A. LLC v. Chubb Grp. of Ins.*, No.

---

[1] Quotations and citations are omitted and emphasis is added, except as noted.

1    05-75, 2007 WL 4365502, at *22 (S.D. Cal. Dec. 5, 2007).

2    **II.    DR. VARDY'S AND DR. KORALEK'S OPINIONS REGARDING THE MEANING OF "SDFEC CORE" ARE ADMISSIBLE.**

Dr. Vardy and Dr. Koralek are experts in error-correction codes for communications systems.  (Vardy Rep. ¶¶ 8-24, Ex. A (discussing Dr. Vardy's qualifications); Koralek Rep. ¶¶ 6-17, Ex. A (discussing Dr. Koralek's qualifications)).  They thus have specialized technical knowledge about the meaning of technical terms used in their field.  Both Dr. Vardy and Dr. Koralek opine on the meaning of "Soft Decision Forward Error Correction (SDFEC) Core" in their respective rebuttal expert reports, which is a term that not only appears in the Agreement but also is commonly used in their field of expertise.  (Vardy Rep. ¶¶ 55-57, 59-60; Koralek Rep. ¶¶ 119-121, 123-124; *see also* Ex. 90 at 282:22-286:14; Ex. 91 at 170:13-171:14).

ViaSat seeks to strike Dr. Vardy's and Dr. Koralek's opinions regarding the meaning of SDFEC Core as inadmissible legal conclusions.  However, neither Dr. Vardy nor Dr. Koralek purports to interpret the contract.  Rather, the experts provide a definition of a technical term based on their expertise and experience in the relevant technical field.  An expert explaining his technical understanding of a technical term is not inadmissible merely because that technical term also appears in a contract.  To the contrary, "in cases where the contractual language contains terms with specialized or technical meaning in a given industry, a qualified expert may assist the trier of fact by offering insight on the meaning of the language in the context of that industry."  *Pacific Fuel Co. L.L.C. v. Shell Oil Co.*, No. 06-0225, 2008 WL 11336467, at *5  (C.D. Cal. Jan. 24, 2008); *see also id.* at *3 ("Expert testimony on terms of art, science, or trade is permissible because the specialized meaning of such terms is typically outside the knowledge and experience of the trier of fact, and expert testimony will be helpful to an understanding of such terms.").  That is precisely what Acacia's experts did.

ViaSat also points to the alleged similarity of the passages regarding the meaning of "part" of an "SDFEC Core" in the reports of Drs. Vardy and Koralek to claim that

Acacia Communications, Inc.'s Opposition to
ViaSat, Inc.'s Motion To Exclude Expert Testimony                    Case No. 3:16-CV-00463-BEN-JMA

5

the passages do not represent their own expert opinions because they were prepared with the assistance of counsel.  However, "assistance of counsel in the preparation of an expert report is not a proper basis upon which to exclude the expert's testimony"; indeed, "[t]he advisory committee notes to the 1993 amendments to Rule 26 specifically provide for attorney assistance in the preparation of an expert report…." *United States ex rel. Jordan v. Northrop Grumman Corp.*, No. 95-2985, 2003 WL 27366249, at *3 (C.D. Cal. Mar. 10, 2003).  ViaSat has not offered any evidence showing that the passages in question reflect anything other than the expert opinions and analysis of Drs. Vardy and Koralek, and they both affirmed that these passages represent their own opinions.  (*See* Ex. 90 at 282:22-286:14; Ex. 91 at 170:13-171:14).  Nor has ViaSat disputed either of these eminent experts' credentials.  These passages therefore present the experts' respective technical opinions accurately, and are admissible.

### A.   Dr. Vardy's Opinion Regarding the Meaning of "SDFEC Core" Is Admissible.

As ViaSat admits, Dr. Vardy testified that he was providing a technical opinion, not a legal conclusion, regarding the meaning of "SDFEC Core."  (Mem. at 8-9).



(Ex. 90 at 284:15-285:6).  When repeatedly asked whether he was interpreting the contract, Dr. Vardy made clear that he was not:



(*Id.* at 287:25-288:12; *see also id.* at 285:22-287:24).  Dr. Vardy pointed out that his technical understanding of the meaning of SDFEC Core may relate to how it is used in the Agreement, but providing expert testimony as to the meaning of technical terms

relevant to contractual interpretations is not, as ViaSat seems to suggest, tantamount to offering a legal conclusion.  The same is true for Dr. Vardy's technical analysis of whether particular technologies constitute "part" of an SDFEC Core.  Dr. Vardy has applied his technical expertise and industry experience to a technical question that may relate to a contract, but expressly does not offer a legal conclusion.  (*See* Vardy Rep. ¶¶ 200, 245, 277, 308, 336, 358, 380 (explaining based on industry expertise that the technical concepts claimed by ViaSat as its trade secrets are not "parts" of the SDFEC Core the parties developed as the word "part" is commonly understood in the field)).

### B.   Dr. Koralek's Opinion Regarding the Meaning of "SDFEC Core" Is Admissible

ViaSat's attack on Dr. Koralek is virtually identical.  It again selectively quotes his deposition, to disguise his clear statements that he provides only a **technical** understanding regarding the SDFEC Core, not a legal conclusion.  (Mem. at 6-7.) Immediately prior to the responses cited by ViaSat, Dr. Koralek testified:



(Ex. 91 at 170:23-171:14; *see also id.* at 170:13-22).  Like Dr. Vardy, Dr. Koralek acknowledged that there is a particular SDFEC Core at issue in this case.  (*See id.* at 171:12-172:20; Ex. 90 at 300:25-301:5).  However, Dr. Koralek's technical understanding of the term based on his industry expertise does not become an inadmissible legal conclusion merely because the term is also used in the contract; Dr. Koralek's technical opinions may be helpful to the factfinder in assessing the facts. *See Pacific Fuel Co. L.L.C.*, 2008 WL 11336467, at *5.

ViaSat also claims that, in citing the deposition testimony of ViaSat's Chief Technology Officer Dr. William Thesling, Drs. Vardy and Koralek attempt to pass off lay witness testimony as expert opinion.  (Mem. at 9 n.2).  Drs. Vardy and Koralek cite

Dr. Thesling's testimony that Exhibit B to the Agreement captured the work done by ViaSat on the SDFEC encoder and decoder core.  (Vardy Rep. ¶ 58; Koralek Rep. ¶ 122 (both citing Ex. 92 at 180:23-181:8, 182:5-19)).  It is unclear whether ViaSat has correctly stated the law, because ViaSat attributes a quotation to its lone case that **does not actually appear in the case.**[2]  Regardless, Acacia's experts are not seeking to pass Dr. Thesling's testimony off as their expert opinion.  Instead, both Dr. Vardy and Dr. Koralek explained that Dr. Thesling's testimony "confirms" their expert opinions, based on documents they reviewed and their industry expertise.  (Vardy Rep. ¶¶ 56-59; Koralek Rep. ¶¶ 119-123).

### C.     ViaSat's Challenges Regarding the Meaning of "SDFEC Core" Go to Weight, Not Admissibility.

As outlined above, the opinions expressed by Drs. Vardy and Koralek are not legal conclusions.  To the extent ViaSat disagrees with Drs. Vardy and Koralek regarding the technical meaning of a "part" of an SDFEC Core, ViaSat may cross-examine them at trial and present evidence to try to contradict their opinions. ViaSat's criticisms at best go to weight, not admissibility.  *See 350 W.A. LLC*, 2007 WL 4365502, at *21 (where a party challenges the factual underpinnings of expert testimony "such weakness goes to the weight and credibility of the testimony").  Even if ViaSat presents significant criticisms of the conclusions drawn by Acacia's experts (though it does not, as discussed above), those criticisms are best left for the trier of fact as "objections to the content of the challenged opinions go to weight rather than admissibility." *Apple iPod iTunes Antitrust Litig.*, No. 05-37, 2014 WL 4809288, at *4 (N.D. Cal. Sep. 26, 2014).

---

[2] *See* Mem. at 9 n.2. inaccurately quoting *PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1348-59 (Fed. Cir. 2007).  Acacia has been unable to locate the quotation in that case, or in any case available on Westlaw or Google.

### III. DR. KORALEK'S OPINION THAT ACACIA DOES NOT USE VIASAT'S ATS 7 IS ADMISSIBLE.

#### A. Dr. Koralek's Testimony Regarding the Requirements of Alleged Trade Secret No. 7 Is Admissible.

ViaSat disagrees with Dr. Koralek's testimony that ViaSat's ATS 7 requires ███ ███████████████████████████████████. (*See* Mem. at 10-14). It is free to argue this point at trial, present evidence to the jury, and cross-examine Dr. Koralek , but Dr. Koralek's testimony represents his informed expert opinion and is not "factually baseless." (*Id.* at 11).

#### 1. ViaSat Ignores Most of Dr. Koralek's Factual Bases for Determining That ATS 7 Requires Using "███████████████████████."

In fact, Dr. Koralek's  expert opinion that ATS 7 requires the use of "██ ████████████████████████" has a strong factual basis.  Perhaps the clearest basis for his opinion is ViaSat's own description of its trade secret:

1    (D.I. 95, Ex. 8 at No. 7).  The table included in the ATS 7 description depicts ██████

2    ██████████████████████████.  (Koralek Rep. ¶ 79).  ViaSat concedes this point,

3    but argues that the table is not **required** by ATS 7.  (Mem. at 12).[3]  Yet ViaSat's CTO

4    Dr. Thesling, whom ViaSat identified as one of the developers of ATS 7,[4] (D.I. 93, Ex.

5    63 at No. 17), testified to the contrary.  (*See* Ex. 92 at 243:2-20 (explaining that ██████

6    ████████████████████████████████)).  Moreover, ATS 7, as

7    implemented in the █████████████████████████████████████

8    ████████████████████.  (Koralek Rep. ¶¶ 81-82).  ViaSat's position that the

9    table is merely exemplary is disputed, not something that the factual record

10   unequivocally proves.  Dr. Koralek had a factual basis for understanding the

11   requirements of ATS 7 based on ViaSat's own description and implementation of the

12   trade secret.  ViaSat is free to cross-examine him with allegedly contrary evidence.

13          Beyond that, Dr. Koralek testified that ATS 7 requires ███████████████████

14   ████████████████████████████████████████████████████████

15   ████████████████████.  (Ex. 91 at 118:6-119:3; Koralek Rep. ¶ 80).  This

16   understanding comes from Dr. Koralek's own technical expertise and Dr. Thesling's

17   testimony explaining the same.  (Ex. 92 at 234:11-237:5).  ViaSat claims that Dr.

18   Koralek cannot rely on the "purpose" of the alleged trade secret to understand what is

19   covered by it since "purpose" is not a required element to establish a trade secret.

20   (Mem. at 13 n. 7).  However, a trade secret must "derive independent economic value"

21   from not being generally known.  CAL. CIV. CODE § 3462.1(d).  Where a concept does

22   not possess any economic value, *i.e.* where the it has no purpose, there is no trade

23

24   _____

     [3] ViaSat claims that Dr. Koralek conceded that the table in ATS 7 is merely exemplary.

25   (Mem. at 12).  He did not.  When asked, ███████████████████████████████████████

26   Dr. Koralek replied, █████████████████ (Ex. 91 at 124:12-16, 19).  ViaSat
     mischaracterizes Dr. Koralek's repeated explanation that ████████████████████████

27   ████████████ as a concession that the table contained t

28   [4] ATS 7 is Acacia's originally-identified ATS 9.  (*Compare* D.I. 83, Ex. 21 *with* D.I. 83,
     Ex. 37).

1   secret protection.  *See Direct Techs., LLC v. Elec. Arts, Inc.*, 836 F.3d 1059, 1071 (9th Cir.

2   2016) (affirming summary judgment of no trade secret misappropriation where

3   plaintiff failed to "present[] any evidence that there was value in the secrecy of its

4   design"); *Hilderman v. Enea TekSci, Inc.*, 551 F. Supp. 2d 1183, 1199 (S.D. Cal. 2008)

5   (granting summary judgment on some alleged trade secrets where plaintiff "failed to

6   raise a triable issue of material fact with respect to whether its [alleged trade secrets]

7   derive independent economic value from not being generally known to the [relevant]

8   industry"); *Steinberg Moorad & Dunn, Inc. v. Dunn*, No. 01-7009, 2002 WL 31968234, at

9   *24 (C.D. Cal. Dec. 26, 2002) (plaintiff could not "as a matter of law, present sufficient

10  evidence to establish the essential elements of its trade secret misappropriation claim"

11  where, among other things, plaintiff "presented no evidence that the information it

12  claimed as trade secret derived independent economic value from not being generally

13  known to the public or to other persons who can obtain economic value from its

14  disclosure or use.").  Accordingly, Dr. Koralek properly considered the alleged purpose

15  of the technical concept described in ATS 7.

16       ViaSat seeks to exclude Dr. Koralek's testimony that ATS 7 requires the use of

17  ██████████████████████████ while ignoring Dr. Koralek's clear testimony that the

18  table in ViaSat's trade secret depicts ██████████████████, that the ████

19  ██████████████████████, and that the trade secret's economic

20  value derives from its use with ██████████████████. (Koralek Rep. ¶¶

21  79-82).  ViaSat misleadingly excerpted Dr. Koralek's deposition testimony on a single

22  subsidiary point (*see* Mem. at 13-14), but that is insufficient to exclude the significant

23  factual dispute created by Dr. Koralek's consideration of many other factors to

24  determine that ATS 7 requires ██████████████████.

                  **2.**    **ViaSat Mischaracterizes Dr. Koralek's**

25

26                        **Testimony Regarding the '837 Patent.**

27       ViaSat misconstrues Dr. Koralek's testimony regarding U.S. Patent No. 3,891,

    837 ("the '837 Patent").  (Mem. at 13-14).  ViaSat claims that Dr. Koralek "conceded

28

1    that the '837 patent also ███████████████████████████████████████

2    ████████████████████" (*Id.* at 13).  ViaSat's ATS 7 requires using "█████

3    ████████████████████████████████████  █████████

4    ███████████████████" (D.I. 83, Ex. 21 at No. 7).  In portions of his

5    deposition ignored by ViaSat, however, Dr. Koralek explicitly testified that the '837

6    patent has "████████████████████████████████" (Ex. 91 at

7    192:2-3).  He explained further that, "██████████████████████████,"

8    as required by ATS 7  (*Id.* at 193:8-9).  Dr. Koralek's testimony makes clear that the

9    '837 patent does **not** disclose the use of ATS 7 ████████████████████

10    ████████.

11        Also contrary to ViaSat's claim, Dr. Koralek did not "abandon[] the theoretical

12    basis for his opinion." (Mem. at 13-14).  At most, in response to one question ViaSat

13    asked him about how a certain portion of the patent that was not addressed in his

14    report relates to his opinion, Dr. Koralek testified that ████████████████

15    ████████████████████████████████████████████████

16    ████████████. (Ex. 91 at 194:3-14).  Nothing in that response can

17    fairly be characterized as "abandoning" his clearly-stated opinions.

18        ViaSat's allegations regarding Dr. Koralek's testimony with respect to the '837

19    patent range are therefore insufficient to strike Dr. Koralek's expert opinions.

20    **B.    ViaSat Cannot Exclude All of Dr. Koralek's**
        **Opinions Regarding Acacia's Non-Use of**

21        **ATS 7 by Challenging One Narrow Portion.**

22        In yet another scattershot argument, ViaSat argues that **all** of Dr. Koralek's

23    testimony regarding Acacia's non-use of ATS 7 is inadmissible, based on only the

24    narrow issue discussed previously.  Contrary to ViaSat's claim, Dr. Koralek's report

25    included several grounds for his opinion that Acacia's accused products do not use

26    ViaSat's ATS 7 beyond his contention that ATS 7 requires ███████████████

27    ████████████████████. Those opinions would still be admissible even if his

28

opinion regarding ████████████████████ were not (although it is, as

discussed above).

  First, as ViaSat admits, Dr. Koralek testified that ████████████████

████████████████████████████████████████████

████████████████████████████████████████

████. (Mem. at 12 n. 6; Ex. 91 at 146:8-147:22).

  Second, Dr. Koralek explained that Acacia's accused products do not ████

████████████ as required by ATS 7.  (Koralek Rep. ¶¶ 88-90).  Dr. Koralek pointed

out that Dr. Hassoun inaccurately conflated ████████████████████████ and

thus failed to recognize that Acacia's products do not practice ATS 7.  (*Id.*).[5]

  Finally, Dr. Koralek explains that Dr. Hassoun failed to actually analyze what is

implemented by the accused products by failing to review ████████████████████

████.  (*Id.* ¶¶ 107-117).  None of these opinions rests on Dr. Koralek's separate

opinion that ATS 7 requires ████████████████████, and ViaSat cannot

strike Dr. Koralek's opinions regarding non-use on one narrow ground that bears no

relation to these other opinions.  *See Area 55, Inc. v. Amazon.com, Inc.*, No. 11-145, 2012

WL 12846975, at *7 (S.D. Cal. July 24, 2012) (refusing to exclude "ultimate analysis"

of expert opinion even though expert opinion on one subsidiary point was excluded).

## C. ViaSat's Challenge to Dr. Koralek's Report Again Goes to Weight, Not Admissibility.

  ViaSat and its experts may disagree with Dr. Koralek's opinions. (*See* Ex. 93 at

209:18-212:19).  That does not render them inadmissible.  Dr. Koralek's testimony

contradicts the testimony of ViaSat's expert Dr. Marwan Hassoun, presenting a classic

"battle of the experts."  Such battles are "not uncommon," and the decision of which

expert is right is "best left for the trier of fact."  *Regents of Univ. of Cal. v. Dako N. Am.,*

---

[5] ViaSat points to Dr. Koralek's testimony that, ████████████████████
████████████████████. (Mem. at 12, n.5).  ViaSat ignores the fact that Dr. Koralek
agrees only that an ████████████. (Ex. 91 at 139:15-140:24, 146:2-147:11).

1   *Inc.*, No. 05-3955, 2009 WL 1083446, at *15 (N.D. Cal. Apr. 22, 2009).

2       ViaSat cannot prevent the jury from hearing from experts from both sides

3   merely by insisting that Dr. Koralek is wrong.  *See Silicon Labs., Inc. v. Cresta Tech. Corp.*,

4   No. 14-3227, 2016 WL 836679, at *4 (N.D. Cal. Mar. 3, 2016) (holding that a dispute

5   about whether voltage across two input wires can be a single control signal creates "a

6   classic 'battle of the experts' on a material issue of fact.  It is the jury's province to

7   resolve such issues, not the court's."); *Hertz v. Luzenac Am., Inc.*, No. 04-1961, 2011

8   WL 1480523, at *7 (D. Colo. Apr. 19, 2011) (the differences between two specialized

9   talc manufacturing processes "is a quintessential 'battle of the experts' in which cross-

10  examination will be the testing ground for the jury").

11  ## IV.    DR. VARDY'S OPINIONS DO NOT
12          EXCEED THE SCOPE OF HIS EXPERTISE.

13      ViaSat mischaracterizes Dr. Vardy's report to allege that he offered opinions

14  outside the scope of his expertise.  He did not.

15  ### A.    Dr. Vardy Does Not "Simply Parrot Assertions
16         by Acacia Fact Witnesses" as Expert Opinion.

17      ViaSat first highlights small excerpts of Dr. Vardy's report that it claims

18  "parrot" Acacia's fact witnesses.  (Mem. at 14-16).  In each of the paragraphs, Dr.

19  Vardy refers to ███████████████████████████████████████████,

20  that helped provide him with information relevant to his conclusions.  (Vardy Rep. ¶¶

21  60, 89, 200, 245, 277, 308, 336, 358, 380).  Those conclusions, however, are his own.

22  Dr. Vardy, applying his expertise to the documents he has reviewed as well as those

23  conversations, understood that the earlier Everest product ViaSat helped design did

24  not ████████████████████████████████████████

25  ████████.  (*Id.*).  So Acacia ███████████████████████████████

26  ████████████████████████████████████████████████.  (*Id.*).

27      "[A]n expert may rely upon communications with fact witnesses in forming an

28  opinion."  *Dane Techs., Inc. v. Gatekeeper Sys., Inc.*, Civ. No. 12-2730, 2015 WL 12819180,

1   at *5 (D. Minn. Jan. 20, 2015). That is precisely what Dr. Vardy did. He used his

2   communications industry knowledge to evaluate the need for Acacia to design a new

3   product, and ████████████████████████████████████████. Dr. Vardy

4   has specialized technical expertise regarding both the implementation of and market

5   for error-correcting codes in communications products, and he applied that specialized

6   knowledge to the facts of this case to reach his opinions.

7          Dr. Vardy's application of his expertise to the case's facts is not "uncritical

8   acceptance of other evidence in the case," as ViaSat alleges (Mem. at 16), citing *Waymo*

9   *LLC v. Uber Techs., Inc.*, No. 17-939, 2017 WL 6887043, at *6 (N.D. Cal. Nov. 14,

10  2017). In *Waymo*, the court struck an expert damages opinion from an inactive CPA,

11  who merely multiplied two numbers on a document already in evidence, and added an

12  unsupported assumption regarding the development time of trade secrets. *Id.* at *5-6.

13  Dr. Vardy, on the other hand, applied his technical expertise to the information he

14  gathered from Acacia engineers and other documentary evidence, and performed his

15  own expert analysis in reaching his opinions. (*See, e.g.,* Vardy Rep. ¶¶ 23, 56-60, 89).

16  In particular, he considered the ████████████████████████████ attached

17  as Exhibit B to the Agreement and the testimony of ViaSat's own fact witnesses and

18  experts. (*Id.* ¶ 56, 60, 89).

19         ViaSat's other cases deal not with an expert's alleged uncritical acceptance of

20  fact testimony already in evidence, but rather with the use of unreliable methods,

21  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 158 (1999), or lack of expertise in the

22  appropriate technical field. *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356,

23  1360-1362 (Fed. Cir. 2008). ViaSat does not challenge Dr. Vardy's opinions on those

24  grounds. (*See* Mem. at 14-16). Instead, his opinions are based on knowledge in the

25  relevant field, ████████████████████████████████.

26  They are thus admissible. ViaSat has not articulated a reason why the Court should

27  strike them.

28

1    ViaSat further argues that Dr. Vardy cannot have an expert opinion on █

2  ████████████████████████████████████████████████████████. (*Id.*

3  at 15-16).  Dr. Vardy testified that Acacia ████████████ based on his

4  understanding of the functions of the products at issue, and the industry demands

5  and standards for those products.  As discussed above, this opinion derives from the

6  application of his expertise to the facts of the case.  An expert opinion does not

7  become inadmissible simply because there is other evidence that an expert could

8  possibly have used.  ViaSat may explore the fact Dr. Vardy ██████████████

9  ██ at trial.  But his conclusions are well within his expertise.  (Vardy Rep. ¶¶ 8-24,

10 Ex. A).

### B.    Dr. Vardy Does Not Present Opinions About Trade Secret Protection Outside His Area of Expertise.

13    ViaSat next turns to contending that Dr. Vardy's opinions regarding whether

14 ViaSat has taken reasonable measures to maintain the secrecy of its alleged trade

15 secrets are outside the scope of his expertise.  (Mem. at 16-17).  However, Dr. Vardy

16 used his technical expertise appropriately to analyze technical documents, whether

17 industry members would have access to those documents, and what they would

18 understand those documents to disclose.  (*See* Vardy Rep. ¶¶ 256-259, 261, 289-304,

19 306, 351-356). This analysis led Dr. Vardy to an understanding of what would be

20 generally known in the industry, and whether reasonable efforts were taken to keep

21 particular technical concepts present in the documents he reviewed secret.  (*Id.*).

22    ViaSat cannot dispute (and does not dispute) that Dr. Vardy has relevant

23 technical expertise in the communications industry.  (*See* Vardy Rep. ¶¶ 8-24, Ex. A).

24 Instead, ViaSat seeks a finding that experts must employ their expertise in a vacuum,

25 and may not apply their expertise to the facts of the case.  This is not the law.  *See*

26 *Whole Women's Health v. Hellerstedt*, 136 S. Ct. 2292, 2316-17 (2016) (citing Fed. R. Evid.

27 702) ("an expert may testify in the 'form of an opinion' as long as that opinion rests

28 upon 'sufficient facts or data' and 'reliable principles and methods.'").  Dr. Vardy was

well within his expertise in opining that certain technical concepts that ViaSat claims as trade secrets were generally known in the industry, and not kept secret by ViaSat.

### C. ViaSat's Challenges to Dr. Vardy's Report Go to Weight, Not Admissibility.

As discussed above, Dr. Vardy's report includes conclusions regarding which ViaSat may cross-examine him at trial. Its criticisms are directed at the weight of his testimony, not its admissibility. *See 350 W.A. LLC*, 2007 WL 4365502, at *21; *Apple*, 2014 WL 4809288, at *6-7.

## V. MR. BERSIN'S OPINIONS REGARDING VIASAT'S AND ACACIA'S DAMAGES ARE ADMISSIBLE.

### A. Mr. Bersin Applied the Proper Legal Standard for Calculating Unjust Enrichment.

ViaSat argues that Acacia's damages expert, Brent Bersin, used an improper standard in reaching his opinion on ViaSat's unjust enrichment claim. (Mem. at 18-20). To begin with, ViaSat ignores Mr. Bersin's primary opinion on ViaSat's unjust enrichment—namely that such damages are inappropriate because the foundation of ViaSat's claims against Acacia is a dispute over whether Acacia owes royalty payments on particular products. (Bersin Rebuttal Rep. ¶ 55). Moreover, Mr. Bersin explained that the contract includes a limitation on liability clause that caps damages of any type at ███████ in Section 13. (*Id.*).

Mr. Bersin nevertheless went on to present his analysis regarding the unjust enrichment value he would calculate if unjust enrichment were appropriate. As ViaSat's damages Stephen Prowse recognized in his expert report, unjust enrichment is limited to Acacia's profits "attributable to its misappropriation." (D.I. 95, Ex. 11 ("Prowse Rep.") ¶ 65). In performing his unjust enrichment analysis, Mr. Bersin applied the same standard, evaluating the gain that accrued to Acacia as a result of its alleged misappropriation. (Bersin Rebuttal Rep. ¶ 56-57). According to Mr. Bersin, that sum is best measured by the unpaid royalties allegedly due under the Agreement, since Acacia's gain from (allegedly) using ViaSat's technology without contractual

1   payment of royalties is precisely the amount it would otherwise have owed under the

2   contract.  (*Id.*).  Mr. Bersin looked to the single best evidence available to evaluate that

3   value: the royalty established in the arm's-length Agreement for those exact

4   technologies, entered into between these exact same parties, and agreed to outside the

5   context of any litigation or legal dispute.  (*Id.*; Ex. 94 at 102:24-103:15).

6       ViaSat cites no cases to suggest that an expert cannot consider past negotiations

7   and agreements to determine unjust enrichment damages.  (Mem. at 18-20).  On the

8   contrary, where (as here) there is an actual, arm's-length agreement on the same issue

9   between the same parties, that agreement provides the best possible evidence of what

10  the technology in question was worth.  For similar or, in this case, **identical**

11  technology, courts hold that previous royalty agreements are usually the single best

12  evidence for determining a reasonable royalty.  *See Mobil Oil Corp. v. Amoco Chems.*

13  *Corp.*, 915 F. Supp. 1333, 1353 (D. Del. 1994)) ("Courts and commentators alike have

14  recognized that the royalties received by the patentee under prior and existing licenses

15  for patented technology is often the 'most influential factor' in determining a

16  reasonable royalty."); *Procter & Gamble Co. v. Paragon Trade Brands, Inc.*, 989 F. Supp.

17  547, 607 (D. Del. 1997) (same); *Magnetar Techs. Corp. v. Six Flags Theme Parks Inc.*, No.

18  07-127, 2014 WL 530241, at *3 (D. Del. Feb. 7, 2014) (same); *see also Uniloc USA, Inc. v.*

19  *Microsoft Corp.*, 632 F.3d 1292, 1317-18 (Fed. Cir. 2011) ("looking at royalties paid or

20  received in licenses for the patent in suit or in comparable licenses… remain valid and

21  important factors in the determination of a reasonable royalty rate").

22      Although ViaSat suggests that there is a single determinative standard for

23  calculating unjust enrichment (Mem. at 18-19), courts hold otherwise:  "There is no

24  standard formula to measure [unjust enrichment]." *Ajaxo Inc. v. E*Trade Fin. Corp.*, 187

25  Cal. App. 4th 1295, 1305 (2010).  Only "some reasonable basis for the computation" is

26  required.  *Id.*  In particular, "[a] defendant's unjust enrichment might be calculated

27  based upon [its] cost savings…." *Id.*  Here, for the reasons discussed above, Mr.

28  Bersin used that approach suggested by *Ajaxo*: He testified that the royalty owed (i.e.

1    the cost savings from not paying that contractual royalty) is the best measure of any

2    unjust enrichment that Acacia allegedly obtained.  (Bersin Rebuttal Rep. ¶ 56-57).  In

3    appropriate cases, the "damages caused by misappropriation may be measured by

4    imposition of liability for reasonable royalty for a misappropriator's unauthorized

5    disclosure or use of a trade secret."  *See* Ex. 95, *The Litigation Services Handbook: The Role*

6    *of the Financial Expert*; Weil, Roman L.; Lentz, Daniel G.; Hoffman, David P. (6th ed.

7    2017). Hoboken, NJ; John Wiley & Sons, at 19.35.  An expert performing such an

8    analysis may find guidance from patent decisions "useful if the case involves a

9    technical trade secret or otherwise resembles subject matter similar to that found in

10    patents." *Id.*  A reasonable royalty can be based only on damages attributable to the

11    misappropriation. *See VirnetX, Inc. v. Cisco Sys., Inc.*, No. 2013-1489, 2014 WL 4548722,

12    at *13 (Fed. Cir. Sep. 16, 2014) ("No matter what the form of the royalty, a patentee

13    must take care to seek only those damages attributable to the infringing features.").[6]

14          Consequently, Mr. Bersin reached – subject to his reservation that the sum in

15    any event must be limited by the ███████████ contractual limitation on liability – the

16    same ███████████ royalty calculation reached by ViaSat's own damages expert.

17    (*Compare* Bersin Rebuttal Rep. ¶ 90 *with* Prowse Rep. ¶ 94).  Although ViaSat criticizes

18    Mr. Bersin for doing "no quantitative analysis whatsoever" (Mem. at 19), a claim it

19    immediately withdraws (*id.* n.12), there can be no basis to exclude testimony from Mr.

20    Bersin on a point as to which he **agrees** with Dr. Prowse.  Mr. Bersin used a proper

21    legal standard for analyzing unjust enrichment, and performed accurate calculations in

22    determining the proper damages amount under that standard.[7]  Indeed, as he agrees

23

24    _____

[6] ViaSat's contention (Mem. at 20) that the value of its ATSs increased when used later

25    in Accused Products with **some** Everest-compatible modes, as compared to its previous use in royalty-bearing Everest products—which obviously have **only** Everest-compatible modes—is unsupported and illogical.

26    [7] ViaSat suggests that Mr. Bersin contradicts himself by looking to royalties as a measure of unjust enrichment damages for ViaSat's claims, but not for Acacia's

27    counterclaims.  (Mem. at 19).  There is no contradiction.  The Agreement provides a per-unit royalty rate for Acacia's licensed use of ViaSat's technology, which is relevant

28    in evaluating unjust enrichment. (Ag. § 4(a)-(b)).  But the Agreement contains no such

1   with ViaSat's witness on this point, it is hard to understand why ViaSat objects.

2      **B.      ViaSat's Challenge to Mr. Bersin's**
3              **Report Go to Weight, Not Admissibility.**

4          ViaSat's challenge to Mr. Bersin's report attacks the conclusions Mr. Bersin has

5   drawn, not his methods. As discussed above, such challenges go to the weight of the

6   testimony, not its admissibility. *See 350 W.A. LLC*, 2007 WL 4365502, at *21; *Apple*,

7   2014 WL 4809288, at *6-7.

8      **C.      ViaSat's Untimely Production of Relevant**
9              **Documents and Testimony Regarding Revenues**
              **From Its ████████████ Hindered Mr. Bersin's Opinions.**
10
          ViaSat's last attack is on Mr. Bersin's opinion regarding ViaSat's revenues and
11
12  profits from its ████████████. (Mem. at 21-24). However, Mr. Bersin's opinions

13  were based on the evidence available when he wrote his report. ViaSat's own delayed

14  production of relevant documents and testimony created the confusion that it now

15  seeks to pin on Mr. Bersin.

16         ViaSat did not produce the final agreement related to each of its accused

17  projects, including ██████, until October 12, 2017, months after the close of paper

18  fact discovery and the day before the close of fact depositions. (*See* Ex. 96; D.I. 59;

19  D.I. 68). Even worse, ViaSat did not produce the relevant financial documents until

20  **two days** before Mr. Bersin's report was due. (Bersin Rep. at ¶ 72 n.113). Notably,

21  ViaSat did not produce the ██████ agreement until **months after** Acacia deposed

22  Russell Fuerst, ViaSat's corporate designee on its contracts and business issues. As a

23  result, Acacia was unable to examine ViaSat's key witness regarding the ██████

24  agreement, ViaSat's understanding of it, and how much it expected to get paid in

25  ████████████████████████ as part of that project.

26  _____

27  royalty rate for ViaSat's use of Acacia's technology. (*Id.*). ViaSat has also failed to sell
    a single commercial product to date as part of its four accused projects, (*See* D.I. 95,
28  Ex. 17 at ¶¶ 26-27, 32-33, 37-38, 47-49). A per-unit royalty is an inappropriate
    measure of unjust enrichment damages where no units are sold.

1    ViaSat's expert Dr. Prowse then revealed at his deposition in late November

2    that he had spoken to Dr. Fuerst and relied on Dr. Fuerst's explanations of the

3    ██████ project as part of reaching his conclusion that the ████████████████

4    ████████████████████. (D.I. 95, Ex. 17 ¶ 41; Ex. 97 at 159:19-161:3).  Mr.

5    Bersin did not have the benefit of any of this evidence, as ViaSat did not disclose this

6    evidence from Dr. Fuerst until long after Mr. Bersin's report was due.

7    Only with its present motion has ViaSat come forward with a declaration from

8    Dr. Fuerst explaining for the first time ViaSat's understanding of the ██████

9    agreement.  (D.I. 95, Declaration of Dr. Russell Fuerst).  ViaSat first disclosed this

10   evidence two weeks ago (on February 2, 2018), long after discovery closed and over

11   **six months** after Dr. Fuerst's deposition.  ViaSat disclosed this evidence as part of

12   seeking to strike an expert's opinion that would have relied on that evidence.  ViaSat

13   cannot strike an expert's opinion for lacking evidence that ViaSat itself withheld.

14   The face of the ██████ agreement does not clearly state that ████████████

15   ████████████████████████████████████████████████████████████

16   ██████.  (D.I. 95, Ex. 16 § 5.2).  Therefore, without having access to Dr. Fuerst's

17   testimony on the ██████ agreement, or sufficient time to analyze the ██████ financial

18   documents prior to his opening report, Mr. Bersin presented alternative "High End"

19   and "Low End" analyses of Acacia's claimed damages, based on whether the ██████

20   ████████████████████████████████████████, respectively.

21   (Bersin Rep. ¶¶ 6, 69).  ViaSat has not criticized Mr. Bersin's "Low End" damage

22   calculation assuming a ████████████████████.  (*See* Motion at 22-24).

23   Mr. Bersin stated in his report that "my opinions are based upon my analysis of

24   the information available to date. I may review and consider additional information

25   that may be produced by the parties to this dispute."  (Bersin Rep. ¶ 70).

26   Notwithstanding ViaSat's delayed production of extrinsic evidence regarding the

27   interpretation of the ██████████████, in light of that evidence, ████████████

28

1

2   ███████████████. Hence this portion of ViaSat's motion is moot.

3   <u>**CONCLUSION**</u>

4       For the above reasons, Acacia respectfully requests that the Court deny ViaSat's

5   motion to exclude expert testimony.

6

7   Date:  February 16, 2018                    Respectfully Submitted,

8                                               WOLF, GREENFIELD & SACKS, P.C.

9

10                                              By: *s/ Michael A. Albert*
                                                _____
11                                              Michael A. Albert
                                                Hunter D. Keeton
12                                              Stuart V. C. Duncan Smith

13                                              Attorneys for Defendant and Counter
                                                Claimant Acacia Communications, Inc.
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I certify that today I am causing to be served the redacted version of the foregoing document by CM/ECF notice of electronic filing upon the parties and counsel registered as CM/ECF Users.  I further certify that am causing the redacted and unredacted versions of the foregoing document to be served by electronic means via email upon counsel for ViaSat, Inc., per the agreement of counsel.


Date:  February 16, 2018                                        *s/Michael A. Albert*
                                                                                    Michael A. Albert