1   WOLF, GREENFIELD & SACKS, P.C.
        Michael A. Albert (Admitted *Pro Hac Vice*)
2       Mass. B.B.O No. 558566
3       malbert@wolfgreenfield.com
        Hunter D. Keeton (Admitted *Pro Hac Vice*)
4       Mass. B.B.O No. 660609
5       hkeeton@wolfgreenfield.com
        Stuart V. C. Duncan Smith (Admitted *Pro Hac Vice*)
6       Mass. B.B.O No. 687976
7       sduncansmith@wolfgreenfield.com
    600 Atlantic Avenue
8   Boston, Massachusetts, 02210
9   Tel: (617) 646-8000   Fax: (617) 646-8646

10  PROCOPIO, CORY, HARGREAVES & SAVITCH LLP
        Victor M. Felix (SBN: 179622)
11      victor.felix@procopio.com
12  525 B Street, Suite 2200
    San Diego, California, 92101
13  Tel: (619) 515-3229   Fax: (619) 744-5409

14  Attorneys for Defendant and Counter Claimant Acacia Communications, Inc.

15              UNITED STATES DISTRICT COURT
16              SOUTHERN DISTRICT OF CALIFORNIA

17  **ViaSat, Inc.,**                      Case No. 3:16-cv-00463-BEN-JMA
    *a Delaware corporation,*
18                                          **OPPOSITION TO PLAINTIFF
19              Plaintiff                   VIASAT, INC.'S MOTION FOR
                and Counter Defendant,      SUMMARY JUDGMENT ON
20                                          ACACIA'S COUNTERCLAIM FOR
    v.                                      PATENT MISAPPROPRIATION**
21  **Acacia Communications, Inc.,**
22  *a Delaware corporation,*              **REDACTED**
23
                Defendant                   Judge: Hon. Roger T. Benitez
24              and Counter Claimant        Mag. Judge: Hon. Jan M. Adler
25
26                                          Date: March 5, 2018
                                            Time: 10:30 a.m.
27                                          Courtroom: 5A
28

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................... 1

ARGUMENT ........................................................................................................................ 3

I.    ACACIA'S PATENT MISAPPROPRIATION COUNTS INVOKE
      FEDERAL QUESTION SUBJECT-MATTER JURISDICTION. ...................... 3

      A.  Equitable Claims to Patent Ownership Raise a Federal Question. ................. 3

      B.  ViaSat's Counter-Arguments Rely on
          Mis-Citations and Non-Existent Quotations. ...................................................... 5

      C.  ViaSat Ignores Acacia's Evidence of Improper Inventorship,
          Which Triggers Federal Question Subject Matter Jurisdiction. ....................... 7

II.   ACACIA PRESENTED MORE THAN SUFFICIENT
      FACTS TO SUPPORT PATENT OWNERSHIP. ................................................. 10

      A.  ViaSat Again Misstates the
          Law on Patent Misappropriation. ...................................................................... 10

      B.  Acacia Has Proven Patent Misappropriation
          Even Under ViaSat's Incorrect Standard .......................................................... 12

III.  VIASAT'S TWO-YEAR DELAY IN RAISING ITS JURISDICTIONAL
      CHALLENGE FURTHER SHOWS IT TO BE DOING LITTLE
      MORE THAN PREJUDICIAL FORUM-SHOPPING. ...................................... 15

CONCLUSION .................................................................................................................. 17

# TABLE OF AUTHORITIES

## CASES

*Arachnid, Inc. v. Merit Indus., Inc.*,
 939 F.2d 1574 (Fed. Cir. 1991) ....................................................................... passim

*Beam Laser Sys., Inc. v. Cox Commc'ns, Inc.*,
 117 F. Supp. 2d 515 (E.D. Va. 2000) ...................................................................... 4

*Board of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*,
 583 F.3d 832 (Fed. Cir. 2009) ................................................................................. 5

*Busch v. Jakov Dulcich & Sons LLC*,
 No. 15-384, 2015 WL 3792898 (N.D. Cal. June 17, 2015) ..................................... 3

*Cargill, Inc. v. Sears Petroleum & Transp. Corp.*,
 388 F. Supp. 2d 37 (N.D.N.Y. 2005) ....................................................................... 4

*Chou v. Univ. of Chi.*,
 254 F.3d 1347 (Fed. Cir. 2001) ........................................................................... 7, 8

*Christianson v. Colt Indus. Operating Corp.*,
 486 U.S. 800 (1988) ................................................................................................ 5

*Crown Die & Tool Co. v. Nye Tool & Mach. Works*,
 261 U.S. 24 (1923) ................................................................................................... 6

*Curtis Mfg. Co. v. Plasti-Clip Corp.*,
 933 F. Supp. 94 (D.N.H. 1995) ............................................................................... 4

*GAF Corp. v. Amchem Prods., Inc.*,
 514 F. Supp. 943 (E.D. Pa. 1981) ........................................................................... 4

*Galindo v. Stoody Co.*,
 793 F.2d 1502 (9th Cir. 1986) ................................................................................. 9

*Gellman v. Telular Corp.*,
 No. 07-282, 2010 WL 5173213 (E.D. Tex. Dec. 14, 2010) ..................................... 6

*Goodman v. Lee (Goodman I)*,
 815 F.2d 1030 (5th Cir. 1987) ................................................................................. 9

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
 545 U.S. 308 (2005) ................................................................................................ 5

*Graver Tank & Mfg. Co. v. Linde Air Prod. Co.*,
    339 U.S. 605 (1950) ........................................................................................ 12

*Heidelberg Harris, Inc. v. Loebach*,
    145 F.3d 1454 (Fed. Cir. 1998) ...................................................................... 4

*HIF Bio, Inc. v. Yung Shin Pharm. Indus. Co., Ltd.*,
    600 F.3d 1347 (Fed. Cir. 2010) ...................................................................... 9

*Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*,
    535 U.S. 826 (2002) ........................................................................................ 9

*In re AST Research Sec. Litig.*,
    887 F. Supp. 231 (C.D. Cal. 1995) ................................................................ 9

*Informatics Applications Grp., Inc. v. Shkolnikov*,
    836 F. Supp. 2d 400 (E.D. Va. 2011) ............................................................ 4

*Israel BioEng'g Project v. Amgen, Inc.*,
    475 F.3d 1256 (Fed. Cir. 2007) .................................................................... 10

*Keurig, Inc. v. Sturm Foods, Inc.*,
    732 F.3d 1370 (Fed. Cir. 2013) .................................................................... 11

*Lucent Techs., Inc. v. Gateway, Inc.*,
    543 F.3d 710 (Fed. Cir. 2008) ................................................................10, 11

*MCV, Inc. v. King-Seeley Thermos Co.*,
    870 F.2d 1568 (Fed. Cir. 1989) ...................................................................8, 9

*Papazian v. Am. Steel & Wire Co. of N.J.*,
    155 F. Supp. 111 (N.D. Ohio 1957) .............................................................4, 6

*Pfaff v. Wells Elecs., Inc.*,
    525 U.S. 55 (1998) ........................................................................................ 10

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) .................................................................... 10

*Rhino Assocs., L.P. v. Berg Mfg. & Sales Corp.*,
    482 F. Supp. 2d 537 (M.D. Pa. 2007) .......................................................... 10

*SanDisk Corp. v. Kingston Tech. Co.*,
    695 F.3d 1348 (Fed. Cir. 2012) .................................................................... 10

Opposition to Plaintiff ViaSat, Inc.'s Motion for Summary        Case No. 3:16-CV-00463-BEN-JMA
Judgment on Acacia's Counterclaim for Patent Misappropriation

iii

*Taylor v. Taylor Made Plastics, Inc.*,
   565 F. App'x 888 (Fed. Cir. 2014) ........................................................................ 4

*Teets v. Chromalloy Gas Turbine Corp.*,
   83 F.3d 403 (Fed. Cir. 1996) ............................................................................... 10

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*,
   135 S. Ct. 831 (2015) ......................................................................................... 10

*United States ex rel. Berge v. Bd. of Trustees of the Univ. of Ala.*,
   104 F.3d 1453 (4th Cir. 1997) ............................................................................. 4, 6

*WCM Indus., Inc. v. IPS Corp.*,
   No. 2016-2211, 2018 WL 707803 (Fed. Cir. Feb. 5, 2018) ............................................ 12

## STATUTES

28 U.S.C. § 1338(a) ...............................................................................................2, 5, 9

28 U.S.C. § 1454(a) ................................................................................................... 3

35 U.S.C. § 101 ........................................................................................................ 7

35 U.S.C. § 116 ........................................................................................................ 7

35 U.S.C. § 251 ....................................................................................................... 11

35 U.S.C. § 256 ............................................................................................. 1, 7, 8, 16

## OTHER AUTHORITIES

Black's Law Dictionary 1486 (6th ed. 1990) ........................................................................ 3

## RULES

Fed. R. Civ. P. 15(a) ................................................................................................ 16

Fed. R. Civ. P. 15(b) ................................................................................................. 9

Fed. R. Civ. P. 15(b)(2) .........................................................................................9, 16

## REGULATIONS

37 CFR § 1.121 ....................................................................................................... 11

# **INTRODUCTION**

Defendant Acacia Communications, Inc. ("Acacia") opposes Plaintiff ViaSat, Inc.'s ("ViaSat") motion for summary judgment on Acacia's patent misappropriation count. (D.I. 89).

ViaSat's memorandum (D.I. 89-1, "Mem.") wrongly suggests there is no federal question subject matter jurisdiction, because Acacia's patent misappropriation claims allegedly do not raise a federal issue. (Mem. at 3-5). ViaSat misstates the law, under which Acacia's **equitable** claims of patent misappropriation do confer federal jurisdiction for **equitable** relief, as the Federal Circuit held in *Arachnid*. In arguing otherwise, ViaSat uses case law quotations that **do not exist**.

ViaSat also ignores the fact that Acacia's claims arise at least in part out of improper inventorship under 35 U.S.C. § 256, which independently confers federal subject matter jurisdiction because it arises under the federal Patent Act.

Realizing the weakness of its arguments, ViaSat falls back on alleging that the count fails on the merits because Acacia did not present evidence of misappropriation on a patent-claim-by-patent-claim basis via expert testimony. (Mem. at 5-7). This argument also fails. Contrary to ViaSat's assertion, a claim for patent misappropriation does not require a claim-by-claim analysis. But even if it did, Acacia has claim-by-claim evidence (examples of which are set forth below) of ViaSat's misappropriation.

Lastly, ViaSat's two-year delay in raising its subject matter jurisdiction theory, after extensive discovery and on the eve of summary judgment rulings, raises questions as to its credibility and prejudicial intent in seeking both to delay these proceedings and to forum-shop. ViaSat never raised any objection to this Court's jurisdiction at any time over the past two years. It only raises the issue now when faced with Acacia's dispositive motions. It should not be allowed to end-run a merits resolution that does not seem to be going ViaSat's way.

# **FACTUAL BACKGROUND**

ViaSat filed its complaint in San Diego Superior Court on January 21, 2016,

bringing two counts for alleged breach of an IP Core Development and License Agreement (the "Agreement" or "Ag.") and a count for alleged misappropriation of trade secrets. (D.I. 1, Ex. 1 at ¶¶ 19-33). Recognizing that ViaSat's allegations implicated substantive federal patent law issues on both sides, Acacia removed the case to federal court less than a month later, and counterclaimed. (D.I. 1).

Acacia removed because ViaSat's claims necessarily raise the federal issue of patent misappropriation. Intertwined with that issue is the federal question of the correct inventorship of the ViaSat Patent Family[1] (Counts I-II, IV-VI), as to which each party (ViaSat and Acacia) claims that its own employees were in fact the inventors. This is a federal question because inventorship disputes arise under the Patent Act. Lastly, there is a dispute over ViaSat's failure to have its employees assign rights, and correct the inventorship, in a different set of Acacia patents and patent applications (the "Acacia Patents") (Counts III, VI). (D.I. 3, ¶¶ 15-18, 23-28, 36-78). Acacia sought, *inter alia*, equitable remedies relating to both the ViaSat Patent Family and the Acacia Patents. (D.I. 3 at 17-18; 36-47).[2]

Removal was necessary because 28 U.S.C. § 1338(a) confers exclusive jurisdiction on federal district courts over "any claim for relief arising under any Act of Congress relating to patents." In the case of patents (unlike other causes of action), such jurisdiction arises whether the patent-related claim is in the complaint **or in a counterclaim**: Section 1454 provides a statutory exception to the "well-pleaded complaint rule," as an action in which "**any** party asserts a claim for relief arising under any Act of Congress relating to patents... may be removed to the district court of the

---

[1] This term refers to two different United States provisional patent applications, Serial Nos. 61/435,278 and 61/521,263 (together, the "ViaSat Provisionals"), and a number of issued patents and pending patent applications that claim priority to them, in whole or in part. (D.I. 3 at ¶¶ 15-18; D.I. 89, Exs. 1-2). ViaSat did not list any Acacia employees as inventors on any of those patents or patent applications. (D.I. 3 at ¶ 15).

[2] As discussed below, Acacia did not sue ViaSat for patent **infringement** – that claim can be brought only after legal title in the ViaSat Patent Family has been resolved in Acacia's favor, based either on Acacia's claim that it was the original inventor of those patents, or that ViaSat misappropriated them. (D.I. 3).

United States for the district and division embracing the place where the action is pending."[3]  28 U.S.C. § 1454(a).  *See Busch v. Jakov Dulcich & Sons LLC*, No. 15-384, 2015 WL 3792898, at *5 (N.D. Cal. June 17, 2015) ("Section 1454 . . . serves as an exception to the general rule that federal question jurisdiction exists only when the plaintiff's complaint includes a cause of action arising under federal law.").  Thus both ViaSat's claims and Acacia's counterclaims can be considered in establishing jurisdiction.

## ARGUMENT

### I.  ACACIA'S PATENT MISAPPROPRIATION COUNTS INVOKE FEDERAL QUESTION SUBJECT-MATTER JURISDICTION.

#### A.  Equitable Claims to Patent Ownership Raise a Federal Question.

Acacia's patent misappropriation counts assert an **equitable** interest as owner and/or inventor of the ViaSat Patent Family.  The claim is not that Acacia currently holds **legal** title (as would be required to sue for patent infringement), but rather that it should **equitably** be awarded such title, inasmuch as its employees were the actual inventors.  (D.I. 3 at Count I & 17-18).  Equitable title is "the beneficial interest of one person whom equity regards as the real owner, although the legal title is vested in another."  *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1578 n.3 (Fed. Cir. 1991) (quoting Black's Law Dictionary 1486 (6th ed. 1990)).

In *Arachnid*, which ViaSat also cites (Mem. at 3-4), the Federal Circuit held that where a plaintiff has equitable title in a patent, "a federal district court has *jurisdiction* to consider claims for *equitable relief*…."  *Arachnid,* 939 F.2d at 1580 (emphasis in original).  Such a plaintiff may sue in equity and "*may obtain full redress for infringement by way of injunction, accounting, declaration of trust, or other forms of equitable relief.*  Where, upon the face of the pleadings, or the exhibits attached thereto, it is apparent that plaintiff's equitable interest arises under the patent laws, a District Court has jurisdiction in equity under

---

[3] In this brief, citations and quotations are omitted and emphasis added, except as noted.

Section 1338….” *Id.* (emphasis in original) (quoting *Papazian v. Am. Steel & Wire Co. of N.J.*, 155 F. Supp. 111, 117 (N.D. Ohio 1957)).

In other words, having equitable title to a patent (like Acacia does) “confers standing in an action seeking *equitable* remedies, such as an injunction to prevent further infringements.” *Beam Laser Sys., Inc. v. Cox Commc'ns, Inc.*, 117 F. Supp. 2d 515, 520 (E.D. Va. 2000) (emphasis in original). Unsurprisingly, federal courts have repeatedly exercised jurisdiction over such equitable claims. *See, e.g., Taylor v. Taylor Made Plastics, Inc.*, 565 F. App'x 888, 889 (Fed. Cir. 2014) (party may hold “an equitable interest in the patent”); *Heidelberg Harris, Inc. v. Loebach*, 145 F.3d 1454, 1458 (Fed. Cir. 1998) (noting with approval that defendant “has already been awarded equitable relief in the amount of $831,125” by federal district court for misappropriated patent “and he has regained legal title to his patent.”); *Curtis Mfg. Co. v. Plasti-Clip Corp.*, 933 F. Supp. 94, 101-02 (D.N.H. 1995) (“This court has already determined that an assignment of the allegedly malappropriated patent is among the equitable remedies available to plaintiff….”); *GAF Corp. v. Amchem Prods., Inc.*, 514 F. Supp. 943, 974-75 (E.D. Pa. 1981) (court resolving patent misappropriation issues determined that it had jurisdiction under Section 1338); *Cargill, Inc. v. Sears Petroleum & Transp. Corp.*, 388 F. Supp. 2d 37, 63 (N.D.N.Y. 2005) (“while not allowed to recover damages,” party with equitable interest “was permitted to participate in the pursuit of the patent infringement counterclaims and to enjoy the benefit of the equitable relief….”).

In fact, remand to state court could leave Acacia without any remedy. “A conversion claim based on alleged misappropriation of patent rights is preempted by federal law.” *Informatics Applications Grp., Inc. v. Shkolnikov*, 836 F. Supp. 2d 400, 421 (E.D. Va. 2011) (finding federal jurisdiction based on improper inventorship). *See also United States ex rel. Berge v. Bd. of Trustees of the Univ. of Ala.*, 104 F.3d 1453, 1463 (4th Cir. 1997) (conversion claim preempted where the “plaintiff alleges only the unlawful retention of its intellectual property rights and not the unlawful retention of the tangible object embodying its work”). In short, not only **can** Acacia's patent

1  misappropriation claims stay in this Court, they arguably **must** stay here, as the above

2  authority suggests that federal patent law preempts pursuing them in state court.

3      Federal question jurisdiction for patent misappropriation exists for a

4  straightforward reason.  28 U.S.C. § 1338(a) provides jurisdiction where "the plaintiff's

5  right to relief necessarily depends on resolution of a substantial question of federal

6  patent law, in that patent law is a necessary element."  *Christianson v. Colt Indus.*

7  *Operating Corp.*, 486 U.S. 800, 809 (1988).  Further, "the absence of a federal private

8  right of action" is "not dispositive of" the question of federal question jurisdiction,

9  and "an important issue of federal law" that is an "essential element" of the plaintiff's

10  claim can create jurisdiction in federal court.  *Grable & Sons Metal Prods., Inc. v. Darue*

11  *Eng'g & Mfg.*, 545 U.S. 308, 315-18 (2005).  The Supreme Court articulated the

12  question as follows: "does a state-law claim necessarily raise a stated federal issue,

13  actually disputed and substantial, which a federal forum may entertain without

14  disturbing any congressionally approved balance of federal and state judicial

15  responsibilities."  *Id.* at 314.  All of these factors are met here, for the reasons

16  discussed above.  This Court need proceed no further to deny ViaSat's motion.

**B.  ViaSat's Counter-Arguments Rely on Mis-Citations and Non-Existent Quotations.**

17
18
    In its effort to dispute federal jurisdiction, ViaSat mis-cites cases and relies on

19  non-existent quotations.
20

21      ViaSat opens its analysis with an alleged quotation from *Arachnid*: the

22  "preliminary question of equitable ownership is not a federal question." (Mem. at 4).

23  This language does **not** appear in *Arachnid*.  (Ex. 98).  In fact, so far as Acacia can

24  determine, this quotation does not appear in **any** case available on Westlaw or Google.

25  This quote seems to have been made up.

26      ViaSat has other non-existent quotations.  It next states that *Board of Trustees of*

27  *Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832, 841 (Fed. Cir. 2009)

28  says "The question of ownership of patent rights is typically a question resolved by

state courts under state law." (Mem. at 4). But once again, this quotation does **not** appear in the *Stanford* case. (Ex. 99). ViaSat finishes its analysis with another alleged, six-line quotation from *Arachnid*, 939 F.2d at 1580. (Mem. at 4). Yet only a few words from the last line of that quotation actually appear in *Arachnid*. *See Arachnid*, 939 F.2d at 1580; Ex. 98 at 5.

The result is that, while ViaSat relies on only three citations to appeals court cases for its argument, **none** of them actually says what ViaSat represents. ViaSat's reliance, in a summary judgment motion, on non-existent quotations is troubling.

It appears that ViaSat may have intended to refer to the two district court cases it also cites (Mem. at 4), as they contain some (but not all) of the quoted language ViaSat incorrectly ascribes to the Federal Circuit. Yet even if so, those cases do not help ViaSat. Both deal with the entirely different question of whether, in the context of disputed assignments of patent rights, an entity with equitable but not legal title may sue for **infringement**. *See Gellman v. Telular Corp.*, No. 07-282, 2010 WL 5173213, at *3-4 (E.D. Tex. Dec. 14, 2010); *Papazian*, 155 F. Supp. at 117. As noted above, they find that an equitable title holder who does not yet have legal title lacks standing to sue for infringement, as "the plaintiff in an action at law must be the person or persons in whom the legal title to the patent resided at the time of the infringement." *Crown Die & Tool Co. v. Nye Tool & Mach. Works*, 261 U.S. 24, 40-41 (1923). To the extent ViaSat's erroneous quotations to the Federal Circuit are relevant, they hold the same. *See Arachnid*, 939 F.2d at 1579; *Stanford*, 583 F.3d at 848-49; Mem. at 4.

Crucially here, Acacia could not and did not assert a legal claim of patent **infringement** against ViaSat based on the ViaSat Patent Family. (D.I. 3). Instead, it asserted equitable claims based on its equitable ownership rights in that patent family. (*Id.* at 11-18). That is exactly the distinction that *Arachnid* draws. *Arachnid*, 939 F.2d at 1579-80 (dismissing plaintiff's legal claim for patent infringement based on its lack of legal title during the relevant period, but distinguishing multiple prior cases where jurisdiction **was** appropriate because "the plaintiff sought an *equitable* remedy as

opposed to damages *at law*.") (emphasis in original). That is precisely the distinction applicable here, and under which federal jurisdiction exists.

### C. ViaSat Ignores Acacia's Evidence of Improper Inventorship, Which Triggers Federal Question Subject Matter Jurisdiction.

ViaSat is also silent on another issue that separately establishes jurisdiction: improper inventorship arises under federal law. Acacia's claims arise at least in part from inventorship. The original ownership of patents vests in the actual inventors. *See* 35 U.S.C. § 101 ("Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter,… may obtain a patent therefor."). ViaSat listed only its own employees as the inventors on the ViaSat Patent Family. (D.I. 89, Exs. 1-2). Hence the ownership that ViaSat misappropriated arose through its violation of its federal patent law obligation to list the proper inventors. (D.I. 3 ¶¶ 7-22, Count I).

Fundamentally, an inventorship dispute is one person coming up with a new idea, and a second person putting that idea into a patent application without listing the first person as an inventor. *See* 35 U.S.C. § 101 (person who "invents" may obtain a patent); 35 U.S.C. § 116, 256 (allowing correction of patent applications and issued patents to list true inventors); *Chou v. Univ. of Chi.*, 254 F.3d 1347, 1358-59 (Fed. Cir. 2001) (person who was not listed as inventor but claimed to have invented patent could sue in federal court to correct inventorship).

That is exactly what happened here. From the outset of the case, Acacia alleged that it owned trade secrets, and that ViaSat "impermissibly used Acacia's trade secrets by filing the ViaSat Patent Family." (D.I. 3, ¶ 80). As discovery progressed, Acacia identified five specific trade secrets (Ex 103), and provided written discovery responses as to which of its employees had invented them and how. (Ex. 102 at No. 9). Via deposition and other evidence, Acacia established that the ViaSat Patent Family contains all five of those trade secrets. (Ex. 104 at 200:11-201:13, 203:6-206:11, 208:12-210:5; Ex. 105 at 201:12-212:11; Ex. 106 at 163:2-171:4). Indeed, ViaSat does

1  not dispute that the ViaSat Patent Family incorporates these inventions.  (*Id.*)

2         Acacia also provided a lengthy expert report from a technical expert, Dr. Paul

3  Prucnal, explaining exactly where and how each of Acacia's trade secrets is present in

4  the ViaSat Patent Family, and assembling extensive documentary evidence and

5  deposition testimony to support his opinion.  (D.I. 89, Ex. 4 ¶¶ 72-76, 100-102, 123-

6  125, 145-146, 170-174).  ViaSat's responsive expert, Dr. Ivan Djordjevic, did not

7  disagree that nearly all of these Acacia ideas are present in the ViaSat Patent Family

8  exactly where Dr. Prucnal says they are.  (D.I. 83, Ex. 14 at 64-65).  Yet the Acacia

9  employees who had invented the ideas that are admittedly in the ViaSat Patent Family

10  are not listed as inventors.  In sum, this inventorship dispute was heavily litigated.

11         Similarly, Acacia reached out to ViaSat in 2012, indicating that it believed some

12  ViaSat employees should be listed as inventors on the Acacia Patents, and asking for

13  ViaSat's assistance in securing declarations of inventorship and written assignments

14  from them.  (Ex. 113 at 1-3).  ViaSat refused, in part on the ground that the

15  applications were not patentable over the prior art.  (*Id.* at 3).  Thus Acacia's claims

16  arise at least in part from the fact that not all of the true inventors were listed on

17  patents that comprise part of the ViaSat Patent Family or the Acacia Patents.  (Acacia

18  discusses several specific examples in the next section).

19         Federal law provides that, where there is an error in naming the correct

20  inventors on an issued patent, a federal court may correct that error.  *See* 35 U.S.C.

21  § 256.  Such claims to correct inventorship arise under the patent laws, meaning that

22  federal district courts have exclusive jurisdiction over those actions. *See Chou*, 254 F.3d

23  at 1358-59 ("concrete financial interest" in patent is sufficient to confer standing);

24  *MCV, Inc. v. King-Seeley Thermos Co.*, 870 F.2d 1568, 1570-1571 (Fed. Cir. 1989) (an

25  action to correct inventorship under § 256 "aris[es] under" the patent laws for the

26

27

28

purpose of § 1338(a)).[4] "[I]nventorship is a unique question of patent law," so "the cause of action arises under § 1338(a)." *HIF Bio, Inc. v. Yung Shin Pharm. Indus. Co., Ltd.*, 600 F.3d 1347, 1353 (Fed. Cir. 2010). This inventorship issue provides a separate, sufficient ground for jurisdiction.

To the extent that ViaSat argues the counterclaims did not sufficiently plead improper inventorship, any arguable imprecision in Acacia's counterclaim "was harmless and is not fatal to its otherwise well-pleaded cause of action." *MCV*, 870 F.2d at 1571. Any inexactness was harmless because the parties in fact have vigorously litigated the inventorship issue, as discussed above.

Therefore the Court should deem the counterclaims constructively amended to encompass that issue. *See Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 829 n.1 (2002) (noting that federal subject matter jurisdiction may exist via "constructive amendment to the complaint raising a patent-law claim"). That said, if the Court prefers that Acacia expressly amend its counterclaims to conform them to the course of litigation under Fed. R. Civ. P. 15(b)(2), by stating expressly that improper inventorship is one of the grounds for its patent misappropriation claim, Acacia could certainly do so. "Fed. R. Civ. P. 15(b) permits free amendment up to the time of trial, or even later, in order to conform the pleadings with the evidence…." *In re AST Research Sec. Litig.*, 887 F. Supp. 231, 235 (C.D. Cal. 1995). *See also Galindo v. Stoody Co.*, 793 F.2d 1502, 1512 (9th Cir. 1986) ("This rule reflects the liberal policy favoring amendments of pleadings at any time.").[5]

---

[4] *Accord Goodman v. Lee (Goodman I)*, 815 F.2d 1030, 1032 (5th Cir. 1987) ("…exclusive federal district court jurisdiction exists in an action for a declaratory judgment to establish joint authorship of a copyrighted work…").

[5] As discussed in Part III below, ViaSat cannot be heard to complain of the lateness of any such amendment given its own two-year delay in asserting the alleged lack of jurisdiction. Had it raised the issue in a more timely manner, any amendment that may be deemed necessary could have been made at that time (though as argued in text, none is necessary in any event).

## II. ACACIA PRESENTED MORE THAN SUFFICIENT FACTS TO SUPPORT PATENT OWNERSHIP.

### A. ViaSat Again Misstates the Law on Patent Misappropriation.

As a back-stop to its jurisdictional argument, ViaSat argues that Acacia has not proven patent misappropriation on the merits. (Mem. at 5-7). The lynchpin of this argument is ViaSat's theory that Acacia is legally required to offer expert testimony on a patent-claim-by-patent-claim basis in order to show misappropriation. (*Id.*).

ViaSat again misstates the law. There is no requirement for such a claim-by-claim analysis for patent **misappropriation**. All of ViaSat's cited cases deal with other patent issues, such as claim language **interpretation**, which naturally proceeds claim-by-claim. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*) (establishing standards for patent claim interpretation); *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 849 (2015) (patent claim interpretation)[6]; *SanDisk Corp. v. Kingston Tech. Co.*, 695 F.3d 1348, 1363 (Fed. Cir. 2012) (determining whether a patentee has disclaimed patent claim coverage under the doctrine of equivalents); *Rhino Assocs., L.P. v. Berg Mfg. & Sales Corp.*, 482 F. Supp. 2d 537, 544 (M.D. Pa. 2007) (patent claim interpretation and infringement issues); *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 63 (1998) (prior art invalidity issues); *Israel BioEng'g Project v. Amgen, Inc.*, 475 F.3d 1256, 1263 (Fed. Cir. 2007) (standing issues relating to whether co-inventor had legal title to assert patent infringement claim); *Teets v. Chromalloy Gas Turbine Corp.*, 83 F.3d 403, 406 (Fed. Cir. 1996) (dispute relating to implied-in-fact contract and related patents); *Lucent Techs., Inc. v. Gateway, Inc.*, 543 F.3d 710, 721-22 (Fed. Cir. 2008) (standing, contract, inventorship, claim construction, and infringement issues).[7]

In short, none of these cases touches upon whether a court must assess patent

---

[6] ViaSat fails to inform this Court that it relies on the **dissent** in *Teva*.

[7] As to the inventorship issue, which is analyzed claim-by-claim, see Part II.B below, which explains how that requirement is met here.

misappropriation on a claim-by-claim basis. Nor do they establish that all patent issues are assessed claim-by-claim. Some are, some are not. For example, the Federal Circuit has rejected the argument that the doctrine of "patent exhaustion" should be analyzed on a claim-by-claim basis, holding that instead the court is to look at "the patents at issue in their entirety, rather than the exhaustion of the claims at issue on an individual basis." *Keurig, Inc. v. Sturm Foods, Inc.*, 732 F.3d 1370, 1374 (Fed. Cir. 2013).

Similarly, it would make little sense to prohibit a plaintiff from seeking a remedy when its patent had been misappropriated but the defendant had not (or at least not **yet…**) drafted claims expressly covering the misappropriated technology. If such a count were dismissed, the defendant could later amend its patent claims to ones that **do** cover the misappropriated technology or ideas, or could seek to have existing claims reissued with different scope. *See* 37 CFR § 1.121, 35 U.S.C. § 251. The point is that when one party (here, Acacia) alleges that another (here, ViaSat) has misappropriated ideas, diagrams, and/or other content and incorporated those materials into its patent applications, that act of misappropriation is actionable regardless of whether the misappropriated material appears in a single, specific claim or merely in the patent specification as a whole. *See Lucent*, 543 F.3d at 718 ("written descriptive support in the [patent] **specification**" is relevant to dispute over when claimed technology was developed).

ViaSat's cases also do not establish that expert testimony is required to prove patent misappropriation—although ViaSat concedes that Acacia has provided such expert testimony at the patent specification level (Mem. at 6 & Ex. 4), which is all its cases suggest is needed. *See Lucent*, 543 F.3d at 718. In any event, as discussed below, Acacia has met even the higher standard that ViaSat incorrectly seeks to hold it to: The overlap between several of ViaSat's issued patent claims and Acacia's trade secrets can be seen simply from a comparison of the words in both. "[O]ur precedent does not require opinion testimony, and certainly does not require expert opinion testimony" on issues like infringement or the doctrine of equivalents. *WCM Indus., Inc. v. IPS Corp.*,

No. 2016-2211, 2018 WL 707803, at *4 (Fed. Cir. Feb. 5, 2018). Rather, "[p]roof can be made in any form: through testimony of experts or others versed in the technology; by documents, including texts and treatises; and, of course, by the disclosures of the prior art." *Graver Tank & Mfg. Co. v. Linde Air Prod. Co.*, 339 U.S. 605, 609 (1950).

### B. Acacia Has Proven Patent Misappropriation Even Under ViaSat's Incorrect Standard.

Even if ViaSat's claim-by-claim standard for patent misappropriation were correct (which as explained above, it is not), several claims in the ViaSat Patent Family were copied from Acacia's trade secrets, and in some cases contain word-for-word the same disclosures.

To cite but one example, claim █ of U.S. Patent No. 8,891,980 (the "'980 patent"), a member of the ViaSat Patent Family, is shown below. (Ex. 107). That claim incorporates both Acacia's second trade secret, (Ex. 103), and a figure in Exhibit C to the Agreement, which Acacia owns. (Ex. 112) ("Agreement, Ex. C") § 3.3; D.I. 3 ¶¶ 8-14). ViaSat admits that figure is copied almost exactly in both of its provisional applications that led to the '980 patent. (Ex. 104 at 200:11-201:13; Ex. 105 at 201:12-212:11; Ex. 106 at 163:2-171:4). And the same figure appears in the '980 patent itself.



**Figure 3: Demodulator Top Level Block Diagram**

(Agreement, Ex. C § 3.3)





Figure 1: Demodulator Top Level Block Diagram

(D.I. 89, Ex. 1, Provisional Patent Application No. 61/435,278, Figure 1)



FIG. 7    700

(D.I. 89, Ex. 2, Provisional Patent Application No. 61/521,263, Figure 1).



FIG. 5    500

('980 patent, Figure 5). *see also* D.I. 3 at ¶¶ 14-19.

The table below shows: (1) on the left, claim █ of the '980 patent; (2) in the middle, the relevant Acacia trade secret; and (3) on the right, excerpts from Exhibit C to the Agreement. A factfinder can easily see the similarity in language between the issued patent claim, the Acacia trade secret, and Exhibit C to the Agreement:

| U.S. 8,891,980 | Acacia Trade Secret | Exhibit C of the Agreement |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |

| U.S. 8,891,980 | Acacia Trade Secret | Exhibit C of the Agreement |
|---|---|---|
| ██████████ | ██████████ | ██████████ |
| ██████████ | | ██████████ |

Exhibit 114 contains other examples, showing that ViaSat misappropriated at least the following claims from the following members of the ViaSat Patent Family: U.S. Patent No. 8,639,126, claims ████████; U.S. Patent No. 8,682,180, claims ████; ████████; U.S. Patent No. 8,693,897, claims ████████; U.S. Patent No. 8,744,279, claims ████████; and U.S. Patent No. 8,891,980, claims ████████. (*See* Exs. 107-111). ViaSat does not dispute that Acacia has provided expert testimony as to what this technology and these terms mean, at least at the patent specification level. (Mem. at 6 & Ex. 4). All the jury needs to do is compare the (almost identical) words in the claims, trade secrets, and Exhibit C to the Agreement, aided by the fact testimony of the individuals at Acacia who actually invented these concepts, and reach the ultimate conclusion of whether Acacia invented what is in those claims. That is the jury's province. In sum, these factually disputed issues preclude summary judgment on ViaSat's motion.

## III. VIASAT'S TWO-YEAR DELAY IN RAISING ITS JURISDICTIONAL CHALLENGE FURTHER SHOWS IT TO BE DOING LITTLE MORE THAN PREJUDICIAL FORUM-SHOPPING.

Finally, the Court should cast a skeptical eye on ViaSat's timing.

ViaSat filed its state court complaint in January 2016, and Acacia removed the case to this Court less than a month later. (D.I. 1). Since then, two years of active litigation have occurred, with the parties fully and vigorously participating in extensive discovery, producing millions of pages of documents, conducting the maximum number of fact depositions allowed under the Federal Rules, serving multiple expert reports on both sides and deposing every expert, and briefing multiple summary judgment and *Daubert* motions. (D.I. 26, 48, 59, 68). The case is set for a final pretrial conference in just a few months. (D.I. 68 at 3). In all this time, ViaSat never once suggested that removal was improper.

Only once ViaSat saw that its case was crumbling did it come up with its jurisdiction challenge, designed to delay, to increase expense to both sides, and to forum-shop. ViaSat first had to withdraw a number of its initially alleged trade secrets, due to its own admitted public disclosure of them. (Ex. 101). Acacia also established a number of grounds, briefed elsewhere, on which ViaSat's case should be fully or partially stricken. (D.I. 75, 83, 86, 93). ViaSat saw most of Acacia's motions before filing its current jurisdictional challenge. (D.I. 89). Then, suddenly, ViaSat decided that it had discovered a way out of being in this Court at all.

If the lack of federal subject matter jurisdiction were as clear as ViaSat maintains, surely it would have brought this issue up long before now. ViaSat points to no change in the law justifying its very late assertion of the issue (Br. at 3-7), and there has been none: Jurisdiction is proper, as discussed above. This Court should not allow such expensive and belated forum-shopping.

At the least, if the Court determines that Acacia ought to amend its counterclaims under Rule 15(b)(2) to add an express reference to 35 U.S.C. § 256 for improper inventorship, ViaSat should be estopped from arguing that the motion comes too late. Had ViaSat timely moved to remand back to state court at the start of the case, Acacia could have addressed these issues then and amended under Rule 15(a), if necessary. Instead, ViaSat stayed silent for two years, as the case proceeded through

discovery and headed to trial.  It would be inequitable to allow ViaSat to use its own
delay in raising subject matter jurisdiction to prevent Acacia from amending to
conform its pleadings to this issue, as Rule 15 permits; at which point ViaSat's
(erroneous) claim of lack of federal jurisdiction would be moot (as it has not to date
even attempted to dispute that inventorship is a patent question).[8]

## <u>CONCLUSION</u>

For the above reasons, this Court has subject matter jurisdiction over Acacia's
counterclaim relating to patent misappropriation and patent inventorship; and
consequently has supplemental jurisdiction over all remaining issues.  Remand to state
court would be improper, and could even leave Acacia without a forum for resolution
of its patent misappropriation and inventorship claims.  Acacia therefore respectfully
requests that the Court deny ViaSat's motion for summary judgment on Acacia's first
counterclaim (D.I. 89).


Date:   February 16, 2018                     Respectfully submitted,

                                              WOLF, GREENFIELD & SACKS, P.C.


                                              By: s/ Michael A. Albert
                                              Michael A. Albert
                                              Hunter D. Keeton
                                              Stuart V. C. Duncan Smith

                                              Attorneys for Defendant and Counter
                                              Claimant Acacia Communications, Inc.

---

[8] In any event, no such amendment is needed, as explained in Part I.C above, as the
pleadings are to be treated under Fed. R. Civ. P. 15(b)(2) as covering this actually-
litigated issue.

## CERTIFICATE OF SERVICE

I certify that today I caused to be served the redacted version of the foregoing document by CM/ECF notice of electronic filing upon the parties and counsel registered as CM/ECF Users. I further certify that am causing the redacted and unredacted versions of the foregoing document to be served by electronic means via email upon counsel for ViaSat, Inc., per the agreement of counsel.

Date: February 16, 2018         *s/Michael A. Albert*
Michael A. Albert