WOLF, GREENFIELD & SACKS, P.C.
   Michael A. Albert (Admitted *Pro Hac Vice*)
   Mass. B.B.O No. 558566
   malbert@wolfgreenfield.com
   Hunter D. Keeton (Admitted *Pro Hac Vice*)
   Mass. B.B.O No. 660609
   hkeeton@wolfgreenfield.com
   Stuart V. C. Duncan Smith (Admitted *Pro Hac Vice*)
   Mass. B.B.O No. 687976
   sduncansmith@wolfgreenfield.com
600 Atlantic Avenue
Boston, Massachusetts, 02210
Tel: (617) 646-8000   Fax: (617) 646-8646

PROCOPIO, CORY, HARGREAVES & SAVITCH LLP
   Victor M. Felix (SBN: 179622)
   victor.felix@procopio.com
525 B Street, Suite 2200
San Diego, California, 92101
Tel: (619) 515-3229   Fax: (619) 744-5409

Attorneys for Defendant and Counter Claimant Acacia Communications, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ViaSat, Inc.,**<br>*a Delaware corporation,*<br><br>Plaintiff<br>and Counter Defendant,<br><br>v.<br><br>**Acacia Communications, Inc.,**<br>*a Delaware corporation,*<br><br>Defendant<br>and Counter Claimant | Case No. 3:16-cv-00463-BEN-JMA<br><br>**DEFENDANT ACACIA COMMUNICATIONS, INC.'S OPPOSITION TO PLAINTIFF VIASAT, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**REDACTED**<br><br>Judge: Hon. Roger T. Benitez<br>Mag. Judge: Hon. Jan M. Adler<br><br>Date: March 5, 2018<br>Time: 10:30 a.m.<br>Courtroom: 5A |

# **TABLE OF CONTENTS**

I.     INTRODUCTION ..................................................................................... 1

II.    SUMMARY OF THE ARGUMENT ...................................................... 3

III.   FACTUAL BACKGROUND .................................................................. 4

    A.   Acacia Hired ViaSat To Make Two Components of a Complex
        Product, and Acacia Paid ViaSat Well for the Technology. .............. 4

    B.   ViaSat Breached the Agreement Almost Immediately. ..................... 5

    C.   Acacia Has Long Since Moved On From ViaSat's Old Technology. ............ 6

    D.   Acacia Gave ViaSat One More Chance To Make
        a Useable SDFEC, and ViaSat Failed...................................................... 7

    E.   ViaSat ███████████████████████████████
        ██████████████, and Now Hopes to Ride Acacia's Coattails. ................... 7

    F.   ViaSat's Awareness That Acacia Has Not Breached the Agreement............. 10

IV.    ARGUMENT ........................................................................................... 11

    A.   ViaSat's Interpretation Conflicts With the Agreement's Language................ 11

        1.   Foreground Information................................................................. 11

        2.   Background Information and Licensed Materials....................... 12

        3.   ViaSat Aggrandizes Its Rights Under the Agreement. ............. 14

    B.   ViaSat Misunderstands What Is Necessary  for Backward-Compatible
        Products. ........................................................................................... 16

    C.   ViaSat Lacks Any Actual Evidence that the Accused
        Products Improperly Use any of ViaSat's Old SDFEC Code..................... 17

    D.   ViaSat's Purported Evidence Does Not Amount to
        Breach of the Agreement or Trade Secret Misappropriation.......................... 17

        1.   General Concepts That ViaSat Calls Its ATSs.......................... 18

            a.   No Misuse of Background Information............................. 18

            b.   No Trade Secret Misappropriation ................................. 19

            c.   No Misuse of Licensed Materials .................................... 20

        2.   Specifications That ViaSat Provided Under the Agreement .................. 20

            a.   No Misuse of Background Information............................. 20

            b.   No Trade Secret Misappropriation ................................. 21

            c.   No Misuse of Licensed Materials .................................... 21

        3.   ████████ Encoder Source Code.......................................... 22

|  |  |  |  |
|---|---|---|---|
| | a. | No Misuse of Background Information | 22 |
| | b. | No Trade Secret Misappropriation | 22 |
| | c. | No Misuse of Licensed Materials | 22 |
| 4. | | ViaSat's June 2009 "White Paper" | 23 |
| | a. | No Misuse of Background Information | 23 |
| | b. | No Trade Secret Misappropriation | 23 |
| | c. | No Misuse of Licensed Materials | 23 |
| 5. | | All the Rest of ViaSat's "Evidence" Is Just Distraction | 24 |
| V. | CONCLUSION | | 25 |

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Computer Econs., Inc. v. Garnter Group, Inc.,*
  50 F. Supp. 2d 980 (S.D. Cal. 1999) ................................................................ 23

*GRT, Inc. v. Marathon GTF Tech., Ltd.,*
  No. 5571, 2012 WL 2356489 (Del. Ch. June 21, 2012) ................................. 22

*John M. Floyd & Assocs., Inc. v. TAPCO Credit Union,*
  550 F. App'x 359 (9th Cir. 2013) .................................................................... 17

*Pixion, Inc. v. PlaceWare Inc.,*
  421 F. Supp. 2d 1233 (N.D. Cal. 2005) ........................................................... 23

*Reserves Mgmt., LLC v. Am. Acquisition Prop. I, LLC,*
  86 A.3d 1119, 2014 WL 823407 (Del. 2014) ................................................. 11

*Sako v. Wells Fargo Bank. N.A.,*
  No. 14-1034, 2016 WL 110513 (S.D. Cal. Jan. 8, 2016) .................................. 3

*Tovar v. U.S. Postal Serv.,*
  3 F.3d 1271 (9th Cir. 1993) ............................................................................. 18

**STATUTES**

CAL. CIV. CODE § 2019.210 ................................................................................ 23

CAL. CIV. CODE § 3425.1(a) ............................................................................... 19

## I.    INTRODUCTION

In 2009, Acacia hired ViaSat to make two components for an optical communications product Acacia was developing.  Those two components were a DSP Core and an SDFEC Core.  Under the Agreement, the parties agreed Acacia would buy the DSP Core for $3.2 million, and would pay the cost of developing the SDFEC Core over time by giving ViaSat a royalty on each product Acacia sold that included **that specific** SDFEC Core.  (D.I. 98, Ex. 22 ("Ag.") §§ 2(b), 4); D.I. 75, Ex. 9).

To date, the arrangement has been profitable for ViaSat well beyond its expectations.  Acacia has paid ViaSat a total of ███████.  (D.I. 75, Mem. at 1-4).  That figure is about ████████████████████████████ ████████████████████████████████████████ ███████████████.  (*Id.*).  Thus, the decision to use the split fee-royalty arrangement gave ViaSat a massive windfall profit.

After the first product, it became clear to Acacia that ViaSat was not a viable long-term business partner.  ████████████████████████████ ██████████████████████.  (*See* Ex. 115 at 158:16-19; Ex. 116 at 48:10-49:9).  When their work together began, Acacia was a startup company with few employees.  However, when Acacia turned to working on the next generations of products, Acacia had grown all of the in-house technical talent it needed to design its own products.  Acacia has developed new products that are both commercially successful and that set the standard for optical communications.

ViaSat, on the other hand, has struggled in the optical communication business.  ViaSat ███████████████████████████ ███████████████████████████████████████.  (Ex. 117 at VIASAT211203).  At deposition, the head of ViaSat's optical communications business ██████████████████████.  (Ex. 118 at 158:2-165:19).  But when he was asked about ██████████████████ ████.  (Ex. 118 at 163:14-165:19).

1    Unbeknownst to Acacia until this lawsuit began, ViaSat had been █████████

2    ███████████████████████████████████████████████████████████

3    ███████████████████████████████████████████████████████████

4    ████████████████████████████████. (Ex. 119 ¶¶ 50, 77-83, 103-106, 126-128, 147-

5    152, 175-185). █████████████████████████████████████████████.

6    Having failed to █████████████████████████████████████████

7    ████████████████████, ViaSat resorted to suing Acacia.  ViaSat's basis was that

8    Acacia's new products included a backward-compatible mode that could interact with

9    its first generation product.  (*E.g.*, D.I. 98, Ex. 19).  ViaSat assumed that the new

10   products must have included the SDFEC Core.  (*E.g.*, *id.*).  Acacia repeatedly told

11   ViaSat that, no, the products did not have that SDFEC Core, but that Acacia instead

12   had developed the products (including its own SDFEC core) independently.  (D.I. 98,

13   Exs. 20 & 21).  ViaSat did not believe Acacia and filed this case.

14   During discovery, ViaSat finally learned that Acacia had been telling the truth:

15   its new products did not incorporate ViaSat's SDFEC Core (the key portion of which

16   – the decoder – was ████████, so Acacia could not possibly have copied).  So Acacia

17   did not owe any royalty payments for the backward-compatible products.  The

18   Agreement's express terms provided for a royalty only when Acacia included the

19   SDFEC Core on a product, but Acacia was not including the SDFEC Core on the

20   Accused Products.  That should have been the end of the case.

21   Unwilling to acknowledge the express terms of the Agreement barring its

22   recovery, ViaSat chose instead to keep litigating, by adopting a strained reading of the

23   Agreement under which, in essence, Acacia would be barred from competing with

24   ViaSat.  Instead of relying on its prior belief that Acacia was using the SDFEC Core

25   that ViaSat had made, ViaSat shifted its posture to now claim that Acacia had made its

26   own components using ViaSat's ideas.  (*See, e.g.*, D.I. 98, Mem. at 23).

27   ViaSat still had a problem, however.  The Agreement's express terms preclude

28   ViaSat from pursuing claims based only on "use."  ████████████████████

1   ████████████████████████████████████████████████████.

2        ViaSat's solution so far has been just to ignore the problematic contract

3   language.  Acacia filed a summary judgment motion on January 26, 2018, laying out the

4   reasons it is not liable.  (D.I. 83).  Although ViaSat had that motion for a week before

5   filing this motion, and this motion seeks the mirror-image result of Acacia's, ViaSat did

6   not grapple with the issues that Acacia identified.

7        ViaSat's allegations rely principally on rhetoric and repeated references to

8   "theft," "copying," "lying," and other such inflammatory terms to make up for its lack

9   of substance.  The Agreement does not provide ViaSat with any right to relief at all,

10  and *a fortiori* not to summary judgment.

## II.   SUMMARY OF THE ARGUMENT

12       ViaSat's motion is short on applying the law and the parties' Agreement to the

13  facts of this case.  Instead, it tells a long tale of largely irrelevant and almost entirely

14  contested facts, intersperses some incomplete statements about the parties'

15  Agreement, and then concludes that Acacia somehow must have breached the contract

16  and misappropriated ViaSat's Alleged Trade Secrets ("ATSs").  A motion this devoid

17  of analysis and application of law to facts cannot entitle ViaSat to summary judgment.

18  *E.g.*, *Sako v. Wells Fargo Bank. N.A.*, No. 14-1034, 2016 WL 110513, at *13 (S.D. Cal.

19  Jan. 8, 2016) (denying summary judgment where plaintiff did not "present any

20  evidence" of its claim "[b]esides a conclusory argument").

21       ViaSat's argument's greatest flaw lies in its re-casting of the Agreement.  ViaSat

22  tries to enforce a version of the Agreement that excludes language ███████████

23  ████████████████████████████████████████████████  ████████

24  ██████████████████████████  ███████  █████████████

25  █████████████████████████████████████████████

26  ████████████████████████  ██████  ███████████.  ViaSat's

27  disappointment with the agreement it negotiated does not entitle it to block Acacia

28  from making competing products or charge it more money, beyond the negotiated

1   sums, for doing so.

2       As discussed further below, none of the evidence that ViaSat identifies shows

3   breach of contract or misappropriation of trade secrets.  In many instances, ViaSat

4   does not even explain why its evidence supposedly renders Acacia liable, and so Acacia

5   responds to every theory ViaSat actually asserts.  (Absent any viable theory in its

6   opening motion, it would of course be improper for ViaSat to attempt to introduce

7   some new theory in its reply brief.)

8   **III.   FACTUAL BACKGROUND**

9       **A.   Acacia Hired ViaSat To Make Two Components of a Complex
       Product, and Acacia Paid ViaSat Well for the Technology.**

10      In 2009, Acacia hired ViaSat to assist with development of a new type of fiber

11  optics communication device called a Coherent Optical Receiver.  That receiver is a

12  highly complex device.  Acacia hired ViaSat to work on two specific parts of it: the

13  DSP Core and the SDFEC Core.  (Ag., Preamble para. 3).  A DSP Core performs

14  digital signal processing (DSP), which includes correcting for distortions in the optical

15  channel that can arise during transmission.  (*See* D.I. 86, Mem. at 2).  An SDFEC Core

16  performs soft decision forward error correction (SDFEC).  (*See id.*).

17      After signing a Non-Disclosure Agreement ("NDA"), the parties spent the next

18  several months negotiating financial terms.  As Acacia explained in earlier papers (D.I.

19  75), the highest price ViaSat ever quoted Acacia for ███████████  █████████████

20  ██████████████████████████████████████.  (D.I. 75, Mem. at 3-4).

21  Ultimately, the parties agreed on a split payment, where the portion associated with the

22  DSP Core ($3.2 million) was covered in up-front milestone payments called "NRE"

23  (non-recurring engineering) payments, while additional payment associated with the

24  SDFEC Core was covered by a per-unit royalty for products using that core.  (*Id.*).

25      After settling on financial terms, the parties proceeded to sign an interim

26  agreement ██████████████████████████████████████████████.

27  A particular focus of the negotiation was ████████████████████████████

28  █████████████████████.  Early drafts defined "Licensed Products" (i.e. royalty-

Defendant Acacia Communications, Inc.'s Opposition to                    Case No. 3:16-CV-00463-BEN-JMA
Plaintiff ViaSat, Inc.'s Motion for Partial Summary Judgment

4

1    bearing products) as █████████████████  ██████  ████████████████████████

2    (D.I. 83, Mem. at 8; D.I. 83, Ex. 29).  But Acacia felt that was overbroad and proposed

3    that it be limited to products that "**incorporate** all or any part of the Licensed

4    Materials," which ViaSat accepted.[1]  This change eliminated mere "use" of Licensed

5    Materials as requiring a royalty.  (D.I. 83, Mem. at 8).

6          Another area of negotiation concerned what the final agreement would permit

7    Acacia to do with the Foreground Information that ViaSat assigned to Acacia for $3.2

8    million, when that Foreground Information would be used in products that also used

9    Background Information.  Early drafts of the Agreement let Acacia ███████████

10   ████████████████████████████████████████████████████████████████████

11   ███████████████████████████.  (*Compare* D.I. 83, Ex. 34 § 3(b), *with* D.I. 83, Ex. 35 §

12   3(b)).  Requiring Acacia to ███████████████████████████████████████████

13   ██████████████████████████████  makes no sense.  So Acacia secured

14   language that gave it a royalty-free license allowing it to use Background Information

15   "in connection with ACACIA's exploitation of the Foreground Information."  (Ag. §

16   3(b)).

17          These changes illustrate that the particular language of the Agreement matters,

18   and that the parties' rights and obligations cannot be generalized with abstract

19   statements about what Acacia cannot "use."

20          The parties signed the final Agreement in November 2009, and got to work.

21   **B.    ViaSat Breached the Agreement Almost Immediately.**

22           But ViaSat did not even wait to be done with its work for Acacia before

23   breaching the Agreement.  ViaSat had agreed not to provide services related to the

24   DSP Core technology it made for Acacia to companies in the 100G optical

25   communications industry ██████████████████████.  (Ag. § 4(c); Ex. 120).  ViaSat

26   publicly announced ████████████████████████████████████████████████  (Ex.

27

28   _____

[1] Emphasis is added and quotations and citations omitted, except as noted.

1   121).  ViaSat stated that it was ███████████████████████████████

2   ██████████████████████████████████████ (*Id.*).  One ViaSat

3   engineer explained █████████████████████████████████████████

4   ███████████████████ (*Id.*) – ████████████████████████ (Ex. 122 at

5   35:12-14, 96:18-98:24).

6           Acacia was worried that ViaSat would breach the Agreement.  (Ex. 123 ("█

7   ████████████")).  When Acacia ████████████████████████████████

8   ██████████████████.  (Ex. 124).  ViaSat assured Acacia that ██████████

9   ████████████████████████████.  *Id.*

10          Yet ViaSat still did not comply with Section 4(c).  Later that year, ViaSat ████

11  ███████████████████████████████████████████.  (*See* D.I. 95, Ex.

12  12 ¶ 34).  ███████████████████████████████████████

13  ████████████████████ ████████ ████████████████████████████.

14  (Ex. 119 ¶¶ 50, 186-87).  As discussed in Section III.E below, ████████████

15  ████████████████████████████ ████████ ████████████████████

16  ████████████████████████.  One could not ask for a clearer

17  violation of Section 4(c), ████████████████████.  (*See, e.g.*, Ex. 125 at

18  VIASAT247423 (████████████████████████████████████████████)).

19          **C.    Acacia Has Long Since Moved On From ViaSat's Old Technology.**

20          Some of ViaSat's SDFEC technology █████████████████████████

21  ████████████████.  (*See* D.I. 98, Exs. 27-30).  █████████████████████

22  ████████████████████████████ (*See* D.I. 98, Ex. 3).  Yet,

23  as Acacia developed more advanced products, ViaSat's technology █████████████.

24  (*E.g.*, D.I. 98, Ex. 31).  In later products (i.e., starting with Sky), Acacia █████

25  ██████████████████████████████████████.

26          When designing the new products, Acacia initially thought that its customers

27  would appreciate ██████████████████████████████.  (*See, e.g.*, D.I.

28  98, Ex. 32; Ex. 115 at 72:19-73:5; D.I. 83, Ex. 19 at 78:8-83:18).  Acacia considered

1   whether ███████████████████████████████████████████████████

2   ███████████████████████████████████. (D.I. 98, Ex. 32).  But Acacia

3   understood that, since it was making a new product, and not using ViaSat's SDFEC

4   Core, Acacia would not owe ViaSat anything.  (*Id.*).

5        Acacia did make backward-compatible products (i.e., Sky, Denali, and Meru, the

6   "Accused Products").  However, compatibility with Everest ultimately proved

7   unimportant, and Acacia decided ████████████████████████████. (D.I.

8   83, Ex. 19 at 79:2-11; Ex. 126 at 118:12-25).  Acacia's Chief Technology Officer

9   explained ███████████████████████████████████████████

10  ███████████████████. (Ex. 115 at 119:6-122:7).  He also explained that the

11  customers "will not value backward compatibility at all."  (*Id.* at 121:12-122:7).

**D.    Acacia Gave ViaSat One More Chance To Make a Useable SDFEC, and ViaSat Failed.**

13  ███████████████████████████████████████████████

14  ████████████████████████████████████████████

15  ██████. (Ex. 127 at 55:18-22).  Acacia gave ViaSat the chance to deliver an adequate

16  proposal, while Acacia separately worked on its own independent design.  (Ex. 128;

17  Ex. 126 at 261:17-263:14).

18       Ultimately, ████████████████████████████████████████

19  ███████████████████████████████████████████████████

20  ██████. (Ex. 129; Ex. 126 at 261:17-263:14).  Since Acacia had the capacity to design

21  its own, superior product, there was no point paying ViaSat a royalty for a new

22  SDFEC Core █████████████████████████████████████████

23  ██████. (*E.g.*, D.I. 98, Ex. 33).  So Acacia proceeded with its own independent design.

**E.    ViaSat ██████████████████████████████████ and Now Hopes to Ride Acacia's Coattails.**

26  ████████████████████████████████████████████

27  ███████████████████████████████████████████████

28  ██████████████████████████████████. (Ex. 117 at VIASAT211203; Ex. 118 at

1    156:20-158:7). ████████████████████████████████

2    █████████████████████████████████████████████████

3    ████████████. (Ex. 117 at VIASAT211203; Ex. 118 at 160:14-19, 162:24-163:13).

4    ██████████████████████████████████████████████████

5    █████████████████████.

6        Prakash Chitre, the head of ViaSat's optical communications business, ████

7    ██████████████████████████ ██ ██. (Ex. 118 at 163:14-165:19).  He

8    █████████████████████████████." (Id.).  When asked why ViaSat's work

9    for Acacia succeeded, ████████████████████████████████████

10   █████████████████████████████████████████████

11   ████████████████████ (Id.).

12   ████████████████████████████████████████████

13   ████████████████████████████████████

14   ███████████████████████████████████████████████

15   ███████████████████████████████████████████

16   █████████████████████████████████████████████████

17   ████████████████████████████████████████

18   ████████████████████████████. (Ex. 119 ¶¶ 50, 77-83, 103-106, 126-128, 147-

19   152, 175-185). ████████████████████████████████████

20   ████████████████████. (See Ex. 130 at 148:22-150:20; 237:25-238:19; 241:24-243:9;

21   247:18-248:11). ████████████████████████████████

22   ████████████████████████████████████████. (D.I. 95,

23   Ex. 12 ("Bersin Rep.") ¶ 69; D.I. 95, Ex. 17 ("Prowse Rebuttal Rep.") ¶¶ 27-54).

24   ███████████████████████████████████████████████

25   █████████████████████████████████████████████████

26   █████████████████████████████████████████████

27   ████████████████████████████████████████████

28   █████████

1

2

3

4

5

6

7

(Ex. 131 at VIASAT101226).

8

9

10

11

12

13

14

15

(Ex. 132 at VIASAT169367).

16

17

18

19

. ViaSat never asked for or received Acacia's permission.

20

ViaSat's misappropriation did not stop at ▉▉▉▉▉▉▉▉. ViaSat also filed

21

several patent applications containing Acacia's trade secrets. (Ex. 119 at ¶¶49, 72-76,

22

102, 123-125, 145-146, 170-174). Acacia, as the true inventor, is seeking assignment of

23

these applications and all resulting patents (D.I. 3, Ex. 1, Count I).

24

In sum,

25

. ViaSat

26

. And ViaSat did so without asking

27

28

. (D.I. 98, Mem. at 1, 3-4, 12, 14, 16-18).

### F.   ViaSat's Awareness That Acacia Has Not Breached the Agreement.

ViaSat's accusations over the years all focused on the incorrect assumption that Acacia could not make backward-compatible products without incorporating ViaSat's SDFEC Core.  ViaSat's July 22, 2015 letter stated that "ViaSat cannot understand how the CFP Module might provide such backwards compatibility without containing some or all of the 'SDFEC Core.'"  (D.I. 98, Ex. 19).  ViaSat's January 21, 2016 complaint alleged that "[i]t would not be possible for Acacia to develop … a CFP Module otherwise backwards compatible with other royalty-bearing modules, without incorporating ViaSat's SDFEC Core."  (D.I. 1, Ex. 1 ¶ 16).

ViaSat may have been surprised to learn in discovery that Acacia had accomplished the [purportedly] impossible – it made a backward-compatible product that did not contain any SDFEC Core code (i.e., Licensed Materials).  ViaSat's source code expert (Dr. Hassoun) spent ███████ in Acacia's counsel's office examining Acacia's code and ██████████████████████████████████████ ████████.  (D.I. 83, Ex. 26 at 52-154).  Indeed, Acacia could not have copied such Licensed Materials because ███████████████████████████████████████ ███████.  (*See* Ex. 133 at 88:15-97:23).  Given the license Acacia has under Section 3(b) to use Background Information to make backward-compatible products (*see* D.I. 83, Mem. at 11-17), ViaSat should have dropped its case then.

Of course, ViaSat should not have been surprised, since Acacia has been explaining that all along.  In response to ViaSat' s July 22, 2015 letter (D.I. 98, Ex. 19), Acacia explained that "Acacia has independently developed its own distinct product.  Acacia has every right under the Agreement to independently develop soft decision forward error correction technology."  (D.I. 98, Ex. 20)  Acacia further explains:

> [Acacia] had independently developed its own distinct product, which incorporated its own independently developed soft decision forward error correction technology, and that such product did not contain or utilize the "SDFEC Core" referenced in the Agreement or any variant or derivative thereof.  As such, Acacia also notified ViaSat that it had no obligation to pay royalties to ViaSat for its CFP Modules. … Acacia did not have access to the details or coding of the SDFEC Core.

1    (D.I. 98, Ex. 21).  These explanations were correct: Acacia "independently developed"

2    the Accused Products, which do not "contain or utilize the 'SDFEC Core' referenced

3    in the Agreement," because it could not access the ███████████████, and

4    Acacia had "every right under the Agreement" to do so.  ViaSat's over-the-top claim

5    that "Acacia lied" (D.I. 98, Mem. at 14) is as incorrect as it is improper.

6          Given Acacia's repeated denials of wrongdoing, and its vigorous defense in this

7    case, ViaSat's suggestion that Acacia "Knows It Is Liable" is also baseless.  (D.I. 98,

8    Mem. at 21).  The document that ViaSat cites is a budget worksheet that Acacia

9    prepared for this litigation, to estimate what it would owe **if** the Accused Products

10   were subject to the Agreement's royalty requirements.  (D.I. 98, Ex. 58).[2]  ViaSat's

11   theory is that Acacia admitted liability because the document says ████████████

12   ██████████████████████████████████████████████████ (D.I. 98, Mem. at

13   21).  ViaSat thus resorts to mischaracterizing documents, ignoring the actual facts.

## IV.   ARGUMENT

### A.    ViaSat's Interpretation Conflicts With the Agreement's Language.

16   ViaSat's summary of the Agreement glosses over key language that explains the

17   parties' rights.  (Mem. at 9-12).  The meaning of a contract is governed primarily by its

18   terms.  *See Reserves Mgmt., LLC v. Am. Acquisition Prop. I, LLC*, 86 A.3d 1119, 2014 WL

19   823407, at *5 (Del. 2014) ("This Court has stated that… contract terms themselves

20   will be controlling when they establish the parties' common meaning").  The

21   Agreement creates three relevant types of information: Foreground Information,

22   Background Information, and Licensed Materials.

### 1.    Foreground Information

24   Foreground Information consists of two parts: (1) the digital signal processing-

25   related technology that ViaSat would make for Acacia under the Agreement; and (2)

26   the "DSP Core," which is the "ASIC IP core for Digital Signal Processing" that ViaSat

---

[2] Acacia testified this document was created **after** ViaSat filed this suit, as the metadata confirms.  (Ex. 126 at 141:6-17; D.I. 1, Ex. 1; Seventh Duncan Smith Dec. ¶ 26)

1   was to develop, and "all Deliverables relating" to the DSP Core.  (Ag., Recitals ¶ 3, §

2   1(j)).  The DSP Core is an "IP core," which is a term of art for source code controlling

3   the function of a semiconductor.  (Ex. 134 at 149:4-5).  The "Deliverables relating" to

4   the DSP Core includes, e.g., specifications.  (Ag. §§ 1(d), 2(a); D.I. 83, Ex. 13 at 1).

5       In exchange for the $3.2 million development fee, ViaSat agreed to several

6   conditions related to Foreground Information.  First, ViaSat expressly assigned to

7   Acacia "all right, title and interest in and to all Foreground Information, including all

8   Intellectual Property Rights therein and thereto."  (Ag. § 3(a)).  Second, ViaSat granted

9   Acacia a license to use any of the Background Information Acacia might need to fully

10   exploit its own Foreground Information.  (*Id.* § 3(b)).  Third, ViaSat agreed not to

11   compete with Acacia regarding Foreground Information in certain ways.  (*Id.* § 4(c)).

12   Notably, the Agreement does **not** provide ViaSat any right to use Foreground

13   Information.  (Ex. 135).

14           **2.      Background Information and Licensed Materials**

15       Background Information also has two parts:  (1) information that ViaSat

16   "owned," "licensed," or "developed" "prior to" or "separate from" the Agreement, as

17   specifically defined in the Agreement; and (2) the SDFEC Core. (*Id.* § 1(b)).  The

18   SDFEC Core is another "IP core."  (*Id.*, Recitals ¶ 3).  Like Foreground Information,

19   Background Information also includes "all … related" documentation.  (*Id.* § 1(b)).

20   Thus, also like Foreground Information, Background Information includes a portion

21   that predates the Agreement (e.g., prior information) and a portion that post-dates the

22   Agreement (e.g., the SDFEC Core and new documentation).

23       The Agreement provides ViaSat certain rights with regard to Background

24   Information.  These rights include limiting Acacia's ability to "decompile, reverse

25   engineer, disassemble, or otherwise reduce" Background Information "to a human-

26   perceivable form."  (*Id.* § 8(b)).  ViaSat also has the right to limit Acacia's ability to

27   "modify or prepare derivative works" of Background Information.  (*Id.*).  The

28   Agreement also states that Acacia will use Background Information "only as

authorized" by the Agreement, but the same clause cautions that the Agreement must not "be construed as conferring by implication, estoppel or otherwise upon either party any license or other right except the licenses and rights expressly granted in this Agreement." (*Id.*). In other words, additional rights that are not specifically enumerated (like a general right to prevent "use") are **not** implied. *Reserves Mgmt., LLC*, 86 A.3d 1119, 2014 WL 823407, at *5.

The Agreement also creates exceptions to ViaSat's rights regarding Acacia's use of Background Information. The first exception is the license in Section 3(b) regarding the use of Background Information with Foreground Information. (*Id.* § 3(b)). Acacia explained in D.I. 83 that this license allows Acacia to use Background Information to make backward-compatible products (i.e., to "fully … exploit" the Foreground Information). (D.I. 83, Mem. at 11-17). This license makes sense, because the DSP Core technology and SDFEC Core technology are highly intertwined. (D.I. 83, Ex. 15 ¶¶ 51-54, 83; D.I. 83, Mem. at 14). Thus merely assigning Acacia the Foreground Information without also providing a way to use related Background Information would all but preclude Acacia from using its Foreground Information. (*See* D.I. 83, Ex. 15 ¶¶ 51, 55). Acacia paid $3.2 million for "all right, title and interest in and to all Foreground Information," so the Agreement should not, and does not, prevent Acacia from making the fullest commercial use of it.

The second exception to ViaSat's rights regarding Acacia's use of Background Information concerns the Licensed Materials. (Ag. § 4). Acacia explained in D.I. 83 that Licensed Materials are two specific categories of Background Information: the SDFEC Core made under the agreement (i.e., ████████████████████████ ) and related documentation. (D.I. 83, Mem. at 6). If Acacia makes a Licensed Product with Licensed Materials in the specific ways described by the Agreement, then Acacia owes ViaSat a per unit royalty. (Ag. § 4(b)). However, the Agreement requires that the Licensed Materials (i.e., ████████████████████████████ ) be "incorporate[d]" into the integrated circuit for the integrated circuit to be a Licensed

1    Material.  (Ag. § 1(l)).  "[I]ncorporat[ing]" does not include merely "use" of the

2    Licensed Materials to make another product.  Early drafts of the Agreement ███

3    ████████████████████████████████ ███ ████████████████

4    ████████████████████ █████ ████████████████

5    █████.  (D.I. 83, Mem. at 7-9).  Hence, as with Background Information, the

6    Agreement does not require a royalty for mere "use" of Licensed Materials.

7          ViaSat asserts that Acacia's interpretation of Section 3(b) would "negate all of

8    the above provisions restricting Acacia's right to use the Everest SDFEC 'solely' for

9    royalty-bearing products."  (D.I. 98, Mem. at 22-23).  That is **not** Acacia's position.

10   Acacia agrees that when Licensed Materials are incorporated into a Licensed Product,

11   then Acacia owes a royalty.  When Acacia incorporated the SDFEC Core that ViaSat

12   provided into its Everest and K2 products, it paid the royalty, and is still paying

13   royalties for each such sale (despite ViaSat employing the proceeds as a war chest to

14   attack Acacia, its customer, in this forum).  (*See* D.I. 98, Ex. 3).  But when using

15   Background Information, including Licensed Materials, in a way that does **not** create a

16   Licensed Product and **does** meet Section 3(b) (e.g., making a backward-compatible

17   product), then Section 3(b)'s license exempts Acacia from Section 8(b), as it is **subject**

18   **to** the other "licenses and rights expressly granted in this Agreement.  (Ag., § 8(b)).

19              **3.      ViaSat Aggrandizes Its Rights Under the Agreement.**

20         ViaSat cites Section 8(a) of the Agreement to claim that it "has exclusive

21   ownership of the SDFEC Core."  (D.I. 98, Mem. at 10).  Section 8(a) provides:

22         ACACIA acknowledges that all Intellectual Property Rights in the
       Background Information and the Licensed Materials are and will remain
23         the sole property of VIASAT, including all modifications, improvements,
       and derivative works relating to the Background Information and the
24         Licensed Materials, including but not limited to all modifications,
       improvements, and derivative works requested or suggested by ACACIA.
25
26   (Ag. § 8(a)).  This clause does **not** have the express assignment language by which

27   ViaSat assigned to Acacia all Foreground Information.  (*Id.* § 3(a)).  Rather, the

28   Agreement merely "acknowledges" that the rights that ViaSat already had "are and will

1    remain" ViaSat's rights.  (Ag. § 8(a)).  While Section 8(a) also refers to suggestions by

2    Acacia, that concerns, at most, suggestions Acacia made prior to the Agreement and

3    any assignment in prior agreements.  Therefore, ViaSat does not exclusively own

4    contributions that Acacia made to the SDFEC Core under the Agreement.

5      ViaSat's rights to limit Acacia's use of Background Information likewise reflect

6    this balanced approach.  Every right that ViaSat has regarding Acacia's use of

7    Background Information concerns only the Background Information that Acacia

8    "receives from VIASAT under this Agreement."  (Ag. § 8(b)).  By this express term,

9    Background Information that Acacia provided ViaSat (e.g., improvements to the

10   SDFEC Core) are not subject to Section 8(b).  Likewise, Section 8(b) does not apply to

11   Background Information that ViaSat provided prior to the Agreement.[3]  This too

12   makes sense, because otherwise the Agreement would retroactively bind all of the

13   parties' prior, high-level discussions.

14     ViaSat claims far greater rights than the Agreement actually provides:

15     To summarize, the parties agreed that Acacia would not use any of the
       Everest SDFEC design, including any documentation thereof, regardless

16     of whether it was initially provided by ViaSat or developed jointly
       between ViaSat and Acacia, except in royalty-bearing products.  *Id.* at §

17     4(a).  Acacia also agreed not to use any information furnished by ViaSat
       prior to execution of the License Agreement ("Background

18     Information"), except for the purpose of developing royalty-bearing
       products.  *Id.* at § 8(b).

19

20   (D.I. 98, Mem. at 12).  **None** of those statements is correct.  Acacia did not agree not

21   to "use" any Background Information under Section 8(b).  Section 8(b) does not create

22   a general "use" restriction, and certainly not one that overrides Section 3(b), nor for

23   Background Information that was not provided by ViaSat under the Agreement.

24   Acacia also did not agree not to "use" any SDFEC Core documentation under Section

25   4(a).  That section is expressly **subject to** Acacia's other rights, which include Section

26   3(b).  As discussed above, ██████████████████████████████████

27

28   [3] There was a June 2009 NDA covering that time period.

1    ████████████████████████ ████████ ████████████████████████████.

2         ViaSat's remaining arguments about a "use" restriction (D.I. 98, Mem. at 22) are

3    wrong or irrelevant for many of the same reasons:

4       • ViaSat cites the last sentence of Section 4(a), but that sentence expressly

5         recognizes that it does not apply where "ACACIA has entered into a separate

6         written Agreement with VIASAT for such use."  Section 3(b) is such an

7         "Agreement."  (*See* Ag., Preamble ¶ 4 (referring to each of the clauses as

8         "Agreements")).

9       • ViaSat cites the definition of the "Permitted Use" (D.I. 98, Mem. at 22).  Apart

10        from defining it, the Agreement never uses that term.

11      • ViaSat cites the Section 4(b) requirement to pay a royalty fee (*id.*), but that is

12        required only for Licensed Products incorporating Licensed Materials.

13      • ViaSat cites Section 8(a) (*id.*), but as discussed above, that does not assign

14        anything new to ViaSat.

15      • ViaSat cites Section 8(b) (*id.*), but that is subject to Section 3(b).

16      • ViaSat cites the definition of Licensed Products (*id.*), but Acacia did not

17        incorporate any Licensed Materials into the Accused Products.  (D.I. 83, Mem.

18        at 6-11).

19   For these reasons, and those discussed below, ViaSat does not have "[t]he only

20   reasonable interpretation of the License Agreement" (D.I. 98, Mem. at 22), but instead

21   an unreasonable one.

22       **B.**    **ViaSat Misunderstands What Is Necessary**

23              **for Backward-Compatible Products.**

     Acacia agrees that interoperability between the Accused Products and the

24   royalty-bearing products requires at least the first six of ViaSat's seven ATSs.  (D.I. 83,

25   Mem. at 17).  ViaSat tries to turn that into an admission of wrongdoing, claiming that

26   "in its own recently filed summary judgment motion, Acacia effectively conceded that

27   partial summary judgment on the misappropriation element of ViaSat's trade secret

28

claims should enter." (D.I. 98, Mem. at 3).  Acacia has conceded nothing of the kind. As Acacia explains in D.I. 83 and again below, Acacia's activities relating to the ViaSat's ATSs are proper, for several reasons.

### C.     ViaSat Lacks Any Actual Evidence that the Accused Products Improperly Use any of ViaSat's Old SDFEC Code.

It is undisputed that Acacia did **not** incorporate into the Accused Products **any** of the ████████████████████ that are part of the Licensed Materials. ViaSat has never asserted otherwise.  (D.I. 83, Mem. at 6-7).  The Agreement requires Acacia to do so for Acacia to owe ViaSat a royalty.  (Ag. §§ 1(l), 4(a)-(b)).  Lacking any evidence that the Accused Products are actually royalty-bearing products – because they are not – ViaSat pressed forward through months of expensive litigation.  All that it has to show for it is a handful of documents (D.I. 98, Mem. at 1-21) that ViaSat characterizes in ways that are wrong, and very much disputed, as discussed below.  To the extent these documents are relevant at all, their meanings and implications are disputed, so summary judgment for ViaSat would be error.

### D.     ViaSat's Purported Evidence Does Not Amount to Breach of the Agreement or Trade Secret Misappropriation.

ViaSat cursorily presents three theories of liability in its motion.  (D.I. 98, Mem. at 23-25).  First, ViaSat alleges that Acacia made Licensed Products with Licensed Materials, necessitating payment of a royalty fee under Section 4(b).  (*Id.* at 23). Second, ViaSat alleges that Acacia improperly used Background Information under Section 8(b).  (*Id.*).  Third, ViaSat alleges that Acacia misappropriated these general ideas on the theory that they are trade secrets.  (*Id.* at 23-25).

ViaSat never attempts to explain how its "facts" prove that breach or misappropriation occurred.  The sum total of ViaSat's analysis is the conclusion that Acacia "used" Licensed Materials, Background Information, and ViaSat ATSs when developing the Accused Products.  (*Id.*).  Unsupported conclusions cannot satisfy ViaSat's burden.  *See John M. Floyd & Assocs., Inc. v. TAPCO Credit Union*, 550 F. App'x 359, 360 (9th Cir. 2013) (holding party's "unexplained belief" insufficient to meet its

1   burden on summary judgment where it lacked a "foundation to link" its theory with

2   supporting evidence); *Tovar v. U.S. Postal Serv.*, 3 F.3d 1271,  279 (9th Cir. 1993)

3   (affirming denial of summary judgment: "[U]nsupported conclusions are not facts

4   sufficient to support either a summary or a post-trial judgment.").

5       Although Acacia could oppose ViaSat's motion on that basis alone, Acacia

6   shows below why ViaSat's unexplained conclusions are wrong.  Acacia refers to its

7   arguments in its motion for summary judgment of no liability (D.I. 83).  Not only does

8   ViaSat fail to establish a factual basis sufficient for judgment in its favor, but judgment

9   on these issues should enter for Acacia.

10       The sections below address each type of "evidence" that ViaSat identifies in its

11   motion and explains why Acacia's purported "use" does not amount to breach of

12   contract or trade secret misappropriation.

### 1.     General Concepts That ViaSat Calls Its ATSs

14       ViaSat's motion refers to several general concepts as its ATSs and asserts that its

15   ATSs "are all part of the Background Information."  (D.I. 98 at 25).  ViaSat initially

16   identified nine ATSs – ████████████████████████████████

17   ████████████████████████████████████████████████

18   ████.  (Ex. 136 at 180:17-182:11).  Later, ViaSat had to admit that its own

19   marketing materials and public papers disclosed at least two of these ATSs, and so

20   withdrew them from the case.  (Ex. 101; *see also* D.I. 112).

21       For at least the following reasons, ViaSat has not proven that Acacia used these

22   general concepts, or that it breached the contract or misappropriates them.

### a.     No Misuse of Background Information

24       ViaSat makes no attempt to prove that these ATSs are Background Information

25   under the Agreement, and in fact, none are.  As discussed above, Background

26   Information is limited to information that ViaSat "owned," "licensed," or "developed"

27   "prior to" or "separate from" the Agreement (Ag. § 1(b)), and the Agreement's limits

28   regarding Background Information concern only that which Acacia "receives from

1   VIASAT under the Agreement" (*id.* §§ 1(b), 8(b)).  **Acacia** independently developed

2   ATSs 1-3 and told ViaSat about them during the parties' project.  (D.I. 83, Mem. at 5-

3   11).  Similarly, at least ATS 1 and 3-7 were publicly known before the Agreement.  (*Id.*

4   at 11-22).  Information that Acacia developed and told ViaSat, or that a third party

5   developed, is not Background Information.

6         ViaSat similarly makes no attempt to show how Acacia's purported use of these

7   general concepts violates the Agreement's limits on how Acacia may use Background

8   Information.  As discussed above, no section of the Agreement provides for a general

9   prohibition on "use" of the Background Information.

10         Even assuming that Acacia's purported use of the ATSs were outside some

11   general limit on "use" of Background Information, Section 3(b)'s grant of a royalty-

12   free license allows Acacia to make whatever such use of Background Information that

13   Acacia may need in order to fully commercially exploit its Foreground Technology.

14   Section 3(b), in other words, provides Acacia with a broad license to make backward-

15   compatible products; and the parties agree that the Accused Products are backward-

16   compatible.  (D.I. 83, Mem. at 11-17)  Hence ViaSat has not proven that Acacia's

17   purported use of its ATSs is a breach of contract.

18                      **b.     No Trade Secret Misappropriation**

19         ViaSat seeks judgment that "ViaSat has established the misappropriation

20   element of its claim for misappropriation of trade secrets," but then states that "the

21   validity of those trade secrets and damages to be determined at trial."  (D.I. 98).  Since

22   "misappropriation" requires a trade secret (CAL. CIV. CODE § 3425.1(a)), the Court

23   cannot enter judgment of misappropriation while ignoring whether ViaSat even has

24   trade secret protection for these concepts at all.  Acacia explained that ViaSat is not

25   entitled to trade secret protection for any of its ATSs.  (D.I. 93).  For that reason

26   alone, the Court should deny this part of ViaSat's motion.

27         Even assuming that ViaSat's motion seeks summary judgment that Acacia

28   improperly used what is recited in those ATSs, regardless of whether they are trade

1   secrets, the motion still fails.  The same Section 3(b) license that allows Acacia to use

2   Background Information to make backward- compatible products also permits Acacia

3   to use the ATSs.  (D.I. 83, Mem. at 11-17).  Section 3(b) applies to the ATSs as well.

4         ViaSat's blanket request for judgment is inappropriate for at least two more

5   reasons.  First, ViaSat has not proven that the Accused Products use ATSs 2 or 7 at all,

6   or that the Accused Products use ATS 1 and 3 in non-backward-compatible modes.

7   (D.I. 83, Mem. at 17-23).  Second, ViaSat's trade secret rights ended when Acacia's

8   non-disclosure obligations did (i.e., █████████).  (D.I. 75 at 14-20).

9   **c.**     **No Misuse of Licensed Materials**

10        The general concepts that ViaSat identified as its ATSs cannot be "Licensed

11  Materials."  (D.I. 83 at 9-11).  Summary judgment that Acacia's purported use of the

12  general concepts in ViaSat's ATSs is inappropriate.

13  **2.**     **Specifications That ViaSat Provided Under the Agreement**

14        Throughout its motion, ViaSat leans heavily on the allegation that Acacia did

15  something improper with the written specifications made under the Agreement.  (*E.g.*,

16  D.I. 98, Mem. at 4-5, 17-19).  But ViaSat has not proven that Acacia misused them.

17  **a.**     **No Misuse of Background Information**

18        ViaSat makes no attempt to show what, if anything, in the specifications is

19  Background Information that Acacia "receive[d] from VIASAT under this

20  Agreement," as is required for all of the Agreement's limits on the use of Background

21  Information.  (*E.g.*, Ag. § 8(a)).  The snippets that ViaSat highlights in its opposition

22  (D.I. 98 at 4) and in Exhibit 1 to its opposition involve concepts that **Acacia** created

23  and told ViaSat, ████████████████████████████████████████████

24  ████████████████.  (D.I. 98, Ex. 1; D.I. 93, Mem. at 6-9).  In recognition of

25  Acacia's contributions to these specifications, their front pages all say they have

26  "confidential and propriety information" and that **Acacia's** permission is required to

27  disseminate them.  (D.I. 98, Ex. 7 at 1; D.I. 98, Ex. 8 at 1).

28

ViaSat does not identify which provision(s) regarding Background Information Acacia could have violated.  ViaSat harps on "copying" (*e.g.*, Memo. at 4), but as discussed in Section IV.A.2 above, the Agreement provides ViaSat with certain rights and not others, but does not have any general prohibition on "copying" of Background Information into another document.  ViaSat does not show misuse of Background Information.

Further, as also discussed above in Section IV.D.1.a. regarding general concepts, even if Acacia's purported use of the specifications were outside the limits on use of Background Information, ViaSat is licensed to use the specifications to make backward-compatible products.  (D.I. 83-1 at 11-17).  Therefore, ViaSat has not proven that Acacia's purported "copying" from the specifications is a contract breach.

### b.     No Trade Secret Misappropriation

For all the reasons discussed in Section IV.D.1.b above regarding the general information that ViaSat calls its ATSs, ViaSat similarly fails to show how purported "copying" of the specifications amounts to misappropriation.

### c.     No Misuse of Licensed Materials

Unable to show that Acacia's Accused Products improperly incorporate any of its technology, ViaSat falls back on the argument that some of its written documentation about its products (the "specifications") are Licensed Materials (D.I. 98, Mem. at 12), and that Acacia copied portions of those documents when generating its own specifications for its own products.  But this is not a copyright case, and ViaSat never explains how Acacia's purported "copying" of a specification could amount to making Licensed Products requiring a royalty.  Rather, ViaSat only asserts that Acacia made the Accused Products "using" Licensed Materials – conflating actual products with the written documentation describing them.  (*Id.* at 23).  Even if ViaSat had shown that Acacia "used" ViaSat's specifications "to make" the Accused Products – which it did not – the mere "use" of Licensed Materials to make another product does not turn that product into a royalty-bearing "Licensed Product."  (D.I. 83, Mem. at 7-

1    9).  As discussed, that obligation was proposed but dropped from the final contract.

2    (*Id.*).  ViaSat's theory impermissibly "read[s] into an agreement a contract term that

3    was expressly considered and rejected by the parties in the course of negotiations."

4    *GRT, Inc. v. Marathon GTF Tech., Ltd.*, No. 5571, 2012 WL 2356489, at *7 (Del. Ch.

5    June 21, 2012) (granting summary judgment on that ground).

6                    **3.**         ███████████    **Encoder Source Code**

7        In various places, ViaSat refers to "use" of the encoder source code.  (*E.g.*, D.I.

8    98, Mem. at 5, 16-17).  Such "use" does not amount to breach or misappropriation.

9                        **a.**    **No Misuse of Background Information**

10       ViaSat fails to show how Acacia's purported use of ███████  encoder source

11   code amounts to misuse of Background Information for the same reasons that

12   ViaSat's argument fails with regard to general concepts (*see* Section IV.D.1.a above)

13   and the specification (*see* Section IV.D.2.a above).  ViaSat does not attempt to explain

14   how Acacia's claimed use of the ███████  encoder source code violates the

15   Agreement's limits on what Acacia can do with Background Information.  Acacia is

16   licensed to use the ███████  encoder source code, to the extent it is Background

17   Information, to make backward-compatible products.  (D.I. 83, Mem. at 11-17).

18                        **b.**    **No Trade Secret Misappropriation**

19       For all the reasons discussed in Section IV.D.1.b above regarding ViaSat's

20   ATSs, ViaSat similarly fails to show how purported "use" of the ███████  encoder

21   source code amounts to misappropriation.

22                        **c.**    **No Misuse of Licensed Materials**

23       As the Agreement is clear that "source code … shall **not** be a Licensed

24   Material" (Ag. § 1(k)), any purported use of the ███████  encoder source code in a

25   product cannot make that product royalty-bearing.  ViaSat agrees, since it relies on that

26   language.  (D.I. 103 at 17).  Thus, whatever Acacia did with the ███████  encoder

27   source code, it was unrestricted because that code was not Licensed Materials.

28

### 4.      ViaSat's June 2009 "White Paper"

ViaSat dwells on a "White Paper" it sent Acacia.  (*E.g.*, D.I. 98, Mem. at 5, 7-9, 12, 14-16, 22).  For at least the following reasons, ViaSat has not proven that Acacia used that paper in a way that amounts to breach of contract or misappropriation.

#### a.      No Misuse of Background Information

Yet again, ViaSat does not explain what, if anything, Acacia did with this "White Paper" that was improper.  ViaSat acknowledges that it sent the "White Paper" to Acacia on June 12, 2009 – months before the parties signed the Agreement.  (*Id.* at 7-8, 12).  Consequently, the "White Paper" is not subject to the any of the limits associated with Background Information, which all concern information Acacia "receives from VIASAT **under this Agreement**."  (*E.g.*, Ag. § 8(b)).

#### b.      No Trade Secret Misappropriation

ViaSat does not claim, and has never claimed, that the "White Paper" disclosed any of its ATSs.  ViaSat has only ever claimed that the "White Paper" contains a part of one of its ATSs (███████████████████████████).  (D.I. 75, Ex. 10 at No. 23).  Under California law, it is far too late to re-define its trade secrets now to encompass a different configuration not included in its Trade Secret Disclosure.  CAL. CIV. CODE § 2019.210; *see also Computer Econs., Inc. v. Garnter Group, Inc.*, 50 F. Supp. 2d 980, 984 (S.D. Cal. 1999) (purpose of the statutory disclosure requirement is to streamline discovery, and to provide "reasonable notice of the issues which must be met at the time of trial"); *Pixion, Inc. v. PlaceWare Inc.*, 421 F. Supp. 2d 1233, 1242 (N.D. Cal. 2005) (holding that at trial and summary judgment, trade secrets should be evaluated "as pled").  Further, for all the reasons discussed in Section IV.D.1.b above regarding the general information that ViaSat calls its ATSs, ViaSat similarly fails to show how purported "use" of this document could amount to misappropriation.

#### c.      No Misuse of Licensed Materials

The "White Paper" cannot be "Licensed Materials."  The only documentation included in the definition of Licensed Materials is that which "VIASAT may provide

1  **under this Agreement**."  (Ag. § 1(k).  The "White Paper" was not provided "under

2  this Agreement," but before it.  (D.I. 98, Mem. at 7-8, 12).

### 5.      All the Rest of ViaSat's "Evidence" Is Just Distraction.

4         Most of ViaSat's memorandum provides a slanted characterization of evidence

5  that ViaSat hopes will cast Acacia in a negative light.  Acacia contests ViaSat's

6  characterizations of those facts.  But for present purposes, what matters is that none

7  of that evidence shows that Acacia breached the Agreement or misappropriated any of

8  the ATSs, as discussed above.  ViaSat's extensive discussion of its purported evidence,

9  almost to the exclusion of any application of the law and the Agreement to that

10  evidence, illustrates how ViaSat's emphasis is more on optics than on applying the

11  facts, the Agreement, and the law.  ViaSat also discusses certain other evidence

12  irrelevant to the parties' motions, and which should thus be disregarded.  Acacia

13  discusses a few of them below, only in the interest of completeness.

14         ViaSat faults one of Acacia's founders for ████████████████████

15  ██████████████████  (D.I. 98, Mem. at 5, 15).  ViaSat claims the engineer ████

16  ███████████████████████████████  (*Id.* at 15).  The fact

17  that this individual (who was testifying as a personal fact witness, not a Rule 30(b)(6)

18  corporate designee) could not ████████████████████████████████

19  ██████████████████████  is of no legal import, and ViaSat does not show

20  otherwise.  The witness answered as best he could; unsurprisingly he did not recall

21  ████████████████████.  (*E.g.*, D.I. 98, Ex. 16 at 113:13-23, 116:12-19).  Again,

22  ViaSat does not even attempt to explain how anything this individual did constitutes

23  breach or misappropriation.

24         ViaSat claims that Acacia did not store Background Information in a restricted

25  directory.  (D.I. 98, Mem. at 13).  ViaSat claims that Acacia's written explanation that it

26  did restrict access (D.I. 98, Ex. 50) is wrong, and ViaSat cites various excerpts of

27  Acacia deposition testimony.  But all of the testimony that ViaSat cites indicates that

28  certain deponents of whom ViaSat asked the question ██████████████████████

1   ███████████████████████. ViaSat ignores the unequivocal, sworn testimony

2   of ████████ ██ ████████████████████████████████████ ██

3   ███████. (*See, e.g.,* Ex. 126 at 44:15-23; Ex. 115 at 38:15-39:3).  ViaSat shows no

4   breach or right to any remedy, especially given Acacia's interrogatory response

5   regarding the extensive efforts taken by Acacia to maintain the confidentiality of

6   ViaSat's alleged trade secrets.  (Ex. 102 at No. 11).

7        Finally, ViaSat faults Acacia because some of its engineers were not aware of

8   specific contractual provisions.  (D.I. 98, Mem. at 16).  However, the only evidence

9   ViaSat cites shows that those engineers were █████████████████████████

10   ████████████████████████.  (D.I. 83, Mem. at 11-17).  Their work did not

11   exceed Acacia's authorization under the Agreement, and there is nothing untoward

12   about a company's engineering staff being relatively unfamiliar with its legal

13   documents.

14   **V.    CONCLUSION**

15        For the above reasons, Acacia respectfully requests that the Court deny ViaSat's

16   motion for partial summary judgment (D.I. 98).

17

18   Date:   February 16, 2018                    Respectfully Submitted,

19                                               WOLF, GREENFIELD & SACKS, P.C.

20

21                                               By: *s/Michael A. Albert*
                                                 _____
22                                               Michael A. Albert
                                                 Hunter D. Keeton
23                                               Stuart V. C. Duncan Smith

24                                               Attorneys for Defendant and Counter
                                                 Claimant Acacia Communications, Inc.
25

26

27

28

1

## **CERTIFICATE OF SERVICE**

2

3          I certify that today I caused to be served the redacted version of the foregoing
document by CM/ECF notice of electronic filing upon the parties and counsel
4   registered as CM/ECF Users.  I further certify that am causing the redacted and
unredacted versions of the foregoing document to be served by electronic means via
5   email upon counsel for ViaSat, Inc., per the agreement of counsel.

6

7   Date:  February 16, 2018                    *s/Michael A. Albert*
                                                              Michael A. Albert
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28