FITZGERALD KNAIER LLP
    Kenneth M. Fitzgerald (State Bar No. 142505)
    kfitzgerald@fitzgeraldknaier.com
    David Beckwith (State Bar No. 125130)
    dbeckwith@fitzgeraldknaier.com
    Keith M. Cochran (State Bar No. 254346)
    kcochran@fitzgeraldknaier.com
    402 West Broadway, Suite 1400
    San Diego, California, 92101
+1 (619) 241-4810
+1 (619) 955-5318 facsimile

WARREN LEX LLP
    Matthew S. Warren (State Bar No. 230565)
    Patrick M. Shields  (State Bar No. 204739)
    Erika H. Warren (State Bar No. 295570)
    16-463@cases.warrenlex.com
    2261 Market Street, No. 606
    San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile

Attorneys for Plaintiff and Counter-Defendant ViaSat, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIASAT, INC. a Delaware corporation, <br>    Plaintiff and Counter-Defendant, <br><br> v. <br><br> ACACIA COMMUNICATIONS, INC. a Delaware corporation, <br>    Defendant and Counter-Claimant. | Case No. 3:16-463-BEN-JMA <br><br> **ViaSat's Opposition to Acacia's Motion to Strike and Exclude Certain Opinions of ViaSat's Experts** [Redacted] <br><br> Date:   March 12, 2018 <br> Time:   10:30 a.m. PST <br> Place:  Courtroom 5A <br><br> Hon. Dist. Judge Roger T. Benitez <br> Hon. Magistrate Judge Jan M. Adler <br><br> Case Initiated:  January 21, 2016 |

1

**TABLE OF CONTENTS**

2     INTRODUCTION……………………………………………………………………1

3     BACKGROUND……………………………………………………………………...1

4          A.     Dr. Narayanan and His Report……………………………………….. 1

5          B.     Dr. Djordjevic and His Report…………………………………………...3

6     ARGUMENT…………………………………………………………………….....4

7     I.     The Court is a Gatekeeper, Not a Fact-Finder, and Should Allow Expert
8            Testimony in Its Discretion in Light of The Circumstances of The Case…………... 4

9     II.    The Court Should Not Exclude Dr. Djordjevic's Opinion That Acacia's Trade
10           Secrets Are Rudimentary Concepts in Optical Communication Systems, Which
             Acacia's Own Expert Declined Even to Address…………………………………5

11

12         A.     Dr. Djordjevic Properly Considered the Importance of the Trade Secret
                  Elements Specifying ███████████ and Properly Concluded That
13                Their Importance Was Low…………………………………………….... 6

14         B.     Dr. Djordjevic Carefully Discussed Each of Acacia's Asserted Trade Secrets
15                in His Report, Considered Each Aspect of Acacia's Disclosure Including
                  the ████████ Elements, and Rendered Appropriate and Detailed
16                Expert Opinions……………………………………………………………9

17                1.     Acacia's Asserted Trade Secret No. 1…………………………………9
18
19                2.     Acacia's Asserted Trade Secret No. 2…………………………………9

20                3.     Acacia's Asserted Trade Secret No. 3…………………………………10

21                4.     Acacia's Asserted Trade Secret No. 4…………………………………..11

22                5.     Acacia's Asserted Trade Secret No. 5…………………………………..11

23         C.     Acacia's Own Expert Failed to Rebut Dr. Djordjevic's Opinion That
24                Acacia's Trade Secrets Are Rudimentary Concepts in Optical
                  Communication Systems……………………………………………………..12

25

26

27

28

III.  Drs. Narayanan and Djordjevic Properly Opined Regarding the Technical
      Value and Importance of Technology Squarely Within Their Areas of Technical
      Expertise, and Dr. Prowse Properly Relied on Their Technical Opinions in His
      Apportionment Analysis……………………………………………………………13

      A.    The Court Should Not Strike Technical Opinions From Drs. Narayanan
            and Djordjevic Simply Because Dr. Prowse Used Them For Damages…….. 13

      B.    Acacia Ignores the Detailed Analysis Offered by Drs. Narayanan and
            Djordjevic, Which Supports Their Opinions Regarding the Technical
            Value and Importance of Technology……………………………………...15

      C.    Acacia Misapplies Specific Daubert Factors to ViaSat's Experts;
            If Acacia's Standard is Correct, However, the Court Must Also
            Strike Most if Not All of Acacia's Own Expert Reports………………………16

      D.    Dr. Narayanan Properly Considered Chip Area As Part of His Opinion……. 19

      E.    It Does Not Matter What Dr. Narayanan Did Not Do…………………………. 21

IV.   The Court Should Not Strike Any Portion of Dr. Prowse's Opinion………………. 21

      A.    Dr. Prowse Properly Relied on Drs. Narayanan and Djordjevic……………. 21

      B.    Dr. Prowse Did Not *Only* Rely on Drs. Narayanan and Djordjevic…………22

            1.    Dr. Prowse's Opinion Regarding Apportionment of
                  Acacia's Profit…………………………………………………...22

            2.    Dr. Prowse's Opinion Regarding Apportionment of
                  ViaSat's Profit…………………………………………………... 23

      C.    Dr. Prowse Properly Understood That Dr. Djordjevic, a Technical
            Expert, Gave a Technical Opinion………………………………………... 24

CONCLUSION……………………………………………………………………………..24

# TABLE OF AUTHORITIES

**Cases**

*ABBA Rubber Co. v. Seaquist*,
    235 Cal. App. 3d 1 (1991)..............................................................................7

*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*,
    738 F.3d 960, 969 (9th Cir. 2013)...........................................................5, 18

*Apple Inc. v. Motorola Inc.*,
    757 F.3d 1286 (Fed. Cir 2014)....................................................14, 15, 22

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993)......................................................................................4

*Dura Automotive Sys. of Ind., Inc. v. CTS Corp.*,
    285 F.3d 609 (7th Cir. 2002)......................................................................22

*DVD Copy Control Ass'n, Inc. v. Bunner*,
    116 Cal. App. 4th 241 (2004)......................................................6, 7, 9, 13

*Czuchaj v. Conair Corp.*,
    No. 313-1901, 2016 WL 4414673 (S.D. Cal. Aug. 19, 2016)....................4, 5, 17, 20

*InfoSpan, Inc. v. Emirates NBD Bank PJSC*,
    No. Case No. 11-1062, 2016 WL 8849699 (C.D. Cal. June 8, 2016)......................14

*Jinro Am. Inc. v. Secure Investments, Inc.*,
    266 F.3d 993 (9th Cir. 2001)......................................................................14

*Kewanee Oil Co. v. Bicron Corp.*,
    416 U.S. 470 (1974).................................................................................7, 13

*Kumho Tire Co., Ltd. v. Carmichael*,
    526 U.S. 137 (1999)................................................................................5, 17

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009)................................................................15

*Pixion, Inc. v. PlaceWare, Inc.*,
    421 F. Supp. 2d 1233 (N.D. Cal. 2005), *aff'd*, 177 F. App'x 85
    (Fed. Cir. 2006).............................................................................................6, 7

*Primiano v. Cook*,
    598 F.3d 558 (9th Cir. 2010)......................................................................5

*Polimaster Ltd. v. RAE Sys.*,
    No. 05-01887, 2005 WL 2171911 (N.D. Cal. Sept. 6, 2005)......................7

*POM Wonderful LLC v. Coca Cola Co.*,
    No. 08-6237, 2016 WL 5929259 (C.D. Cal. Feb. 24, 2016)....................14

*Primrose Operating Co. v. National American Ins. Co.*,
    382 F.3d 546 (5th Cir. 2004)....................................................................22

*United Nat. Maint., Inc. v. San Diego Convention Ctr. Corp.*,
    No. 07-2172, 2010 WL 3034025 (S.D. Cal. Aug. 3, 2010)......................21

# INTRODUCTION

Acacia argues its Motion to Strike by ignoring this Court's precedent as well as the applicable facts.  Acacia asks the Court to strike Dr. Djordjevic's opinions regarding Acacia's trade secrets on the grounds that Dr. Djordjevic failed to consider the presence of ███████████████ even though Dr. Djordjevic explicitly considered the elements specifying ██████████████ in detail—and discounted them as not very important. Acacia evidently does not like this opinion, but that is no reason for the Court to strike it.

Acacia goes to great lengths to challenge opinions by both Drs. Narayanan and Djordjevic regarding the relative value and importance of various relevant technologies, first asserting that these are financial opinions requiring an economic analysis and degree, then admitting they are technical opinions but asserting they are unreliable, and then, in a last-ditch attempt supported by zero case law or common sense, arguing that the real problem is what ViaSat's experts did *not* say, as opposed to what they did.

Finally, Acacia argues that ViaSat's damages expert, Dr. Prowse, cannot rely on the same opinions by both Drs. Narayanan and Djordjevic on the relative value and importance of various technologies for the same reasons it already leveled against the technical experts.  Acacia's arguments regarding Dr. Prowse are no different than those regarding Drs. Narayanan and Djordjevic, and fail for the same reasons.

None of these arguments can survive the law governing this Court; at most, all of ViaSat's arguments are fodder for cross-examination.  The Court should deny Acacia's motion to strike in its entirety.

# BACKGROUND

## A.  Dr. Narayanan and His Report

Dr. Narayanan has more than twenty years of experience in coding, the subject of his expert report.  From 1994 to 1998, he was a Ph.D. student, where he wrote his thesis on turbo decoding, which is one of the main technology topics of this case.  Dkt. No. 86-7 at 5.  Since he got his Ph.D., Dr. Narayanan has been with the Department of Electrical and Computer Engineering at Texas A&M University, where he holds the Eric D. Rubin '06

Professorship in Electrical and Computer Engineering.  *Id.*  His research "focuses on coding theory, information theory, joint source-channel coding and signal processing with applications to wireless networks, optical communications and data storage."  *Id.*  He has authored over 150 technical papers, mostly in the areas of coding techniques, modulation and communication theory, and was elected as Fellow of the Institute for Electrical and Electronics Engineers (IEEE) for his contributions to coding for wireless communications and data storage.  *Id.* at 6.  He is currently the principal investigator for a research project sponsored by the National Science Foundation on soft decision decoding for fiber-optic communications, and was the recipient of the National Science Foundation career award in 2001.  *Id.*  In short, Dr. Narayanan is an expert of unassailable qualifications, and Acacia largely does not assail him.

Dr. Narayanan provided a lengthy and detailed report in this matter.  Dkt. No. 86-7. He first provided a comprehensive discussion of coding techniques and background, *id.* at 7-12, followed by even more detailed discussion of block codes, product codes, and soft decision error correction, all particularly relevant to this action.  *Id.* at 12-40.  Dr. Narayanan then provided a detailed examination of the products at issue in the case and related issues, *id.* at 40-76, followed by a discussion of the issues surrounding ViaSat's trade secrets in this matter.  *Id.* at 77-183.

Acacia challenges almost none of this report, focusing its fire on one conclusion, regarding the importance of the SDFEC technology relative to other portions of the chip. In this area of his report, entitled ███████████████████████████ Dr. Narayanan opined:





*Id.* at 74-75.  Acacia challenges only this portion of Dr. Narayanan's report.

**B.   Dr. Djordjevic and His Report**

Dr. Djordjevic, too, has more than twenty years of relevant experience.  He received his Ph.D. in 1999, writing his dissertation on coherent optical detection, which is another one of the main technology areas of this case.  Dkt. No. 86-5.  He is a tenured professor at the University of Arizona in the Department of Electrical and Computer Engineering in the College of Engineering, with a joint appointment in the College of Optical Sciences.  *Id*.  He directs the Optical Communications Systems Laboratory (OCSL) and Quantum Communication Lab (QCL) within the Department of Electrical and Computer Engineering.  *Id*.  His research "focuses on optical communications and networks, error control coding (channel coding), coded modulation, turbo equalization, OFDM applications, quantum information processing, quantum error correction, and quantum-key distribution (QKD)."  *Id*.  Like Dr. Narayanan, Dr. Djordjevic is an expert

of unassailable qualifications; as with Dr. Narayanan, Acacia largely declines to assail him.

Like Dr. Narayanan, Dr. Djordjevic provided a detailed report discussing how digital signal processing works and its role in digital communications. Dkt. No. 86-5 at 5-10. Dr. Djordjevic analyzed each of Acacia's asserted trade secrets and concluded that each represents a rudimentary concept ██████████████████████████ *Id.* at 10-63. Dr. Djordjevic then addressed Acacia's allegations that ViaSat used those alleged trade secrets in its products. *Id.* at 63-65.

Acacia does not address the vast majority of Dr. Djordjevic's report, but challenges only two specific aspects of it. First, Acacia argues that Dr. Djordjevic cannot opine that Acacia's asserted trade secrets are generally known and readily ascertainable because (in Acacia's view) Dr. Djordjevic misunderstood the trade secrets. Second, Acacia challenges Dr. Djordjevic's conclusion that, ██████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████ *Id.* at 63-64.

## ARGUMENT

### I.   The Court is a Gatekeeper, Not a Fact-Finder, and Should Allow Expert Testimony in Its Discretion in Light of The Circumstances of The Case

As Acacia notes, the Court's should begin with Fed. R. Evid. 702 and the factors set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). In *Daubert*, "the Supreme Court listed several factors that may be pertinent in assessing reliability: (1) whether the scientific theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review or publication; (3) whether there is a known or potential error rate; and (4) whether the theory or technique is generally accepted in the relevant scientific community." *Czuchaj v. Conair Corp.*, No. 313-1901, 2016 WL 4414673, at *2 (S.D. Cal. Aug. 19, 2016) (Benitez, J.).

Acacia does not acknowledge, however, the Court's analysis does not end there.  To the contrary, the "inquiry under Rule 702 is a 'flexible' one, and the district court has 'discretionary authority . . . to determine reliability in light of the particular facts and circumstances of the particular case.'  Accordingly, 'the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony.'"  *Czuchaj*, 2016 WL 4414673, at *2 (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150, 158 (1999)) (citations omitted).  Most pertinent here, "the *Daubert* factors may not always apply to engineering testimony."  *Czuchaj*, 2016 WL 4414673, at *2 (citing *Kumho*, 526 U.S. at 150).

"In evaluating proffered expert testimony, the trial court is 'a gatekeeper, not a fact finder.'"  *Czuchaj*, 2016 WL 4414673, at *1 (quoting *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010)).  "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion."  *Czuchaj*, 2016 WL 4414673, at *2 (quoting *Primiano*, 598 F.3d at 564).

Under this standard, this Court should "screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable."  *Czuchaj*, 2016 WL 4414673, at *2 (quoting *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013)).  "Simply put, '[t]he district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury.'"  *Czuchaj*, 2016 WL 4414673, at *2 (quoting *Alaska Rent-A-Car*, 738 F.3d at 969-70).  "When an expert meets the threshold established by Rule 702 as explained by the Supreme Court in *Daubert* and its progeny, the expert may testify and the jury decides how much weight to give that testimony."  *Czuchaj*, 2016 WL 4414673, at *2 (quoting *Primiano*, 598 F.3d at 565).

## II. The Court Should Not Exclude Dr. Djordjevic's Opinion That Acacia's Trade Secrets Are Rudimentary Concepts in Optical Communication Systems, Which Acacia's Own Expert Declined Even to Address

The Court should dismiss Acacia's attempt to strike Dr. Djordjevic's opinion that Acacia's asserted trade secrets were both generally known and readily ascertainable. Acacia's argument rests upon a single assertion, that Dr. Djordjevic "formulated his opinions with the (mis)understanding that ███████████████████ Dkt. No. 86-1 at 16:11-12 (emphasis in original). But Dr. Djordjevic *did* examine each of Acacia's asserted trade secrets in the context of optical communications and optical receivers—he could hardly do otherwise, given his decades of experience in and focus on optical communications—and concluded, in Section 3 of his expert report, that ████████ ████████████████████████████████████ Dkt. No. 86-5 at 100.  Unsurprisingly, given his opinion that Acacia's asserted trade secrets are mere "rudimentary concepts," Dr. Djordjevic also opined that the ████████████ ██████ did not somehow make secret the otherwise extremely well-known concepts claimed by Acacia, in the same way that use of an internal-combustion engine in a red car would not be secret to someone who knew how to use an internal-combustion engine in a blue car.  Acacia may challenge this expert opinion before the jury, but it remains Dr. Djordjevic's expert opinion, and Acacia may not block him from providing it.

### A. Dr. Djordjevic Properly Considered the Importance of the Trade Secret Elements Specifying ████████████████ and Properly Concluded That Their Importance Was Low

As Acacia acknowledges, in judging a trade secret's secrecy, the "central question is whether [the asserting entity's] trade secrets, as defined in their § 2019(d) statement, were secret, meaning: (1) they were valuable because they were unknown to others, and (2) [the asserting entity] attempted to keep them secret." *Pixion, Inc. v. PlaceWare, Inc.*, 421 F. Supp. 2d 1233, 1242 (N.D. Cal. 2005), *aff'd*, 177 F. App'x 85 (Fed. Cir. 2006) (citing *DVD Copy Control Ass'n, Inc. v. Bunner*, 116 Cal. App. 4th 241, 251 (2004)); *see*

*also* Dkt. No. 86-1 at 15-16 (citing *Pixion*).  Under California law, "the test for a trade secret is whether the matter sought to be protected is information (1) that is valuable because it is unknown to others and (2) that the owner has attempted to keep secret." *DVD Copy Control Ass'n*, 116 Cal. App. 4th at 251 (citing *ABBA Rubber Co. v. Seaquist*, 235 Cal. App. 3d 1, 18 (1991)).  "The first element is the crucial one here: in order to qualify as a trade secret, the information 'must be secret, and must not be of public knowledge or of a general knowledge in the trade or business.'"  *DVD Copy Control Ass'n*, 116 Cal. App. 4th at 251 (quoting *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 475 (1974)).

In making this determination, it is appropriate—indeed, required—to consider whether individual elements of a trade secret are known to the public.  *See, e.g.*, *Polimaster Ltd. v. RAE Sys.*, No. 05-01887, 2005 WL 2171911, at *4 (N.D. Cal. Sept. 6, 2005) ("Plaintiffs contend that RAE was provided with technology and manufacturing secrets pursuant to the terms of the License Agreement.  However, many of the product specifications disclosed to RAE, such as the type of crystal detector, the alarm algorithm, the time of calibration and the general components of the detector block, are contained in the Operating Manual for Gamma Pager PM1703M.  Plaintiffs do not dispute that the manual is made available to the public on the Polimaster website without restriction.")  It would similarly be appropriate for an expert in automotive engineering to explain that, when considering a trade secret reciting "blue car" including a particular type of engine, he could discount the element calling for a "blue car" because everyone in the trade knows that cars can be any color and many of them are blue.

That is all that Dr. Djordjevic did.  Acacia is not happy about it, but they cannot exclude this testimony as improper.  For example, regarding Acacia's alleged trade secret no. 1, Dr. Djordjevic opined in his report:

1

2

3

4

5  Dkt. No. 86-5 at 14 (emphasis added).

6      In its Motion, Acacia alleges that Dr. Djordjevic "confirmed that he believes that

7  Acacia's Trade Secret No. 1 does not require ▮▮▮▮▮▮▮ supporting this

8  argument by quoting part of a question and answer from Dr. Djordjevic's deposition.

9  Dkt. No. 86-1 at 16 (quoting Ex. 1 at 108:2-7).  But the complete question and answer,

10  together with the following colloquy, confirm that Dr. Djordjevic was well aware that the

11  asserted trade secret required ▮▮▮▮▮, he just did not think very much of this

12  requirement:

13

14

15

16

17

18

19

20  Ex. 1 at 145:2-12.  In Dr. Djordjevic's opinion, specifying ▮▮▮▮▮ is like

21  specifying "a blue car"; it is simply too general to be helpful.  He provided similar

22  opinions regarding Acacia's other asserted trade secrets.  *See, e.g.*, Ex. 1 at 247:10 to

23  248:2 (Trade Secret No. 2); 301:1 to 302:20 (Trade Secret No. 3); 322:13 to 325:25

24  (Trade Secret No. 4); and 326:1 to 327:17 (Trade Secret No. 5).  In each case,

25  Dr. Djordjevic acknowledged the trade secret's recitation of ▮▮▮▮▮ but

26  concluded that it added very little to the trade secret itself.  The jury may agree with

27  Dr. Djordjevic's opinion or they may not, but Acacia has shown no reason to withhold

28  it—and, indeed, disallowing Dr. Djordjevic to speak on this issue would prevent ViaSat

from presenting evidence showing that Acacia's asserted trade secrets are "of a general knowledge in the trade or business." *DVD Copy Control Ass'n*, 116 Cal. App. 4th at 251.

**B.    Dr. Djordjevic Carefully Discussed Each of Acacia's Asserted Trade Secrets in His Report, Considered Each Aspect of Acacia's Disclosure Including the ████████████ Elements, and Rendered Appropriate and Detailed Expert Opinions**

Disallowing Dr. Djordjevic's opinions would be doubly unjust given his careful discussion of each trade secret in his report, which again acknowledged each trade secret's recitation of ████████████ while concluding that it added very little.

**1.    Acacia's Asserted Trade Secret No. 1**

Dr. Djordjevic opined that ████████████████████████ ████████████████████████████████████████████ and specifically that █████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████ Dkt. No. 86-5 at 14; *see supra* section II.A.

**2.    Acacia's Asserted Trade Secret No. 2**

Dr. Djordjevic opined that ████████████████████████ ████████████ This is a very introductory concept in the field of optical communications, and the fact that Dr. Prucnal is not aware of that is incredibly surprising. ████████████████████████ is a commonly understood standard in the field of ████████████, and it is such a common attribute that ████████████████████ Dkt. No. 86-5 at 27. Dr. Djordjevic also compared Trade Secret No. 2 to U.S. Patent No. 6,519,773, which "discloses a system for a digital CATV network, using optical fiber," and to "Ginsburg 2007," which "discloses an analog-digital converter that is applicable to any field, including ████████████ *Id*. at 30, 31.

### 3.   Acacia's Asserted Trade Secret No. 3

Dr. Djordjevic opined that although "the trade secret itself is written generically, we know the context in which Acacia claims it was used in this case,  Dkt. No. 86-5 at 38.  He then explained why Acacia's explanation of its trade secret and its supporting expert opinion was not helpful to an engineer:

 **Without specifying the application of interest and providing the details, Trade Secret 3 just describes material known to students at the undergraduate level.**

Dkt. No. 86-5 at 38, 40 (emphasis added).  Dr. Djordjevic also compared this asserted trade secret to "Savory II," a public reference which "discloses the operation principle of a balanced coherent optical detector," that is, ███████████.  *Id*. at 43.

### 4.    Acacia's Asserted Trade Secret No. 4

Dr. Djordjevic opined that "Trade Secret 4 discloses a ████████████ ████████████████████████████████ but that ████████ ████████████████████████████████████ Dkt. No. 86-5 at 48.  He then discussed, for example, how "U.S. Patent No. 7,349,469 ███████████████ ████████████████████████████████████████ ████████████████████████████████ U.S. Patent No. 7,349,469 further discloses the use of ██████████.  U.S. Patent No. 7,349,469 also describes ████████████████████ *Id*. at 51 (emphasis omitted) (citations omitted).

### 5.    Acacia's Asserted Trade Secret No. 5

Dr. Djordjevic opined that "Trade Secret 5 describes a ██████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████ Dkt. No. 86-5 at 56.  Acacia's argument appears to be that because Dr. Djordjevic used the words ████████████ without also saying ██████████ he somehow forgot that ████████████ ████████████, and thus that correcting for it occurs in ████████.  That would be impossible for a Ph.D. whose entire career has focused on optical communication, and of course it is not so; a few pages later in his report, Dr. Djordjevic specifically mentioned that "U.S. Patent No. 7,315,575 discloses ██████████ ████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████ U.S. Patent No.

7,315,575 further discloses the use of ██████████████████████

████████████████ *Id.* at 60 (emphasis added) (citation omitted) .

### C. Acacia's Own Expert Failed to Rebut Dr. Djordjevic's Opinion That Acacia's Trade Secrets Are Rudimentary Concepts in Optical Communication Systems

Disallowing Dr. Djordjevic's opinion would also be in error in light of the opinions of Acacia's own expert, Dr. Prucnal, who provided no evidence that specifying ███ ████████████ as part of a trade secret adds more value than specifying "a blue car." Dr. Prucnal provided a report seeking to rebut Dr. Djordjevic's opinion that ██████████ ████████████████████████████████████████████████████ and seeking to explain why Acacia's asserted trade secrets are, in fact, worth protecting.  In this rebuttal opinion, he repeatedly noted ██████████████████████████████ ████████████████████████.  Tellingly, however, Dr. Prucnal *nowhere* rebutted or even attempted to address Dr. Djordjevic's opinion that specifying ████████████ is like specifying "a blue car."  Instead, Dr. Prucnal simply recited, in mind-numbingly repetitive paragraphs, that various references Dr. Djordjevic discussed did not explicitly ████████████████████████ For example:

1

2

3   Ex. 2 ¶¶ 204, 205; *see id.* ¶¶ [206-09, 219-22, 225, 227, 229, 230, 232, 234, 236, 242,

4   244, 246, 248, 251, 255].  Although Dr. Prucnal admitted he spent "spent quite a bit of

5   time" on his rebuttal report (ex. 3 at 253:16, nowhere within it does he explain why

6   specification of ▮▮▮▮▮▮▮▮▮ is important, and nowhere within it does he attempt

7   to rebut Dr. Djordjevic's opinion that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ such that the information in these trade

9   secrets is "of a general knowledge in the trade or business" based both on public

10  references that ▮▮▮▮▮▮▮▮▮▮▮ and on those that do not.  *DVD*

11  *Copy Control Ass'n*, 116 Cal. App. 4th at 251 (quoting *Kewanee Oil Co.*, 416 U.S. at

12  475).  As he admitted at his deposition, Dr. Prucnal had ample time and motivation to

13  construct such opinions, but failed to do so, presumably because they would not be true.

14  Unable to rebut Dr. Djordjevic's opinions on the merits, Acacia asks this court to

15  disallow them.  The Court should decline this invitation.

16  **III.  Drs. Narayanan and Djordjevic Properly Opined Regarding the Technical**
17  **Value and Importance of Technology Squarely Within Their Areas of Technical**
    **Expertise, and Dr. Prowse Properly Relied on Their Technical Opinions in His**
18  **Apportionment Analysis**

19      **A.     The Court Should Not Strike Technical Opinions From Drs. Narayanan**
20              **and Djordjevic Simply Because Dr. Prowse Used Them For Damages**

21      Acacia briefly argues that Drs. Narayanan and Djordjevic cannot discuss the relative

22  values of various technologies because they are not financial experts.  Dkt. No. 86-1 at

23  5:4-16, 13:5-10.  Just as Acacia gave it short shift, the Court should not tarry long with

24  this argument, which boils down to the assertion that Drs. Narayanan and Djordjevic

25  cannot provide their opinions regarding the relative technical value and importance of

26  technology within their areas of technical expertise because Dr. Prowse would later use

27  those opinions in his damages-related opinion.  Acacia's argument depends on its

28  assertion that "Apportionment of the value of technology or trade secrets requires

financial and economic qualifications and training to perform the requisite analysis." Dkt. No. 86-1 at 5:5-6.  But Drs. Narayanan and Djordjevic were not providing "financial and economic" opinions, so they need not have "financial and economic qualifications." Instead, they provide their opinions about the relative value and importance of various technologies within their areas of expertise—opinions they are allowed to provide.[1]

Indeed, it is common in technical cases for technical experts to provide testimony on apportionment, and Acacia cites no cases to the contrary.[2]  Nor can it, as courts endorse the practice.  In *Apple Inc. v. Motorola Inc.*, the Federal Circuit noted that "[p]atent

---

[1] In seeking to exclude Dr. Prowse's opinion, Acacia argues that Dr. Prowse "misunderstood" Dr. Djordjevic's opinion because it is *not* an opinion on financial value. Dkt. No. 86-1 at 19:16-18 ("Dr. Prowse did not explain his rationale for assuming that Dr. Djordjevic's assessment of 'academic value' has anything to do with financial value.") Acacia's argument is thus circular:  according to Acacia, technical experts cannot provide opinions on the relative importance of technology components because they lack financial expertise, but damages experts cannot provide opinions on the relative value of those technology components because they lack technical expertise.

[2] Acacia cites *InfoSpan, Inc. v. Emirates NBD Bank PJSC*, No. 11-1062, 2016 WL 8849699 (C.D. Cal. June 8, 2016), but *InfoSpan* presents far different facts.  There, plaintiff's disputed expert directly attempted to value a "trade secret of considerable economic value" in the banking industry, despite his utter lack of "qualifications in the banking industry or in intellectual property valuation."  *Id.* at *15.  Plaintiff InfoSpan "seems to confirm his lack of qualification on this issue," and, "[d]isavowing the reply opinion, InfoSpan states that 'Dr. Goldberg has not claimed to be an expert regarding the economic value of InfoSpan's trade secrets.'"  *Id.*  Acacia's remaining cases are even worse.  In *Jinro Am. Inc. v. Secure Investments, Inc.*, 266 F.3d 993 (9th Cir. 2001), the Court struck an expert who "offered his impressionistic generalizations about Korean businesses based on his personal investigative experiences, his 'hobby' of studying Korean business practices, unspecified input from his office staff and his marriage to a Korean woman—hardly an adequate foundation for the type of expert opinion he offered the jury."  *Id.* at 1006.  Similarly, in *POM Wonderful LLC v. Coca Cola Co.*, No. 08-6237, 2016 WL 5929259 (C.D. Cal. Feb. 24, 2016), the Court struck an expert who was "a pharmacologist with no expertise in damages or any related field" as "not qualified to opine on what Mr. Anastasi, a forensic accountant, should or should not have taken into consideration in his damages analysis."  *Id.* at *8.  None of these cases have anything to say about proper reliance of a damages expert on opinions from technical experts, as happened here.

1   damages calculations are often intertwined with highly technical issues precisely because

2   damages must be based on the scope of infringement, often an involved technical

3   question." 757 F.3d 1286, 1321 (Fed. Cir. 2014), *overruled on other grounds by*

4   *Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015).  The same is true here.

5   The *Apple* court also explained that, like Dr. Prowse did with apportionment in this case,

6   "[e]xperts routinely rely upon other experts hired by the party they represent for expertise

7   outside of their field." *Id.*  The entire purpose of apportionment is to determine the

8   contribution of particular technologies to an accused product, and to use that contribution

9   in calculating damages. *Cf. Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1337

10  (Fed. Cir. 2009) (same principles in patent case).  The Court should not strike technical

11  opinions from Drs. Narayanan and Djordjevic simply because Dr. Prowse relied upon

12  those opinions.

13  **B.    Acacia Ignores the Detailed Analysis Offered by Drs. Narayanan and**
14  **Djordjevic, Which Supports Their Opinions Regarding the Technical**
15  **Value and Importance of Technology**

16  Acacia seeks to portray the disputed opinions of Drs. Narayanan and Djordjevic as

17  mere toss-offs, unrelated and unconnected to the remainder of their reports.  Dkt. No.

18  86-1 at 6, 13.  A fair reading of their reports, however, shows the opposite.  Dr.

19  Narayanan wrote dozens of pages describing coding fundamentals, coding techniques

20  general and specific, and the products at issue before even raising the issue of the relative

21  value and importance of SDFEC and DSP.  *See supra* Background, Part A.  Dr.

22  Narayanan then reconfirmed that he had ███████████████████████████

23  ███████████████████████████████████████████████ and explicitly

24  grounded his opinion on "my review of these projects" as well as his general expertise.

25  Dkt. No. 86-7 at 75.  Similarly, Dr. Djordjevic analyzed each of Acacia's asserted trade

26  secrets and concluded that each represents a rudimentary concept in optical

27  communication systems, and explicitly grounded his opinion that, █████████████

28  ████████████████████████████████████████████████

1 ███████████████████████████████████████████████ on his previous

2 opinion that ██████████████████████████████████████████████

3 ████████████████████████████████████ Dkt. No. 86-5 at 63-64;

4 *see supra* Background, Part B.  It is thus simply wrong for Acacia to argue that "Dr.

5 Narayanan's report does not even attempt to explain the steps he took to come to the

6 conclusion that SDFEC is challenging and the other parts of the ASIC are not," or to

7 argue that Dr. Djordjevic "does not provide any analysis for his opinion."  Dkt. No. 86-1

8 at 6, 13.  Drs. Narayanan and Djordjevic both explicitly based their disputed opinions on

9 their own knowledge of their fields and the underlying discussion in their expert reports,

10 as anyone would understand except those described by Upton Sinclair's famous adage:

11 "It is difficult to get a man to understand something, when his salary depends upon his

12 not understanding it."

### C.   Acacia Misapplies Specific *Daubert* Factors to ViaSat's Experts; If Acacia's Standard is Correct, However, the Court Must Also Strike Most if Not All of Acacia's Own Expert Reports

16      Acacia further opposes Drs. Narayanan and Djordjevic by attempting to import

17 specific *Daubert* factors that have no bearing here.  Acacia argues that both Drs.

18 Narayanan and Djordjevic provide impermissible *ipse dixit* (dkt. no. 86-1 at 5-6, 13-15)

19 and that Dr. Narayanan's opinion fails because (in Acacia's view) it is not scientifically

20 reliable or testable, subject to peer review, has no known error rate, and is not generally

21 accepted.  *Id.* at 7-11.  Acacia misapplies these factors.  But if they are applied to Drs.

22 Narayanan and Djordjevic, they are properly applied to Acacia's experts as well.

23      As this Court has noted, the "inquiry under Rule 702 is a 'flexible' one, and the

24 district court has 'discretionary authority . . . to determine reliability in light of the

25 particular facts and circumstances of the particular case.'  Accordingly, 'the factors

26 identified in *Daubert* may or may not be pertinent in assessing reliability, depending on

27 the nature of the issue, the expert's particular expertise, and the subject of his

testimony.'"  *Czuchaj*, 2016 WL 4414673, at *2 (citing *Kumho Tire*, 526 U.S. at 150, 158).

*Czuchaj* addressed an expert for plaintiff named Van Herle, who opined regarding an alleged cord defect.  *Id.* at *4.  When defendant sought to strike his testimony, this Court denied the motion:

> Defendant next attacks the reliability of Mr. Van Herle's opinions.  As to Mr. Van Herle's opinion on the cord defect, it contends that he arrived at that opinion based only on his visual observations without conducting any scientific or mathematical testing or analysis and without performing any research. Defendant points out that there is a known industry protocol to test line cords and strain reliefs, but Mr. Van Herle chose not to perform that test.  Rather, according to Defendant, Mr. Van Herle "made up" a test days before his deposition.  Further, in Mr. Van Herle's Declaration submitted with Plaintiffs' Opposition to this motion, Mr. Van Herle belatedly offers mathematical formulas to support his opinion. Defendant contends that, despite this belated attempt to justify his opinion, there "is nothing testable or subject to peer review to demonstrate that Mr. Van Herle's methodology is generally accepted within the scientific community."
>
> Much of Mr. Van Herle's testimony appears to be based on his knowledge and experience in his discipline and is supported by "[s]tandard engineering equations."  In such cases, the *Daubert* factors (peer review, publication, potential error rate, etc.) are not always applicable.  "Engineering testimony rests upon scientific foundations, the reliability of which will be at issue in some cases.  In other cases, the relevant reliability concerns may focus upon personal knowledge or experience." . . . .
>
> Although the Court recognizes weaknesses in Mr. Van Herle's opinion, those weaknesses go to the weight to be given to his testimony.  The Court finds that Mr. Van Herle's testimony about the cord defect is sufficiently reliable to satisfy Rule 702.

*Id*. (citations omitted).  The Court noted that "Defendant is free to cross-examine Mr. Van Herle at trial to identify the weaknesses in his opinions and to offer its own expert's opinions to rebut Mr. Van Herle," but reaffirmed that "the district court should 'not

1    exclude opinions merely because they are impeachable.'" *Id.* at *5 (quoting *Alaska*

2    *Rent-A-Car, Inc.*, 738 F.3d at 969).

3        Acacia asks this Court to depart from *Czuchaj* and exclude opinions of Drs.

4    Narayanan and Djordjevic regarding the relative values of different technologies in each

5    party's accused products.  By their very nature, opinions regarding relative value are not

6    scientifically testable; they can be assessed only based on experience.  That is not a

7    reason to exclude those opinions; to the contrary, it is precisely why expert testimony is

8    necessary and appropriate.  And Acacia does not dispute that Drs. Narayanan and

9    Djordjevic have exactly the type of experience that would inform those opinions.

10       Indeed, based on their expert reports, experts for both ViaSat and Acacia plan to

11   provide opinions on the specific facts of the case, informed by their years of experience

12   in the industry.  Precisely because those opinions arise from experience, rather than

13   scientific theory or experimentation, they are not necessarily testable or subject to peer

14   review in a way that opinions in another field might be.  Acacia's experts, for example,

15   offer untested opinions on each of the following subjects:



- ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████

Each of these statements, and many others throughout Acacia's expert reports, would be impermissible *ipse dixit* under the test Acacia applies to Drs. Narayanan and Djordjevic in its motion.  None of these statements arise from a method that is scientifically reliable or testable, or subject to peer review.  None of them can be tested in a way that has a known error rate.  None of them are generally accepted in the industry—unless opinions based on experience are accepted in the industry, in which case they must be for Drs. Narayanan and Djordjevic as well.  There is no daylight between the challenged statements by Drs. Narayanan and Djordjevic and any of these statements by Acacia's experts—all must fall if one does, as well as many others beyond these examples.

The Court should follow *Czuchaj* and deny Acacia's motion, which seeks to apply a different standard only to a few specific statements from ViaSat's experts, presumably because Acacia particularly does not like those statements.  Should the Court apply this new standard to Drs. Narayanan and Djordjevic, however, fairness dictates that the Court reopen the window for additional *Daubert* motions on this issue only, so that the Court can examine all statements by all experts against the same standard.

### D.   Dr. Narayanan Properly Considered Chip Area As Part of His Opinion

Acacia further tries to undermine Dr. Narayanan by arguing that he based his opinion solely on his review of the physical area occupied by various portions of the chip.  Dkt. No. 86-1 at 7-10.  But Dr. Narayanan appropriately considered this factor, as well as others, in reaching his opinion.  As Dr. Narayanan explained in his report, the "primary reason" for his "opinion is that SDFEC is very challenging, and the other parts of the ASIC are not."  Dkt. No. 86-7 at 75.  As he further explained:

████████████████████████████████████████████
████████████████████████████████████████████

1  ████████████████████████████████████████████████████████████

2  ████████████████████████████████████

3  *Id*.  Dr. Narayanan then continued:  ████████████████████████████████

4  █████████████████████  *Id*.  It is thus incorrect to argue, as Acacia does, that Dr.

5  Narayanan used a single "method" to perform his evaluation.  Dkt. No. 86-1 at 7-10.

6      After giving Dr. Narayanan's review of chip area undue significance and importance,

7  Acacia then tries to portray it as unreliable.  *Id*. at 7-10.  Again, however, the remedy for

8  Acacia's complaints is cross-examination, not prohibition.  *See supra* section III.C.; *see,*

9  *e.g., Czuchaj*, 2016 WL 4414673 at *5.  Exclusion would be particularly unjust where, as

10  here, ViaSat can support Dr. Narayanan's chip area review with Acacia's own documents,

11  including an email from Acacia's Vice President of Engineering Bhupen Shah ███████████

12  ████████████████████████████████████████████

13      ███████████████████████████████████████

14  █████████████████████████████████████

15      █████████████████████████████████████

16  ███████████████

17  Ex. 5.  Mr. Shah's email also contradicts Acacia's assertion in its motion that Dr.

18  Narayanan should have performed ███████████  Dkt. No. 86-1 at 12:12-16.  And Mr.

19  Shah is not the only Acacia employee ██████████████████████; in a separate email as

20  part of a separate discussion, Jon Stahl also wrote: ████████████████████████████

21  Ex. 6.  Finally, Acacia cannot credibly insist that Dr. Narayanan should have performed a

22  ██████████  when Acacia itself did not produce the documents necessary for Dr.

23  Narayanan (or anyone else) to perform a ███████████  *See* Ex. 4.

24      Acacia thus asks the Court to strike Dr. Narayanan's opinion because he relied, in

25  part, on a method that its own Vice President of Engineering called the "best criteria."

26  But if Acacia wishes to attack Dr. Narayanan's opinion, it should do so to the jury,

27  subject to ViaSat's rebuttal, instead of asking the Court to usurp the jury's role.  *Czuchaj*,

28

2016 WL 4414673, at *1 ("In evaluating proffered expert testimony, the trial court is 'a gatekeeper, not a fact finder.'")

### E.    It Does Not Matter What Dr. Narayanan Did Not Do

Finally, and most bizarrely, Acacia argues that the Court should strike Dr. Narayanan's opinion because he allegedly failed to consider other factors that Acacia believes are important.  Dkt No. 86-1 at 11-12.  This section of Acacia's brief includes not a single case citation—nor could it, as there is no doctrine requiring courts to strike expert opinions because the opposing party would rather they consider other evidence. Nor should there be; Acacia is free to make its point through cross-examination, asking Dr. Narayanan to explain why he did not consider those factors.  But the mere existence of those questions cannot be sufficient to strike Dr. Narayanan's report; were it otherwise, no portion of an expert report would ever survive for the jury.

## IV.  The Court Should Not Strike Any Portion of Dr. Prowse's Opinion

### A.    Dr. Prowse Properly Relied on Drs. Narayanan and Djordjevic

At the close of its motion, Acacia also briefly asks this Court to exclude "Dr. Prowse's opinions on apportionment that rely on the ███████████████, as well as "Dr. Prowse's analysis and conclusions that incorporate" ██████████ ████.  Dkt. No. 86-1 at 18, 19.  Most of this argument depends on Acacia's assertions that Drs. Narayanan and Djordjevic rendered improper opinions.  Because the opinions of Drs. Narayanan and Djordjevic are proper and admissible, *see supra* sections II, III, Acacia's challenge to Dr. Prowse's opinions also fails.

Moreover, even if the opinions of Drs. Narayanan and Djordjevic were not independently admissible (which they are), Acacia has failed to show it was unreasonable for Dr. Prowse to rely on those opinions.  As this Court has held, "'[a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility.'"  *United Nat. Maint., Inc. v. San Diego Convention Ctr. Corp*., No. 07-2172, 2010 WL 3034025 at *4 (S.D. Cal. Aug. 3,

2010) (quoting *Primrose Operating Co. v. National American Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004)).

In this case, determining the economic value of the asserted trade secrets necessarily requires apportioning the relative values of different technologies that are combined in a single product.  That, in turn, depends on a technical understanding of the relative importance and complexity of the various technologies.  Acacia apparently believes the only way to accomplish this apportionment is through a single, "Renaissance man" super-expert, who is qualified in both engineering and economics.  But Acacia is wrong.  Dr. Prowse's reliance on the technical experts is not only entirely proper, but also quite common in complex technical litigation.  *See, e.g., Apple Inc.*, 757 F.3d at 1321; *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 609-13 (7th Cir. 2002) ("[I]t is common in technical fields for an expert to base an opinion in part on what a different expert believes on the basis of expert knowledge not possessed by the first expert.").

### B.   Dr. Prowse Did Not Rely *Only* on Drs. Narayanan and Djordjevic

#### 1.   Dr. Prowse's Opinion Regarding Apportionment of Acacia's Profit

Acacia's motion to strike portions of Dr. Prowse's opinions also fails because Dr. Prowse based his opinions on more than just the challenged opinions of Drs. Narayanan and Djordjevic.  As Dr. Prowse detailed in his report, he ███████████ ████████████████████████████████████████████████████████████████████ ██████████████████████ Dkt. No. 86-4 ¶ 65.  As a first step, Dr. Prowse accounted for other, non-SDFEC components in Acacia's module products ████████████ ████████████████████████ *Id.* ¶ 67.  Dr. Prowse noted that ████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ *Id.* ¶ 66.  Once down to the ASIC, Dr. Prowse relied upon the testimony of Acacia engineer Dr. Humblet as well as documents authored by Dr. Humblet showing his understanding that the ████████████████████████████████████ *Id.* ¶ 68.  Dr. Prowse

next relied upon his discussions with Dr. Narayanan as well as Dr. Narayanan's expert

report for his understanding that ████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████████████████████████     *Id*.   Finally, Dr. Prowse noted that his apportionment

calculation was consistent with other evidence showing that ██████████████████

████████████████████████████████████████████████████████████████████████████

██████████████████████████     *Id*. ¶ 68.

Dr. Prowse then devoted several pages of his report to description of the evidence

supporting his apportionment analysis.  *Id*. ¶¶ 69-78.   Dr. Prowse explained that he

considered the documents and testimony of Acacia engineers regarding the value of

ViaSat's SDFEC, documents showing customer demand for ViaSat's SDFEC, Acacia's

marketing materials and internal presentations showing ViaSat's SDFEC was a ████

████████████████████   and his conclusion, based on review of Acacia's financials, that

████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████     *Id*. ¶¶ 26, 28.  Dr. Prowse

also considered more specifically the value of backwards compatibility of Acacia's

products.  *Id*. ¶¶ 73-78.

### 2.    Dr. Prowse's Opinion Regarding Apportionment of ViaSat's Profit

Similarly, Dr. Prowse relied on a number of factors in determining the proper

apportionment of ViaSat's profit should Acacia succeed on its counterclaims.  Dr. Prowse

noted that ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████   Dkt. No. 86-8 ¶ 55.  He also considered that ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████     *Id*.  Dr. Prowse indeed

noted that he understood ███████████████████████████
████████████████████████████████████████████████████
██████████████  *Id.* ¶ 56.  And Dr. Prowse further noted that ████████████████
████████████████████████████████████████████████████████
██████████████████████  *Id.* ¶ 57.  Dr. Prowse described those tasks
and responsibilities in more detail, *see id.*, and then noted that ██████████████
██████████████████████████████████████████████
████████████████████████████  *Id.* ¶ 59.

    What Acacia challenges is thus only one brick in the foundation of Dr. Prowse's
opinions.  Whether or not the challenged opinions of Drs. Narayanan and Djordjevic are
independently admissible, Dr. Prowse's overall opinions are still amply supported.

### C.    Dr. Prowse Properly Understood That Dr. Djordjevic, a Technical Expert, Gave a Technical Opinion

    Finally, Acacia argues that Dr. Prowse "misunderstands Dr. Djordjevic's opinion" to
be a financial one, apparently because Dr. Djordjevic used the word "value."  Dkt. No.
86-1 at 19.  It is clear to any reasonable person reading Dr. Djordjevic's report that he
was not offering an economic analysis, and it was clear to Dr. Prowse.  Dr. Djordjevic
provided a technical opinion regarding relative *technical* value and importance, and
Dr. Prowse used that technical opinion in reaching his financial opinion.  *See supra*
section III.  Dr. Prowse properly used this opinion for the same reason that Dr. Djordjevic
properly gave it.

1

**CONCLUSION**

2      For the foregoing reasons, the Court should deny in its entirety Acacia's Motion to

3 Strike and Exclude Certain Opinions of ViaSat's Experts, Dkt. No. 86-1.

4

5 Dated:  February 26, 2018                        Respectfully Submitted,

6

7                                                  Matthew S. Warren

8                                                  Patrick M. Shields
                                                   Erika H. Warren
9                                                  WARREN LEX LLP

10                                                 2261 Market Street, No. 606
                                                   San Francisco, California, 94114
11

12                                                 Kenneth M. Fitzgerald

13                                                 David Beckwith
                                                   Keith M. Cochran
14                                                 FITZGERALD KNAIER LLP

15                                                 402 West Broadway, Suite 1400
                                                   San Diego, California, 92101
16

17                                                 *Attorneys for Plaintiff and*
                                                   *Counter-Defendant ViaSat, Inc.*
18

19

20

21

22

23

24

25

26

27

28