FITZGERALD KNAIER LLP
  Kenneth M. Fitzgerald (State Bar No. 142505)
  kfitzgerald@fitzgeraldknaier.com
  David Beckwith (State Bar No. 125130)
  dbeckwith@fitzgeraldknaier.com
  Keith M. Cochran (State Bar No. 254346)
  kcochran@fitzgeraldknaier.com
  402 West Broadway, Suite 1400
  San Diego, California, 92101
+1 (619) 241-4810
+1 (619) 955-5318 facsimile

WARREN LEX LLP
  Matthew S. Warren (State Bar No. 230565)
  Patrick M. Shields (State Bar No. 204739)
  Erika H. Warren (State Bar No. 295570)
  16-463@cases.warrenlex.com
  2261 Market Street, No. 606
  San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile

Attorneys for Plaintiff and Counter-Defendant ViaSat, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIASAT, INC. a Delaware corporation, <br>     Plaintiff and Counter-Defendant, <br><br> v. <br><br> ACACIA COMMUNICATIONS, INC. a Delaware corporation, <br>     Defendant and Counter-Claimant. | Case No. 3:16-463-BEN-JMA <br><br> **ViaSat's Reply in Support of Motion for Summary Judgment on Acacia's Counterclaim for Patent Misappropriation** [Redacted] <br><br> Date: March 5, 2018 <br> Time: 10:30 a.m. PST <br> Place: Courtroom 5A <br><br> Hon. Dist. Judge Roger T. Benitez <br> Hon. Magistrate Judge Jan M. Adler <br><br> Case Initiated: January 21, 2016 |

**TABLE OF CONTENTS**

INTRODUCTION……………………………………………………………………………..1

ARGUMENT …………………………………………………………………………………..1

    I.    Acacia Cannot Prevail on Count I for "Patent Misappropriation"..................... 1

        A.    *Arachnid* Affirms Federal Jurisdiction Only for Equitable Claims for Infringement Brought by a Plaintiff That a Court Has Already Adjudged to be The Patent's Equitable Owner, Which Acacia Admits It is Not…………………………………………………………...2

        B.    Acacia's Other Authorities Only Confirm ViaSat's View……………..4

    II.    Acacia Cannot Prove Patent Ownership on This Record……………………. 5

    III.    Acacia Cannot Add an Inventorship Claim Well Past the Eleventh Hour….... 7

    IV.    ViaSat Did Not and Cannot Waive Subject Matter Jurisdiction……………...9

CONCLUSION………………………………………………………………………….... 10

# INTRODUCTION

Acacia strains mightily to argue that this Court has jurisdiction over Count I of its counterclaims for "Patent Misappropriation under 35 U.S.C. § 1, et seq." But Acacia's arguments fail, so the Court must dismiss this claim. Because Count I is the sole ground for Federal question jurisdiction over this action, the Court should remand it.

Acacia argues three things, each wrong as a matter of law. First, Acacia argues that the Court must hear a "Federal" claim for "patent misappropriation." Dkt. No. 120 at 5. But there exists no claim for "patent misappropriation" under Federal law. As Acacia's own cases show, Federal courts may hear disputes over patent ownership with some *other* ground for jurisdiction, such as diversity (not present here) or other Federal question claims allowing pendent jurisdiction (also not present here). Finally, Federal courts have jurisdiction to hear equitable *infringement* claims brought by equitable title holders—if and *only if* a court of competent jurisdiction has already adjudged the plaintiff to be the rightful owner of the patent (which, again, has not happened here).

Unable to conjure jurisdiction on the basis of "patent misappropriation," Acacia next argues that its claims "arise at least in part from inventorship" and—although Acacia admits it did not plead an inventorship claim, and even now does not name who it believes are the correct inventors of any disputed patent—the Court should "deem the counterclaims constructively amended to encompass that issue." But Acacia's time to amend expired long ago, ViaSat litigated against Acacia's actual pleading for more than two years, and discovery closed without an opportunity to seek facts or prepare expert testimony on inventorship, which is not at issue in the case. ViaSat would suffer grave prejudice if the Court now permitted Acacia's untimely retroactive amendment.

Finally, Acacia tries to hide behind a specious claim of waiver, despite black-letter law that subject matter jurisdiction cannot be waived and must be addressed at any time.

# ARGUMENT

## I.  Acacia Cannot Prevail on Count I for "Patent Misappropriation"

As ViaSat explained in its opening brief, Count I of Acacia's counterclaims alleges

the "ViaSat Patent Family contains Foreground Information" and, for this reason, "Acacia thereby has an equitable interest in the ViaSat Patent Family." Dkt. Nos. 89-1, 127-3 ("Motion") at 2-3[1]; Dkt. No. 3 ¶¶ 36-47. Acacia admits that ViaSat currently holds "all legal title in the ViaSat Patent Family" and asks this Court for "rescission of the ownership of the ViaSat Patent Family, and transfer of that ownership to Acacia." *Id*. ¶¶ 20, 46.) Under these facts, Acacia's own cases require dismissal of Count I.

> A. *Arachnid* Affirms Federal Jurisdiction Only for Equitable Claims for Infringement Brought by a Plaintiff That a Court Has Already Adjudged to be The Patent's Equitable Owner, Which Acacia Admits It is Not

Acacia relies heavily on *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574 (Fed. Cir. 1991). Dkt. No. 120 at 3-4, 6. Acacia misunderstands *Arachnid* to hold that the mere assertion of a claim for equitable title is enough to confer Federal question jurisdiction. But *Arachnid* says the opposite: "where a plaintiff *has been adjudged* the equitable title holder of a patent, a Federal district court has jurisdiction to consider claims for *equitable relief stemming from the alleged infringement*" of that patent. 939 F.2d at 1580 (emphasis added). Acacia has neither been "adjudged" the equitable title holder of any patent, nor asserted any claim for alleged infringement.

*Arachnid* arose from a dispute between Arachnid, Inc. and IDEA over the fruits of a consulting agreement. *Arachnid*, 939 F.2d at 1576. Arachnid sued IDEA in the Western District of Wisconsin for infringement of the '251 patent, over which ownership was not in dispute, providing Federal question jurisdiction. *Id*. Arachnid later added breach of contract and unjust enrichment claims seeking "an assignment of all rights, title, and interest, both legal and equitable" over the '781 patent issued to IDEA. *Id*. At the same time, Arachnid brought a separate claim in a separate court (the Eastern District of Pennsylvania) against Merit, IDEA's licensee, for infringement of the '781 patent, even though IDEA was still its record owner. *Id*. The Eastern District of Pennsylvania

---

[1] ViaSat filed its Motion as Docket No. 89-1. ViaSat's original brief contained citation errors, and ViaSat filed an *ex parte* application for leave to file a corrected brief. Dkt. No. 127. All citations are the same to both versions.

dismissed this claim because Arachnid was not the owner of the '781 patent. *Id*. Later, the Western District of Wisconsin entered judgment for Arachnid against IDEA, and ordered IDEA to transfer the '781 patent to Arachnid. *Id*. After that judgment, Arachnid reinstated its claim against Merit in the Eastern District of Pennsylvania, which entered judgment against Merit. *Id*. Merit appealed, resulting in *Arachnid v. Merit*, 939 F.2d 1574, which Acacia cited in its counterclaims and brief.

On these facts, *Arachnid* held that a plaintiff cannot sue for past damages where it lacked legal title to the patent during the period of infringement. *Id*. at 1581. In considering this question, the court also rejected Arachnid's argument that it could recover damages as the equitable title holder under *Papazian v. American Steel & Wire Co. of New Jersey*, 155 F. Supp. 111 (N.D. Ohio 1957) because, as the Arachnid Court explained, *Papazian* correctly allowed an adjudged equitable title holder to recover only equitable remedies on a claim of infringement. *See* 939 F.2d at 1580. *Arachnid* set forth in detail the requirements for such a claim: first, that "a plaintiff's claim of equitable ownership has been adjudged valid by a court having jurisdiction over *that* question," and second, that the adjudged equitable title holder bring a "claim for infringement" on its equitable title. *Id*. Conversely, as *Papazian* further explains:

> While the authorities are not in full harmony, the better reasoned cases hold that where there is no diversity jurisdiction and plaintiff's equitable title to the patent must be established solely by the application of equitable principles, the case is not one arising under the patent laws, and the District Court is without jurisdiction of the claim for infringement until and unless plaintiff's claim of equitable ownership is first adjudged valid by a court having jurisdiction of that question.

*Papazian*, 155 F. Supp. at 117 (following "the better reasoned cases" and holding that the District Court lacked jurisdiction).

Thus *Arachnid* stands for the proposition that, *once a court of competent jurisdiction has adjudged a plaintiff to have an equitable interest in a patent*, that plaintiff can bring equitable claims for infringement on that patent in Federal court. Here, however, no court has adjudged Acacia to have any interest in the disputed "ViaSat Patent Family."

Acacia admits as much and asks this Court to make such a judgment, *see supra*, but this request cannot by itself confer Federal jurisdiction. "It is well settled that if the patentee pleads a cause of action based on rights created by a contract, or on the common law of torts, the case is not one 'arising under' the patent laws." *Jim Arnold Corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567, 1572 (Fed. Cir. 1997) (collecting cases) (noting that "[i]t may seem strange at first blush that the question of whether a patent is valid and infringed ordinarily is one for Federal courts, while the question of who owns the patent rights and on what terms typically is a question exclusively for state courts. Yet that long has been the law.")

### B. Acacia's Other Authorities Only Confirm ViaSat's View

Seeking to avoid this long-standing rule, Acacia submits a farrago of cases (Dkt. No. 120 at 4:6-7), but none supports Acacia's view that the mere *claim* of an equitable interest is sufficient to confer Federal jurisdiction. Acacia quotes *Taylor v. Taylor Made Plastics, Inc.*, 565 F. App'x 888 (Fed. Cir. 2014) to support its argument that a "party may hold 'an equitable interest in the patent.'" Dkt. No. 120 at 4. But in *Taylor*, any "equitable interest" had already been determined by the Florida court that handled the Taylors' divorce. *Id.* at 889. Similarly, Acacia cites *Heidelberg Harris, Inc. v. Loebach*, 145 F.3d 1454 (Fed. Cir. 1998) as approving the district court's award of equitable relief. Dkt. No. 120 at 4. But the equitable interest in *Heidelberg* arose from *state-law contract and conversion claims* before district courts *sitting in diversity*. *Heidelberg Harris, Inc. v. Loebach*, No. 92-00607 (D.N.H. filed on Dec. 1, 1992); *Loebach v. Motter Printing Press Company, et al*, No. 90-01089 (M.D. Pa. filed on June 8, 1990).[2]

---

[2] In Acacia's remaining cases, the district court had Federal question jurisdiction from other pending claims; they thus do not support Acacia's argument here. *GAF Corp. v. Amchem Prods., Inc.*, 514 F. Supp. 943, 974-75 (E.D. Pa. 1981) (considering inventorship claims and applying Pennsylvania law to the question of equitable ownership of patents); *Curtis Mfg. Co. v. Plasti-Clip Corp.*, 933 F. Supp. 94, 101-02 (D.N.H. 1995) (patent infringement and breach of contract claims); *Beam Laser Sys., Inc. v. Cox Commc'ns, Inc.*, 117 F. Supp. 2d 515, 520 (E.D. Va. 2000) (declaratory judgment of non-infringement and tort claims); *Cargill, Inc. v. Sears Petroleum & Transp. Corp.*, 388 F. Supp. 2d 37, 63 (N.D.N.Y. 2005) (declaratory judgment, infringement, inequitable

Having found no cases recognizing a Federal claim for "patent misappropriation," Acacia asks the Court to create one under 28 U.S.C. § 1338(a) because, it argues, its claim depends on a "resolution of a substantial question of federal patent law." Dkt. No. 120 at 5. But the Supreme Court long ago considered and rejected the view that patent ownership disputes "arise under" the patent laws. *Becher v. Contoure Labs., Inc.*, 279 U.S. 388 (1929) (affirming state court jurisdiction over equitable claim for assignment of a patent); *Jim Arnold*, 109 F.3d at 1572 ("It is well settled that if the patentee pleads a cause of action based on rights created by a contract, or on the common law of torts, the case is not one 'arising under' the patent laws.") (collecting cases); *see also Bisignano v. Inselberg*, No. 15-8301, 2016 WL 4487853, at *8 (D.N.J. Aug. 25, 2016), *aff'd sub nom. First Data Corp. v. Inselberg*, 870 F.3d 1367 (Fed. Cir. 2017) ("For 'equitable relief that restores to the assignor title to the patent,' or for 'forfeiture of the license'—the very relief sought here—it is to a state court that plaintiffs must look.") Acacia's own cases confirm it cannot use vague allusions to gin up Federal jurisdiction. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809 (1988) (claim did not "arise under" the patent laws under the "well-pleaded complaint rule.") (cited at Dkt. No. 120 at 5).

Acacia's theory fails for good reason: it is undisputed that claims over legal title to patents must be heard in the first instance under state law. See *First Data Corp. v. Inselberg*, 870 F.3d 1367, 1371 (Fed. Cir. 2017) (citing *Jim Arnold*, 109 F.3d at 1577). If Acacia were right, any party could avoid this rule by inserting the word "equitable" into its claim. The law does not permit this sort of end-run into Federal court. "'Federal jurisdiction cannot lie based on allegations that are frivolous or insubstantial.'" *First Data*, 870 F.3d at 1373 (holding that a claim for declaratory judgment of patent ownership was not a colorable Federal claim) (quoting *Jim Arnold*, 109 F.3d at 1572).

## II. Acacia Cannot Prove Patent Ownership on This Record

As ViaSat explained in its Motion, Acacia cannot prove its ownership of the ViaSat Patent Family on the record it developed in this action. Motion at 3-5. In response,

---

conduct, and inventorship claims as well as common law counterclaims).

Acacia argues that "[t]here is no requirement for such a claim-by-claim analysis for patent misappropriation," Dkt. No. 120 at 10, and then purports to supply one anyway. Both arguments fail.

Acacia cites *Lucent Techs., Inc. v. Gateway, Inc.*, 543 F.3d 710, 718 (Fed. Cir. 2008) in support of its argument that "misappropriation is actionable regardless of whether the misappropriated material appears in a single, specific claim or merely in the patent specification as a whole," Dkt. No. 120 at 11, but *Lucent* does not concern or address misappropriation.[3]  Instead, considering a standing challenge for failure to join co-inventors, *Lucent* confirmed that patent ownership must be assessed on a claim-by-claim basis, by carefully comparing each of four claims to the subject matter of the disputed agreement and overruling the jury verdict on two of the claims, but not the other two.  543 F.3d at 718-719; Motion at 5-6.  Acacia asserts that ViaSat "concedes that Acacia has provided such expert testimony at the patent specification level" (Dkt. No. 120 at 11), but this too is incorrect.  As Acacia admits, its only expert testimony concerns whether ViaSat disclosed Acacia's purported trade secrets in two provisional patent applications, which include no claims and which do not control the specification or claims of any actual patents.  As ViaSat explained in its Motion, Dr. Prucnal expressly disclaimed any discussion of improper use of any trade secrets by filing any patent, confirming at his deposition that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Motion at 5.

After insisting it need not do so, Acacia now submits a single chart for a single claim of a single patent—that, bizarrely, maps one element of one claim to one alleged trade secret, but otherwise relies entirely on Exhibit C to the parties' contract.  Dkt. No. 120 at 14-15.[4]  Acacia claims that "[a]ll the jury needs to do is compare the (almost identical) words in the claims, trade secrets, and Exhibit C to the Agreement, aided by the fact

---

[3] On the prior page of its brief, Acacia admits that *Lucent* holds that inventorship is analyzed claim-by-claim.  Dkt. No. 120 at 10 n.2.

[4] Acacia also submits additional charts at Exhibit 114.  These charts are entirely attorney argument from Acacia, and Acacia cannot submit them as exhibits to avoid the page limits in the Court's local rules.  Loc. R. 7.1(h).  The Court should strike them.

testimony of the individuals at Acacia who actually invented these concepts, and reach the ultimate conclusion of whether Acacia invented what is in those claims."[5]  Dkt. No. 120 at 15.  But if a lay jury could construe without benefit of expert testimony "chromatic dispersion compensation module" and find whether it is the same as "Bulk Dispersion Compensation," or conclude whether a block labeled "Quadrature Error Filter (1)" can "receive a digitized version of an optical signal," then *we would not need experts in this case at all*, because the jury could reach full and fair conclusions from its lay understanding.[6]  Acacia's demonstrative chart proves only its own failure of proof.

### III. Acacia Cannot Add an Inventorship Claim Well Past the Eleventh Hour

Evidently aware of the above issues, Acacia now seeks, more than two years into this action, to rewrite Count I as a claim for inventorship, a wholly different claim that Acacia *admits it did not plead.*  Acacia nonetheless asks the Court to "deem the counterclaims constructively amended to encompass that issue" or, in the alternative, allow Acacia to "expressly amend its claims" under Rule 15.[7]  The Court should not permit Acacia to add an inventorship claim, which would gravely prejudice ViaSat.[8]

---

[5] Acacia contends that it owns the technology set forth in Exhibit C and ViaSat strenuously disagrees.  Regardless of that dispute, Acacia cannot use Exhibit C to prove *inventorship* by its employees, as ViaSat's employees authored Exhibit C before the Effective Date of the Agreement.  Dkt. No. 120-16.

[6] Importantly, in Acacia's hypothetical trial the jury would make this decision without the benefit of any guidance whatsoever.  Neither ViaSat nor Acacia has submitted expert testimony on this issue, and Acacia's fact witnesses did not write these patents and cannot discuss them without providing improper expert testimony.  Fed. R. Evid. 701.

[7] Quixotically, Acacia also seeks to salvage Federal jurisdiction by arguing that its counterclaims III and IV, which explicitly assert state-law contract claims, are somehow "[i]ntertwined" with the "federal question of the correct inventorship" because they (in Acacia's view) raise common facts.  Dkt. No. 120 at 2.  But even if these claims proceed from a common nucleus of operative facts, Acacia cannot conjure Federal jurisdiction from thin air; it must actually plead a colorable Federal question.

[8] Amendment would also be futile.  Although Acacia admits inventorship is determined person-by-person and claim-by-claim, Acacia has not said which Acacia employees it believes to be the true inventors of which ViaSat patents.  Instead, Acacia points to its response to ViaSat Interrogatory No. 9 regarding conception of Acacia's alleged trade secrets.  Dkt. No. 120 at 7.  But Interrogatory No. 9 does not address

Constructive amendment "is a judicially created doctrine that courts have extrapolated from the language of Federal Rule of Civil Procedure 15(b)" under which, when "issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." *City of Rome, NY v. Verizon Comms. Inc.*, 362 F. 3d 168, 181 & n.10 (2nd Cir. 2004) (citing Fed. R. Civ. P. 15(b)).  Courts employ constructive amendment in "extremely sparing" circumstances, *id.*, and only where the parties have consented.  *E.g., Sunbeam Prod., Inc. v. Wing Shing Prod. (BVI), Ltd.*, 153 F. App'x 703, 707 (Fed. Cir. 2005) ("We have held that a district court 'effected a constructive amendment of the complaint' when neither party objected to the district court adjudicating a joint inventorship claim that was not effectively pleaded in the plaintiff's complaint."); *Eli Lilly and Co., v. Aradigm Corp.* 376 F. 3d 1352 (Fed. Cir. 2004) ("Because neither party objected, we conclude that the district court effected a constructive amendment of the complaint, supplementing the pleadings with a count properly based on section 256.").[9]

Here, of course, ViaSat emphatically does *not* consent to retroactively change the scope of this case, as substitution of an inventorship claim at this late hour would cause ViaSat great prejudice.  ViaSat has taken no discovery into Acacia's new claims of inventorship, precisely because Acacia did not raise them.  ViaSat does not even know which personnel Acacia alleges were legal inventors of which patents in the ViaSat Patent Family—tellingly, even now, Acacia's Opposition does not name a single inventor for any patent.  Dkt. No. 120.  ViaSat has not had a chance to depose Acacia's unnamed engineers about their claimed inventorship.  And ViaSat did not retain an expert to opine

---

individual patent claims, and identifies numerous people—including a third party—who contributed to conception of different alleged trade secrets.  Dkt. No. 120-6.

[9] Acacia also cites *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826 (2002), in support of its argument that "federal subject matter jurisdiction may exist via 'constructive amendment to the complaint raising a patent-law claim'" (Dkt. No. 120 at 9), but *Holmes* explicitly declined to decide that question.  *Id.* at 829 n.1.

on the highly technical aspects of inventorship.[10] Had Acacia properly put inventorship at issue, ViaSat would have taken discovery into all these areas and submitted fact and expert testimony on inventorship. With discovery now closed, Acacia cannot now deem its "misappropriation" claim to be truly one of inventorship—a change well past the eleventh hour that would deeply prejudice ViaSat.[11] Nor can the Court cure this prejudice without prejudicing ViaSat anew by unduly delaying resolution of its claims, as the parties could not fairly litigate Acacia's new inventorship claim without a *Markman* hearing, redoing written discovery, fact depositions, expert reports, expert depositions and summary judgment briefing. This case is more than two years old and only months from trial; ViaSat should not have to wait an extra year—at *least*—because Acacia now regrets its decision not to pursue inventorship.

### IV. ViaSat Did Not and Cannot Waive Subject Matter Jurisdiction

Acacia's final argument is that the Court should ignore this motion, regardless of its merit, because ViaSat took too long to bring it. As the Court well knows, however, no party can waive subject matter jurisdiction. "Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt." *Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009). For this reason, the removal statute expressly exempts remand for want of "subject matter jurisdiction" from the deadline of "30 days after the filing of the notice of removal," and states that, if "at any time before final judgment it appears

---

[10] Acacia alleges that "this inventorship dispute was heavily litigated," but submits only two pages of one expert report to support this assertion. Dkt. No. 120 at 8 (citing Dkt. No. 83, Ex. 14 at 64-65). But those pages of Dr. Djordjevic's report concern Acacia's allegations that its trade secrets appear in ViaSat's *products*; they say nothing at all about inventorship, just as one would expect regarding an issue that is not in the case.

[11] For similar reasons, the Court should not grant Acacia leave to amend under Fed. R. Civ. P. 15. "A trial court may deny such a motion if permitting an amendment would prejudice the opposing party, produce an undue delay in the litigation, or result in futility for lack of merit." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Prejudice to the opposing party is the most important factor." *Jackson*, 902 F.2d at 1387 (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330-31 (1971)).

that the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).  The party asserting Federal jurisdiction when it is challenged has the burden of establishing it.  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006); *see also Bisignano*, No. 15-8301, 2016 WL 4487853, at *5 ("[T]he party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court.")[12]

## CONCLUSION

For all the reasons set forth above and in ViaSat's Motion, the Court should dismiss Count I of Acacia's counterclaims, and remand the remainder of this action to San Diego Superior Court.

Dated:  February 26, 2018

Respectfully Submitted,

/s/ Matthew S. Warren

Matthew S. Warren
Patrick M. Shields
Erika H. Warren
WARREN LEX LLP
2261 Market Street, No. 606
San Francisco, California, 94114

Kenneth M. Fitzgerald
Keith M. Cochran
FITZGERALD KNAIER LLP
402 West Broadway, Suite 1400
San Diego, California, 92101

*Attorneys for Plaintiff and Counter-Defendant ViaSat, Inc.*

---

[12] Acacia briefly argues that dismissal and remand could "leave Acacia without any remedy."  Dkt. No. 120 at 4.  Not so.  Acacia's many authorities show that the precise claim it brought—for equitable ownership of ViaSat's patents—is a matter of state law.  Inventorship is a Federal question claim that Acacia chose not to assert, so remand would not affect its ability to obtain relief.  Finally, Acacia claims without evidence that ViaSat is forum-shopping.  But Acacia is the one who sought to change forums by asserting a "Federal" claim that does not exist.  In the absence of any basis for Federal jurisdiction, state court is the correct forum; shopping does not enter into it.